IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ALEXANDRO PUGA AND NORMA PUGA | § § § § | |
| *Plaintiffs*, | § § | |
| vs. | § § | CIVIL ACTION NO. 2:15-CV-00073 |
| ABOUT TYME TRANSPORT, INC., AND XTRA LEASE, LLC | § § § § | |
| *Defendants*. | § § | |

**DEFENDANT RCX SOLUTIONS, INC.'S
MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

RCX SOLUTIONS, INC. ("RCX"), a Defendant in the above-entitled and numbered cause, files this Motion for Summary Judgment as to all of Plaintiffs' claims, and in support thereof respectfully shows as follows:

**I. INTRODUCTION AND BASIS FOR MOTION**

1.1   This is a personal injury lawsuit arising out of a commercial trucking accident. Plaintiff Alexandro Puga was injured after being involved in an accident with a tractor-trailer being driven by Ronald Brown ("Brown"), one of two owners of About Tyme Transport, Inc. ("About Tyme"), a DOT motor carrier.[1]

1.2   Several months prior to the collision, RCX Solutions, Inc. ("RCX"), entered into a contract (the "Carrier Agreement") with About Tyme. See the Carrier Agreement, attached hereto as Exhibit A. The Carrier Agreement appointed RCX, on behalf of About Tyme, to "solicit and arrange" loads of "freight, goods, and merchandise from various shippers" for About

Tyme to haul using its own drivers. *Id.* The Carrier Agreement required About Tyme, as the carrier, to maintain various types of insurance, including bodily injury, cargo, and workers' compensation insurance. *Id.*

1.3   In addition to the Carrier Agreement, RCX and About Tyme executed a Trailer Interchange that authorized About Tyme to drive trailers owned by RCX. See Trailer Interchange, attached hereto as Exhibit B. At no time did About Tyme utilize any *tractors* owned or leased by RCX.

1.4   Like RCX, About Tyme was, both at the time of the execution of the Carrier Agreement and at the time of the accident, an authorized DOT motor carrier pursuant to applicable federal regulations. They had operating authority from the Federal Motor Carrier Safety Administration ("FMCSA") as a for-hire motor carrier and Brown possessed a commercial driver's license. Plaintiffs have retained Roger Allen ("Allen") as an expert witness on DOT-related issues. Allen has opined that both RCX **and** About Tyme were DOT motor carriers for the load Brown was hauling **when** the accident occurred and has completely disavowed the position that RCX was acting as a broker or shipper of the goods. Under Mr. Allen's analysis, two separate and distinct companies can **both** be a DOT motor carrier at the same time for the same load traveling in interstate commerce. Mr. Allen's position defies well-stated law on the issue. One should invite an answer to the question whether the legal fiction advanced by Mr. Allen is a product of a recent settlement between Plaintiffs and About Tyme leaving RCX as the last Defendant standing.

1.5   On the day of the accident, Brown was hauling a box trailer containing cosmetic products that RCX had retained About Tyme to transport to Little Rock, Arkansas pursuant to and in accordance with the Carrier Agreement and the Trailer Interchange. Brown, while driving

---

[1] Brown was killed in the collision. About Tyme has settled Plaintiffs' claims.

the RCX-arranged load for his own company -- About Tyme -- en route to Little Rock, Arkansas from Brownsville, Texas, was involved in the collision that injured Mr. Puga.

1.6    Plaintiffs sued About Tyme, Extra Lease, LLC (the owner of the trailer), and RCX, claiming that Brown's negligence, if any, should be imputed to each About Tyme, Xtra Lease, and RCX pursuant to the doctrine of *respondeat superior*, specifically because he was operating his tractor-trailer "within the course and scope of his employment with" RCX. *See* Doc No. 27, Plaintiffs' Amended Complaint, at 3.

1.7    Further, Plaintiffs assert independent negligence claims against RCX in the following respects:

  a. Negligent hiring of Brown;

  b. Negligent entrustment of the vehicle to Brown;

  c. Negligent driver qualification;

  d. Negligent training and supervision of Brown;

  e. Negligent retention of Brown;

  f. "Negligent contracting";

  g. Negligent maintenance; and

  h. Providing unsafe equipment.

1.8    *See* Doc No. 27, Plaintiffs' Amended Complaint, at 4.

1.9    Finally, Plaintiffs assert that RCX was grossly negligent, entitling them to exemplary damages.

1.10   Plaintiffs' claims must fail for the following reasons:

- As it concerns Plaintiffs' common law vicarious liability claims based on the alleged employee-employer relationship between RCX and About Tyme, About Tyme was RCX's independent contractor as a matter of law;

- Likewise, RCX was, as a matter of law, **not** the DOT motor carrier for the load being hauled by Brown at the time of the collision and is therefore not vicariously liable for Brown's negligence as his statutory employer under the federal regulations;

- There is no evidence of independent negligence on the part of RCX that proximately caused Plaintiffs' injuries; and

- There is no evidence that RCX was grossly negligent.

## II. SUMMARY JUDGMENT STANDARD

2.1   Federal Rule of Civil Procedure 56(b) provides that a defending party may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor. Summary judgment shall be rendered if the pleadings and evidence show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56.

2.2   A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party opposing a motion must present affirmative evidence in order to defeat a properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

2.3   The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of **material fact**. *Anderson*, 477 U.S. at 247-248 (emphasis added). The dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* All of the evidence and inferences drawn

from that evidence must be viewed in the light most favorable to the party opposing the motion for summary judgment. *Hibernia Nat'l Bank v. Cavner,* 997 F.2d 94, 97 (5th Cir. 1993).

### III. ARGUMENT & AUTHORITIES

**A.     As a matter of law, About Tyme was RCX's Independent Contractor**

3.1     As the Court is well aware, generally, an employer is not liable for the negligence of an independent contractor. *Poynor v. BMW of N. Am., LLC*, 441 S.W.3d 315, 319 (Tex. App.—Dallas 2013, no pet.).

3.2     The question of whether one is an employee or independent contractor is very fact-specific and depends on a variety of factors.  The legal analysis of the question focuses on the employer's right to control the progress, details, and methods of operation of the work. *Limestone Products Distribution, Inc. v. McNamara,* 71 S.W.3d 308, 312 (Tex. 2002) (the employer must control "not merely the end sought to be accomplished, but also the means and details of its accomplishment."); *see also Campbell v. Keystone Aerial Surveys, Inc.*, 138 F.3d 996, 1006 (5th Cir. 1998).

3.3     In making the employee/independent contractor inquiry, the Court "must measure the right of control by considering  (1) the independent nature of the worker's business; (2) the worker's obligation to furnish necessary tools, supplies, and materials to perform the job; (3) the worker's right to control the progress of the work except about final results; (4) the time for which the worker is employed; and (5) the method of payment, whether by unit of time or by the job. *Limestone Products,* 71 S.W.3d at 312.

3.4     In *Limestone Products,* the Texas Supreme Court found that a driver who was simply told where to pick up and drop off loads and was required to turn in load tickets to get paid but: 1) was free to drive any route he wished, 2) did not work regular hours or regularly visit an office,  3) was supplied no tools or equipment, 4) provided his own vehicle, 5) paid for the

vehicle's fuel, repairs, and insurance, 6) was paid by the load delivered, and 7) did not receive pay for any vacation, sick leave, or holidays was conclusively an independent contractor and not an employee. *Id.* at 312-13; *Caballero v. Archer*, 2007 WL 628755 (W.D. Texas – San Antonio Division, February 1, 2007)

    3.5    The undisputed factual evidence in this case is as follows:

- About Tyme was a licensed DOT motor carrier, with its own distinct DOT operating authority, at the time of the collision. *See* Deposition Testimony of Robert Thomas, owner of About Tyme, attached hereto as Exhibit C, at 32:2-6; Deposition Testimony of Randy Clifton, President of RCX, attached hereto as Exhibit D, at 39:24-40:9; Affidavit of Randy Clifton, attached hereto as Exhibit E.

- About Tyme owned the tractor involved in the collision. Ex. C at 29:21-30:8.

- About time was responsible for the loss of any load it carried, and had its own insurance. Exhibit E.

- About Tyme kept its own financial records and books. Ex. C at 44:21-45:3. Exhibit E.

- About Tyme maintained its own bank account and no funds were co-mingled with any of RCX's accounts. *Id.* at 47:17-25; 50:25-51:5. Exhibit E.

- About Tyme handled its own DOT Compliance, training, and safety. *Id.* at 48:13-17; Exhibit E.

- About Tyme was an "outside carrier" for RCX. Exhibit C, at 24:15-20.

- Outside carriers, including About Tyme operate under their own DOT operating authority, provide their own insurance, and are a completely separate entity from RCX. *Id.* at 24:22-25:3.

- Outside carriers, including About Tyme, are solely responsible for complying with Federal Motor Carrier Safety Regulations, including those related to driver qualification files, drug/alcohol testing, tractor maintenance, driver qualification and training, hours of service/driver logs, and document retention. Exhibit E.

- The load Brown was hauling on the evening in question was originally going to be hauled by RCX. *Id.* RCX, however, was unable to deliver the load due to a mechanical breakdown of an RCX vehicle, so RCX called About Tyme to see if it could deliver the load as one of RCX's outside carriers. *Id.* Brown was free to make the delivery and accepted the load. Brown was provided the relevant shipping documents. *Id.* About Tyme was delivering the load pursuant to the Carrier Agreement and the Trailer Interchange when the accident occurred. *Id.*

- Brown was never an owner-operator/leased driver for RCX. Exhibit C at 25:24-26:1; *see also* Exhibit D, at 83:21-23. Exhibit E.

- About Tyme was never obligated to accept loads from RCX and was free to reject any loads it that it did not want to transport Exhibit E.

- About Tyme procured its own commercial automobile insurance Exhibit E.

- About Tyme was paid by RCX based on the load hauled, and not by salary, by the hour, or any other method. *Id.*

- No benefits, such as vacation, sick leave, or holidays, were ever paid to About Tyme drivers, including Brown, nor did RCX procure any type of workers' compensation or other similar insurance for About Tyme drivers, such as Brown. *Id.*

- About Tyme was solely responsible for the route to be driven for the load in question and was solely responsible for any expenses associated with delivery of the load. *Id.*

- RCX provided no instructions to About Tyme with regard to the manner in which the load in question was delivered. *Id.*

3.6  The facts of this case require an identical result to *Limestone Products*. There is no genuine issue of any material fact suggesting that Brown or About Tyme were the employee of RCX at the time of the collision. RCX hired About Tyme to deliver a load of freight and agreed to pay About Tyme based on the load delivered. Not a single factor outlined by the Texas Supreme Court in *Limestone Products* utilized in determining the employee/independent contractor question fall in favor of the conclusion that Brown or About Tyme were "employees" of RCX as that legal term used in Texas jurisprudence. About Tyme, and its driver Brown, were independent contractors of RCX at the time of the collision and RCX cannot be liable under any vicarious liability/employer-employee theory asserted by Plaintiffs as a matter of law.

**B.  As a matter of law, RCX was not the DOT motor carrier under the applicable federal regulations**

3.7  In the instant case, Plaintiffs argue that **both** About Tyme and RCX were acting as "motor carriers" under the federal regulations at the time Brown was involved in the accident that injured Mr. Puga, and pursuant to those regulations **both** About Tyme and RCX were somehow the statutory employer of Brown. However, this exact legal question has already been answered by both Texas state courts as well as other federal courts interpreting the federal regulations: RCX was not acting as a motor carrier vis-à-vis the transaction connected to the Brown-Puga collision and, therefore was not the statutory employer of Brown at the time of the collision.

3.8     In *Harris v. FedEx Natl.*, Oleg Velichkov was driving a commercial motor vehicle for his employer Fresh Start, Inc., a DOT motor carrier, when he was involved in a collision that resulted in both injuries and a fatality.  *Harris v. FedEx Natl.*, 760 F.3d 780, 782 (8th Cir. 2014).  FedEx, in addition to being a licensed DOT motor carrier employing its own drivers and vehicles to deliver goods to its customers, also occasionally retains "subhaulers" that provide their own drivers and tractors to pull FedEx trailers. *Id.* FedEx had such an arrangement with Fresh Start, including the execution of a written agreement, at the time of the Velichkov accident. *Id.* Two days before the accident in question, Fresh Start received an assignment from FedEx to deliver two FedEx-owned trailers from one FedEx service center to another. *Id.* at 782-83.  Plaintiffs in *Harris* alleged that Velichkov was acting as FedEx's employee while hauling the FedEx-owned equipment and, therefore, FedEx was vicariously liable for Velichkov's negligence in causing the collision in question. *Id.* at 783.

3.9     The 8th Circuit held that "the [Federal Motor Carrier Safety Regulations] appl[y] to motor carriers, not to shippers who engage independent contractors to transport goods" and therefore the relevant inquiry is simply whether FedEx "acted as a motor carrier in the specific transaction at issue." *Id.* at 785 (citing *Schramm v. Foster*, 341 F.Supp.2d 536, 548 (D. Md. 2004) ("plaintiffs have failed to prove that Robinson acted as a motor carrier **in the specific transaction at issue**")(emphasis added).  In rejecting the argument that FedEx was a "motor carrier" with regard to Fresh Start "subhauling" the FedEx trailers, the Court noted that "Fresh Start selected its drivers without FedEx oversight and operated under its own authority as a registered motor carrier, rather than under FedEx's authority." *Id.* at 785.  The 8th Circuit affirmed the District Court's granting of FedEx's Motion for Summary Judgment.

3.10    The United States District Court in San Antonio, Texas, came to the same conclusion on similar facts.  In *Caballero v. Archer*, Jack Archer *d/b/a* Jack Archer Trucking

("Archer"), a sole proprietor truck driver with his own DOT operating authority, was involved in an accident while hauling a load for Cargill, Inc. *d/b/a* Cargill Turkey Products ("Cargill"). *Caballero v. Archer*, 2007 WL 628755 at *1 (W.D. Texas – San Antonio Division, February 1, 2007). The claimants argued "that Cargill should be liable for Archer's conduct based on the rules and regulations created by the Federal Motor Carrier Safety Administration" because Cargill *also* had DOT operating authority as a motor carrier and had the *ability* to carry its own freight, including the load in question *Id.* at *4.

  3.11 In correctly framing the issue, the Court noted that "the fact that Cargill had FMCSA authority to operate as a private motor carrier is irrelevant" and, instead, the inquiry should be "whether Cargill exercised that role **in this case**" and "the Court must focus on the specific transaction in question, and not whether Cargill acts as a private motor carrier in other transactions." *Id.* (citing *Schramm v. Foster*, 341 F.Supp.2d 536, 549 (D. Md. 2004) ("the fact that [the defendant] has FMCSA authority to operate as a motor carrier is irrelevant to the instant transaction.")(emphasis added).

  3.12 For "the specific transaction in question," the Court noted that Cargill designated the goods to be shipped, specified the time and place for pick-up and delivery, and required periodic status reports on the status of the load (including when it was delivered and whether there were any anticipated delays). *Id.* at *3. No instructions were given regarding the manner in which Archer delivered the goods. *Id.* The Court concluded by holding that there was no evidence in the record "that would give rise to a finding that [Cargill] assumed the responsibility for transporting the cargo. That was clearly the job of Archer Trucking." *Id.* at *5. "To hold otherwise would require the Court to exaggerate or stretch the facts beyond their logical meaning." *Id.* The Court rejected the claimants' argument that Cargill was acting as a motor carrier for the load in question.

3.13 Similarly, in this case, to hold that RCX assumed responsibility for transporting the cargo at issue, instead of About Tyme, would stretch the facts beyond their logical meaning. As stated by the District Court in *Harris v. Velichkov* (the grant of summary judgment later affirmed by the 8th Circuit in *Harris v. FedEx Natl.*, cited above), statutory and regulatory interpretation must avoid absurd results. *Harris v. Velichkov*, 860 F.Supp.2d 970, 979-80 (W.D. Nebraska, 2012) (citing *Griffen v. Oceanic Contractors, Inc.*, 458 U.S. 564 (1982)).

3.14 Just like in *Harris*, Plaintiffs' interpretation of the relevant DOT regulations would produce such an absurdity. The federal regulations require the **motor carrier** to obtain and maintain records on their drivers, retain an application for employment, and sometimes conduct a road test. *See, e.g.* 49 C.F.R. §§ 391.25, 391.51(a), 391.51, and 391.31. To quote the District Court in *Harris v. Velichkov*:

> to read FedEx as a "motor carrier" in this case, and thereby an employer of Fresh Start or Velichkov, would not only burden FedEx with the compliance duty assigned by [C.F.R.] § 390.11—it would also burden FedEx with the nonsensical duties to conduct road tests, and retain records, for drivers with whom it has no relationship. Simply put, it makes no sense to read the C.F.R. to require FedEx to retain the employment application of someone who never applied to it for employment. Nor does it make sense to place such a burden on FedEx because it has the *ability* to act as a motor carrier and *could* have transported the cargo in question, when another shipper could establish an effectively identical relationship with a carrier such as Fresh Start and not be regarded as a motor carrier.

*Harris v. Velichkov*, 860 F.Supp.2d at 980 (emphasis in original)

3.15 Plaintiffs' attempts to shoehorn RCX into "motor carrier" status should fail because the definition of motor carrier and employer, as used in the applicable federal regulations, accurately and precisely describe the role assumed by About Tyme in this case, as RCX's outside carrier. Just like in *Harris* (both the District Court's grant of summary judgment and the 8th Circuit's affirmation of same) RCX "chose not to use its own carrier authority to transport" the cargo because of a mechanical breakdown of its equipment; "instead it shipped

that cargo via another authorized carrier." *Id.* at 980. It was About Tyme, not RCX, that "assumed responsibility for the duties and prohibitions on the drivers it employed." *Id.* This case is factually indistinguishable from either *Harris* or *Caballero*. Plaintiffs' claims that RCX was a statutory DOT motor carrier with regard to this transaction should be rejected and dismissed.

### C. There Is No Evidence of Independent Negligence on the Part of RCX

3.16   Obviously, RCX denies that they are a motor carrier with regard to the load Brown was hauling for About Tyme at the time of the accident in question. Therefore, there is no legal duty upon RCX vis-à-vis Plaintiff's direct claims of negligence arising out of being a motor carrier under the federal regulations. However, even if the Court concludes that RCX is the motor carrier with respect to the load at issue, summary judgment on Plaintiffs' direct motor carrier claims is nevertheless appropriate because there is no genuine issue as to any material fact with regard to those claims.

3.17   Plaintiffs claim that RCX was negligent in the hiring, entrustment, qualification, training, supervision, retention, and "contracting" of About Tyme/Brown, negligent in the maintenance of an unidentified vehicle, and negligent in "providing unsafe equipment." Doc No. 27, Plaintiffs' Amended Complaint, at 4.

3.18   As the Court is well aware, a cause of action for negligence consists of three elements: the existence of a legal duty owed to another, a breach of that duty, and damages proximately resulting from the breach. *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990); *El Chico Corp. v. Poole,* 732 S.W.2d 306, 311 (Tex. 1987). The mere occurrence of an event causing injury is not evidence of negligence. *Farriell v. Davis,* 606 S.W.2d 344, 345 (Tex.App.-Eastland 1980, no writ). Thus, negligence or a failure to perform a duty required by law is never presumed as a fact, but must be proved by evidence. *Wells v.*

*Texas Pacific Coal and Oil Company,* 164 S.W.2d 660, 662 (Tex. 1942).  It is Plaintiffs' burden to prove both the negligent act and causation. *Jones v. Nafco Oil and Gas, Inc.,* 380 S.W.2d 570, 574 (Tex.1964).

3.19   To establish a claim for negligent hiring or qualification, Plaintiffs must prove that RCX breached a duty to hire or qualify competent drivers, which breach caused the Plaintiffs' injuries.  *Fort Worth Elevators Co. v. Russell,* 70 S.W.2d 37, 401 (Tex. 1934) (*overruled on other grounds* by *Wright v. Gifford-Hill & Co., Inc.*, 725 S.W.2d 712 (Tex. 1987)).

3.20   To establish a claim for negligent training, Plaintiffs must prove that RCX, as a reasonably prudent motor carrier, would have provided driver training beyond that which was given to Brown, and that the failure to do so caused Plaintiffs' injuries. *See Allsup's Convenience Stores, Inc. v. Warren,* 934 S.W.2d 433, 437 (Tex.App.-Amarillo 1996, writ denied).

3.21   To establish a claim for negligent supervision, Plaintiffs must prove that RCX breached a duty to supervise its driver, which failure was the cause of Plaintiffs' injuries. *See Knight v. City Streets, L.L.C.,* 167 S.W.3d 580, 584 (Tex.App.-Houston [14th Dist.] 2005, no pet.).

3.22   To establish a claim for negligent retention, Plaintiffs must prove that RCX breached a duty to retain competent employees, which breach caused the Plaintiffs' injuries. *See EMI Music Mex v. Rodriguez,* 97 S.W.3d 847, 858 (Tex. App. – Corpus Christi 2003, no pet.).

3.23   While entirely undefined and vague, Plaintiffs' claim for "negligent contracting" should fail as a matter of law because there is no evidence that RCX breached the standard of care with regard to the execution of any contract in this case, or evidence that such breach proximately caused Plaintiffs' injuries.

3.24   To establish a claim for negligent entrustment of a motor vehicle, Plaintiffs must prove that RCX knew or should have known, at the time of the entrustment of the trailer to

Brown (Brown owned his own tractor), that he was an unlicensed, incompetent, or reckless driver, and Dahir was negligent in proximately causing Dominguez's death. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 58 (Tex. 2007).

3.25 Finally, there is no evidence that RCX breached the standard of care with regard to the providing equipment to Brown, provided "unsafe" equipment, or that any such breach proximately caused Plaintiffs' injuries.

3.26 Because there is no evidence to support Plaintiffs' direct negligence claims against RCX, summary judgment on those claims is proper and should be granted.

D. **There Is No Evidence of Gross Negligence**

3.27 Plaintiff generally asserts claims for gross negligence against RCX based on general claims of "gross negligence and/or malice." Doc No. 27, Plaintiffs' Amended Complaint, at 4-5.

3.28 Gross negligence is "an act or omission involving subjective awareness of an extreme degree of risk, indicating conscious indifference to the rights, safety, or welfare of others." *State v. Shumake*, 199 S.W.3d 279, 287 (Tex. 2006) (*citing Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 21 (Tex. 1994)). Gross negligence involves two components: (1) viewed objectively from the actor's standpoint, the act or omission must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (2) the actor must have actual, subjective awareness of risk involved, but nevertheless proceed with conscious indifference to the rights, safety, or welfare of others. *See Texas Dept. Parks and Wildlife v. Miranda*, 133 S.W. 217, 225 (Tex. 2004); TEX. CIV. PRAC. & REM. CODE § 41.001(11).

3.29 Malice is defined as a "specific intent by the defendant to cause substantial injury or harm to the claimant. TEX. CIV. PRAC. & REM. CODE § 41.001(7).

3.30    Plaintiffs have failed to produce any evidence that any action or omission by RCX involved an extreme degree of risk when viewed objectively from the standpoint of RCX. Further, and more importantly, Plaintiffs have failed to produce any evidence that RCX had **actual subjective awareness** of risk involved and **nevertheless** proceeded in conscious indifference to the rights, safety, or welfare of Plaintiffs. Because there is no evidence in support of their gross negligence claims against RCX, summary judgment on Plaintiffs' gross negligence claims is proper.

## IV.  CONCLUSION & PRAYER

4.1    As a matter of law, About Tyme was RCX's independent contractor as a matter of law. Brown was not, nor has he ever been, an employee of RCX such that the latter can be held vicariously liable for his negligence under Texas law.

4.2    Caselaw at both the state and federal level mandates a finding that as a matter of law, RCX was not the DOT motor carrier for the load Brown was hauling at the time of the collision and therefore cannot be vicariously liable by statue for Brown's negligence.

4.3    There is, no evidence that RCX was independently negligence with regard to Plaintiffs' direct motor carrier claims.

4.4    Likewise, there is no evidence that RCX was grossly negligent.

WHEREFORE, PREMISES CONSIDERED, RCX respectfully requests that this Court grant its Motion for Summary Judgment, as well as for all other relief to which it may be entitled.

                        Respectfully submitted,

                        THOMPSON, COE, COUSINS & IRONS, L.L.P.

                        By:_____/s/ William R. Moye_____
                              WILLIAM R. MOYE (Attorney-In-Charge)
                              State Bar No. 24027553
                              One Riverway, Suite 1600
                              Houston, Texas  77056
                              (713) 403-8210; Fax: (713) 403-8299
                              wmoye@thompsoncoe.com

                        **ATTORNEY-IN-CHARGE FOR DEFENDANT
                        RCX SOLUTIONS, INC.**

ANDREW J. MCCLUGGAGE
State Bar No. 24065708
THOMPSON, COE, COUSINS & IRONS, L.L.P.
One Riverway, Suite 1600
Houston, Texas  77056
(713) 403-8210; Fax: (713) 403-8299
amccluggage@thompsoncoe.com

**OF COUNSEL FOR DEFENDANT**

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document has been sent to all known counsel of record listed below by way of the CM/ECF system on the 2nd day of May, 2016.

*Via CM/ECF*
Thomas J. Henry
Richard W. Hunnicutt, III
THE LAW OFFICES OF THOMAS J. HENRY
4715 Fredericksburg Road, 5th Floor
San Antonio, Texas 78229
Phone: (210) 656-1000
Fax: (361) 985-0601
***Counsel for Plaintiff***

*Via CM/ECF*
David L. Ortega
Erik L. Krudop
NAMAN, HOWELL, SMITH & LEE, PLLC
10001 Reunion Place, Suite 600
San Antonio, Texas 78216
Phone: (210) 731-6353
Fax: (210) 785-2953
***Counsel for Defendant About Tyme Transport, Inc.***

*Via CM/ECF*
Les Pickett
Ron T. Capehart
GALLOWAY, JOHNSON, TOMPKINS, BURR & SMITH
1301 McKinney, Suite 1400
Houston, Texas 77010
Phone: (713) 599-0700
Fax: (713) 599-0777
***Counsel for Defendant Xtra Lease, LLC***

          /s/ William R. Moye
WILLIAM R. MOYE
ANDREW J. MCCLUGGAGE