**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **ALEXANDRO PUGA AND** | § | |
| **NORMA PUGA** | § | |
| *PLAINTIFFS* | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 2:15-CV-73** |
| | § | |
| **ABOUT TYME TRANSPORT, INC.,** | § | |
| **XTRA LEASE, LLC AND RCX** | § | |
| **SOLUTIONS, INC.** | § | |
| *DEFENDANTS* | | |

**PLAINTIFFS' RESPONSE TO DEFENDANT RCX**
**SOLUTIONS INC.'S MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Alexandro Puga and Norma Puga, Plaintiffs in the above-entitled and numbered cause, file *Plaintiffs' Response to Defendant RCX Solutions, Inc.'s Motion for Summary Judgment* and show the following in support:

## I.  INTRODUCTION

1.      In January 2015, Plaintiffs Alexandro Puga and Norma Puga filed a lawsuit in Texas state court against Defendants About Tyme Transport, Inc. and Xtra Lease, LLC for personal injuries arising out of a vehicular collision in Refugio, Texas.

2.      Defendants removed the case to federal district court in February 2015.  DOC. 1.

3.      On September 1, 2015 Plaintiffs filed a First Amended Complaint adding RCX, Solutions, Inc. as a Defendant.  DOC. 27.

4.      Plaintiffs reached a settlement with About Tyme Transport, Inc. and dismissed all claims against Xtra Lease, LLC.  The only remaining Defendant in this lawsuit is RCX Solutions, Inc.

5.      This Court entered an Amended Scheduling Order on November 4, 2015 setting this

case for trial on August 15, 2016.  Doc. 47.

6.      Defendant filed their *Motion for Summary Judgment* on May 2, 2016.  In their motion, Defendant seeks summary judgment on all of Plaintiffs' claims.  Doc. 65.

7.      Plaintiffs file this *Response to Defendant RCX Solutions Inc.'s Motion for Summary Judgment*.  Summary judgment should not be granted on Plaintiffs' claims because a factual dispute exists on whether RCX Solutions, Inc. was the employer of Ronald Brown, whether RCX Solutions, Inc. negligently hired Ronald Brown and failed to qualify him under the Federal Motor Carrier Regulations, and whether RCX Solutions, Inc. acted with subjective awareness of an extreme degree of risk, indicating conscious indifference to the rights, safety, or welfare of others in allowing Ronald Brown to drive an 18-wheeler while talking on his cell phone and traveling at an unsafe speed in inclement weather causing the collision in this case.

## II.  STANDARD OF REVIEW

8.      A court may grant summary judgment against a party who cannot establish an element essential to that party's case and on which that party bears the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  When the movant has carried its burden under FRCP 56(a), the nonmovant must demonstrate that there is a genuine dispute of material fact.  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

9.      A court must examine the record as a whole and make reasonable inferences about the facts in favor of the nonmovant.  *Id.* at 378-80.   Courts are reluctant to grant fact-based summary judgment motions before discovery is complete.  *See Id.; Anderson v. Liberty Lobby, Inc.*, 470 U.S. 574, n.5 (1986) *Evans v. Technologies Applications & Serv.*, 80 F.3d 954, 961 (4th Cir. 1996).

### III.  SUMMARY JUDGMENT EVIDENCE

In support of Plaintiffs' Response to Defendants' Motion for Summary Judgment,

attached hereto and incorporated herein by reference are the following exhibits:

Exhibit A:    Police Report
Exhibit B:    Xtra Lease Equipment Rental Agreement
Exhibit C:    Deposition of Jason Butler
Exhibit D:    Deposition of Jonathan Neal
Exhibit E:    Deposition of Randy Clifton
Exhibit F:    Affidavit of Randy Clifton
Exhibit G:    Bill of Lading
Exhibit H:    Report of Roger Allen
Exhibit I:    Company Snapshot – RCX Solutions, Inc.
Exhibit J:    Deposition of Allan Crump
Exhibit K:    Deposition of Robert Thomas
Exhibit L:    FMCSA Motor Carrier – Licensing and Insurance – RCX Supply Chain
              Solutions, LLC
Exhibit M:    Carrier Agreement

### IV.  FACTS IN OPPOSITION TO SUMMARY JUDGMENT

10.    On January 9, 2015, at approximately 6:56 pm. Ronald Brown was driving a tractor

trailer owned by About Tyme Transport, Inc. and hauling a trailer leased to RCX Solutions, Inc.

by Xtra Lease, LLC. (Exhibit A, Police Report; Exhibit B, Xtra Lease Equipment Rental

Agreement.)  At the time, conditions were dark and rainy and the roadway was wet.  (Exhibit A.)

As Ronald Brown was travelling northbound on Highway 77 he crossed over the median and

entered the southbound lane and violently struck Plaintiff Alexandro Puga head on.  (Exhibit A.)

The vehicles caught fire and Ronald Brown was pronounced dead at the scene.

11.    Law enforcement conducted an investigation and made its report. (Exhibit A.)  The

investigating officer wrote in his report that Ronald Brown began hydroplaning, took faulty

evasive action and jack-knifed.  (Exhibit A.) Following the investigation, law enforcement

concluded that the collision could have been avoided if Ronald Brown had driven at a safe speed

for the conditions. (Exhibit A.)

12.     The trailer, which was leased to RCX Solutions, Inc. was filled with empty mascara cases which were to be transported from Albea Cosmetics America, Inc. in Brownsville, Texas to L'Oréal Products, USA in Little Rock, Arkansas. (Exhibit C, deposition of Jason Butler 36:01-36:14);

13.     RCX Solutions, Inc. was the motor carrier designated to carry the load through an agreement brokered by Sunset Transportation, Inc. (Exhibit D, deposition of Jonathan Neal, 39:14-17).

14.     RCX Solutions, Inc.'s president Randy Clifton arranged for his company to carry the load through his position as a sales agent for Sunset Transportation, Inc. (Ex. E, Deposition of Randy Clifton, 23:19-24:01).

15.     Sunset Transportation owner Jim Williams was aware that RCX Solutions, Inc. was going to be providing a lease driver and a trailer to carry the load.  (Ex. E, Deposition of Randy Clifton, 24:09-14).

16.     RCX solutions, Inc. had the proper licenses, certificates and authority to act as a motor carrier for the shipment from Albea to L'Oréal.  (Ex. D, Deposition of Jonathan Neal, 65:25-66:05).

17.     RCX Solutions, Inc. has transported loads between Albea and L'Oréal many times before and after this collision.  (Ex. D, Deposition of Jonathan Neal, 74:24-75:07).  Albea Cosmetics America, Inc. was a favorite customer of RCX Solutions, Inc. (Ex. D, Ex. 2 to Jason Butler's deposition).

18.     RCX Solutions, Inc. intended to transport the load, however they claimed to have experienced an equipment breakdown and Ronald Brown was dispatched to carry the load instead.  (Exhibit C, Deposition of Jason Butler 36:01-36:05; *see also* Exhibit F, Affidavit of

4

Randy Clifton).

19.     RCX Solutions, Inc. did not seek permission from Albea Cosmetics America, Inc., L'Oréal or Sunset Transportation before assigning the load to Ronald Brown.  (Ex. C, Depo of Jason Butler 37:22-37:25)

20.     Under the Equipment Rental Agreement, RCX Solutions, Inc. had "exclusive possession, control and use and assumed complete responsibility for the condition, operation, inspection, and maintenance" of the trailer during the term of their lease.  (Ex. B, Equipment Rental Agreement).

21.     RCX Solutions, Inc. did not seek permission from Xtra Lease, LLC to have Ronald Brown carry the load.  (Ex. C, deposition of Jason Butler 31:21-32:01, Ex. E, Deposition of Randy Clifton, 31:24-32:03).

22.     The Bill of Lading listed the carrier name as:  "Sunset/RCX" and Ronald Brown signed the carrier signature box with his name.  (Exhibit G, Bill of Lading).

23.     RCX Solutions, Inc. is a motor carrier only and not authorized for broker authority.  (Ex. C, Deposition of Jason Butler, 12:05-12:08, Ex. D, Deposition of Jonathan Neal 43:11-19, Ex. H Expert Report of Roger, p. 17, ¶ 2, Ex. I, SAFER web - Company Snapshot, RCX Solutions, Inc., Ex. J, Deposition of Allan Crump, 36:04-36:09).

24.     If a motor carrier does not have broker authority, it cannot broker loads without first applying for and receiving a license to operate as a broker according to 49 U.S.C. § 13902(a)(6).

25.     During depositions taken on May 3, 2016, RCX Solutions, Inc. claimed for the first time that a mistake was made and that their sister company RCX Supply Chain Solutions, Inc. actually brokered the load.  (*See* Ex. C, Deposition of Jason Butler, 30:06-31:20, 38:16-39:16, Ex. D, Deposition of Jonathan Neal, 49:24-50:10).

26.     No contract, lease, or legally binding document produced by RCX Solutions, Inc. in this

litigation contains the name "RCX Supply Chain Solutions, Inc."  Instead, all documents signed by Ronald Brown and RCX Solutions, Inc. list "RCX Solutions, Inc." as the party to the transaction. (Ex. C, Deposition of Jason Butler, 38:16-38:25; *see also* Ex. D, Deposition of Jonathan Neal, 58:03-61:03).

27.     RCX Solutions, Inc. did not comply with Federal Motor Carrier Safety Regulations requiring the motor carrier to qualify Ronald Brown as a driver pursuant to 49 C.F.R. § 391.51. (Ex. J, Deposition of Allan Crump, 38:05-39:10).

28.     RCX Solutions, Inc. did nothing to investigate Ronald Brown's driving history prior to employing him as a driver as required by 49 C.F.R. § 391.53.  (*See* Ex. J, Deposition of Allan Crump, 27:15-28:15).

29.     RCX Solutions, Inc. has a mobile devices use policy for its own employees and leased drivers, but did nothing to enforce the policy on Ronald Brown when he carried the load for RCX Solutions, Inc.  (*See* Ex. E, Deposition of Randy Clifton, 36:12-36:18, 44:04-44:07)

30.      Allan Crump, RCX Solutions Inc.'s safety director understood "that mobile device use can be extremely dangerous in a commercial motor vehicle."  (Exhibit J, Deposition of Allan Crump 16:10-16:25.)  He understood that "there's a high degree, high probability of serious injury or death if a truck driver's on a mobile device inappropriately and gets involved in a collision." (*Id.* Exhibit J, Crump Deposition).

## V.  ARGUMENT AND AUTHORITY

31.     *Defendant's Motion for Summary Judgment* on Plaintiffs' respondeat superior claims, independent negligence claims, and gross negligence claims should be denied because Plaintiffs present sufficient evidence to enable a jury to find that RCX Solutions, Inc. was the statutory employer of Ronald Brown, that RCX Solutions, Inc. negligently hired and failed to qualify

Ronald Brown before entrusting him to transport the load and that RCX Solutions, Inc. was grossly negligent for failing to enforce a mobile device policy which would have prevented this occurrence.

### A.      RCX Solutions, Inc. was the Statutory Employer of Ronald Brown

32.      During the first half of the twentieth century, interstate motor carriers attempted to immunize themselves from liability for negligent drivers by hiring inadequately insured, risky trucks and their drivers and classifying them as "independent contractors." In doing so, they would disclaim any association when those trucks and drivers caused injuries to the general public.  *See e.g., Transamerican Freight Lines, Inc. v. Brada Miller Freight Sys., Inc.*, 432 U.S. 28, 36-38 (1975); *White v. Excalibur Insurance Company*, 599 F.2d 50, 52 (5th Cir. 1979); *Morris v. JTM Materials, Inc.*, 78 S.w.3d 28, 37 (Tex. App.—fort Worth, 2002).

33.      To protect against these abuses, Congress amended the Motor Carrier Common Carrier Act to require that the motor carrier assume "full direction and control" of leased vehicles to prevent trucking companies from escaping liability under nominal independent contractor agreements.  *See White*, 599 F.2d at 53 (citing 49 C.F.R. § 304(e)(2), now codified at 49 U.S.C. § 11107(a)(4)).

34.      The federal lease regulations, which are still in effect, require interstate motor carriers to assume exclusive possession, control, use and responsibility for operation of the leased equipment for the duration of the lease.  49 U.S.C. § 376.12(c)(1).  "Because the carrier now has both a legal right and duty to control vehicles operated for its benefit, the employees of the vehicle-lessor are deemed statutory employees of the lessee-carrier to the extent necessary to insure the carrier's responsibility for the public safety just as if the lessee-carrier were the owner of the vehicles."  *See* White, 599 F.2d at 52-53 (citing *Simmons v. King*, 478 F.2d 857, 867 (5th

Cir. 1973).

35.     Federal Motor Carrier Safety Regulations preempt state law in tort actions where a member of the public is injured by the negligence of a DOT motor carrier's employee while operating in interstate commerce. *Tamez v. Sw. Motor Transp., Inc.*, 155 S.W.3d 564, 573 (Tex. App.—San Antonio 2004, no pet.).   Thus, an interstate motor carrier's liability for drivers and equipment is not governed by traditional common-law doctrines of respondeat superior or master servant.  *Id.*  A motor carrier is vicariously liable as a matter of law under 49 C.F.R. § 376.12 for the negligence of its statutory employee drivers.  *Id; see also Morris v. JTM Materials, Inc.*, 78 S.W.3d 28, 37-38 (Tex. App.—Fort Worth 2002) (stating that "an interstate motor carrier's liability for equipment and drivers . . . is not governed by the traditional common-law doctrines of the master-servant relationship and respondeat superior.   Instead, an interstate carrier is vicariously liable as a matter of law . . . for the negligence of its statutory employee drivers).

36.     In addition to the requirement that motor carriers assume "full direction and control" of leased vehicles under 49 U.S.C. § 376.12(c)(1), 49 C.F.R. § 390.5 defines employee as follows:

> any individual, other than an employer, who is employed by an employer and who in the course of his or her employment directly affects commercial motor vehicle safety.  Such term includes a driver of a commercial motor vehicle (**including an independent contractor while in the course of operating a commercial motor vehicle**)…

49 C.F.R. § 390.5 (emphasis added); *see Consumers County Mut. Ins. Co. v. P.W. & Sons Trucking, Inc.*, 307 F.3d 362 (5th Cir. 2002).

37.     The Federal Motor Carrier Safety Regulations eliminate the distinction between independent contractors and employees so that any attempt by a motor carrier to label a driver as an independent contractor is ineffective.  *See* 49 C.F.R. § 390.5.

38.     The official interpretations to 49 C.F.R. § 390.5 contains the following question and guidance:

Question 17:   May a motor carrier that employs owner-operators who have their own operating authority issued by the ICC or the Surface Transportation Board transfer the responsibility for compliance with the FMCSRs to the owner-operators?

Guidance:     No.   The term "employee" as defined in § 390.5, specifically includes an independent contractor employed by a motor carrier.  The existence of operating authority has no bearing upon the issue.  The motor carrier is, therefore, responsible for compliance with the FMCSRs by its driver employees, including those who are owner-operators.  62 Fed. Reg. 16,407 (April 4, 1997).  49 CFR Chapter III:   Regulatory Guidance for the Federal Motor Carrier Safety Regulations, Interpretation to § 390.5, question 17 (1997); *see also* 49 C.F.R. § 390.5 (2002); fmcsa.dot.gov.

### 1.      *Statutory Employer Doctrine in Texas*

39.     One of the first Texas cases to have considered vicarious liability under the statutory employment doctrine is *John B. Barbour Trucking Co. v. State.  John B. Barbour Trucking Co. v. State*, 758 S.W.2d 684 (Tex. App.—Austin 1988, writ denied).   In *Barbour*, the State sued a truck driver and his employer Jefferson for destruction of a bridge overpass.  The State sued a second motor carrier Barbour, asserting that the federal regulations made Barbour vicariously liable for the driver even though they did not employ him.   *Id.* at 686.   Although the court concluded that the State had not demonstrated vicarious liability, it adopted a test to determine statutory employment:

A carrier is vicariously liable for injury caused by the driver's negligent operation of a vehicle, when three factors coincide:  (1) the carrier does not own the vehicle; (2) the carrier operates the vehicle, under an "arrangement" with the owner, to provide transportation subject to the Commission's jurisdiction; and (3) the carrier does not literally employ the driver.  In these circumstances, the driver is held to be the constructive or "statutory" employee of the carrier; and, in consequence of this fiction, the doctrine of respondeat superior imposes upon the carrier a vicarious liability for the negligence of its "employee" the driver.

*Id.* at 688.

40.     Based on the factors above, the statutory employee rule is applicable even when there is no "lease" of the accident vehicle.  The *Barbour* opinion holds that a carrier can be vicariously

liable when the carrier operates the vehicle under an "arrangement with the owner". *Id.*

41.     In this case, there are a number of written agreements entered into between the parties, however none of them are labeled a "lease". These documents include a Trailer Interchange Agreement, a Carrier Agreement, a Carrier Rate Confirmation, and a Bill of Lading. Despite what parties decide to label the relationship or call themselves, the controlling issue is whether the parties' actions show that the company was acting as a motor carrier in the specific transaction at issue. *See Shramm v. Foster*, 341 F.Supp.2d 536 (2004) (Dist. Md. 2004).

42.     In this case there is no document entitled a "lease" between RCX Solutions, Inc. and About Tyme Transport, Inc. or Ronald Brown, however the factors from the *Barbour* case are satisfied to create a statutory employee relationship. First, RCX Solutions, Inc. did not own the vehicle that Ronald Brown was operating. Instead, Robert Thomas, partner at About Tyme Transportation, Inc. bought the tractor for the business. (Ex. K, Deposition of Robert Thomas 29:11-30:1). This satisfies the first requirement under *Barbour*.

43.     The second requirement is that the carrier operates the vehicle under an "arrangement" with the owner, to provide transportation subject to the Commission's jurisdiction. *Barbour*, 758 S.W.2d at 688. Here, RCX Solutions, Inc. and Ronald Brown entered into an arrangement for Mr. Brown to haul the load that had been assigned to RCX Solutions, Inc., however Ronald Brown was to use his own tractor because RCX had an equipment problem. Randy Clifton admitted in his affidavit and his employee confirmed that RCX solutions, Inc. dispatched Ronald Brown to pick up the load from Albea and deliver it to L'Oréal. *See* Fact. 18, *supra* Section IV, Facts in Opposition to Summary Judgment. The second *Barbour* requirement of an "arrangement" has been met.

44.     The third requirement is that RCX Solutions, Inc. did not literally employ the driver.

Here Ronald Brown was an employee of About Tyme Transport, Inc. (Exhibit K, Deposition of Robert Thomas 80:06-80:08) despite being dispatched to carry the load for RCX Solutions, Inc. on January 9, 2015.

  **2. Courts look at the specific transaction and nature of the relationship to determine whether a party is acting as the motor carrier**

45. Where an agreement is signed other than a lease, the courts have considered the actions of the parties to determine whether one of the parties acted as a motor carrier. The court looks at the specific transaction with the broker's customer and nature of the relationship between the customer, broker and carrier that dispatched the driver pursuant to the contract carrier agreement with the broker. *Shramm v. Foster*, 341 F.Supp.2d 536 (2004) (Dist. Md. 2004).

46. Under federal law, "[a] transportation entity may have authority to operate as both a broker and a carrier." *Gonzalez v. J.W. Cheatham, LLC*, 125 So.3d 942, 945 (Fl. App. 2013) (quoting *Schramm v. Foster*, 341 F.Supp.2d 536, 549 (D.Md.2004)). However, the dispositive issue is whether, in the specific transaction at issue, the entity "chose to use its carrier authority to ship the load or chose to simply broker the shipment to another authorized carrier." *Id.* (quoting *Schramm*, 341 F.Supp.2d at 550). "[I]f [an entity] accepted responsibility for ensuring delivery of the goods, regardless of who actually transported them, then [the entity] qualifies as a carrier. If however [the entity] merely agreed to locate and hire a third party to transport the [goods], then it was acting as a broker." *Id.* (quoting *CGU Int'l. Ins., PLC v. Keystone Lines Corp.*, 2004 WL 1047982 (N.D.Cal. May 5, 2004)).

47. "Whether a company is a broker or a carrier is not determined by what the company labels itself, but by how it represents itself to the world and its relationship to the shipper." *Id.* (quoting *Hewlett–Packard Co. v. Brother's Trucking Enters., Inc.*, 373 F.Supp.2d 1349, 1352 (S.D.Fla.2005)). Because the difference between a carrier and a broker is often blurry, the

carrier/broker inquiry is inherently fact-intensive and not well-suited to summary judgment. *Id.* (citing *Nipponkoa Ins. Co. v. C.H. Robinson Worldwide*, 2011 WL 671747 (S.D.N.Y.2011)). Thus, courts frequently conclude that there are issues of fact as to whether an entity is a carrier. *Id.*

48.     These Courts recognized that a transportation entity may have authority to operate as both a broker and a motor carrier.  The court needs to determine whether the defendant chose to use its carrier authority to ship the load or chose to simply broker the shipment to another authorized carrier.

49.     The *Shramm* Court considered the following definitions from the FMCSA:

- A "motor carrier" under the FMCSA is a person providing motor vehicle transportation for compensation.  *Schramm*, 341 F. Supp.2d at 548 (citing 49 U.S.C. § 13102(12)).

- A "broker" is a person, other than a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing or arranging for transportation by motor carrier for compensation.  *Id.* (citing 49 U.S.C. § 13102(2)).

- Motor carriers or persons who are employees or bona fide agents of carriers are not brokers within the meaning of this section when they arrange or offer to arrange the transportation of shipments which they are authorized to transport and which they have accepted and legally bound themselves to transport. *Id.* (quoting 49 C.F.R. § 371.2(a)).

50.     The court also stated that an entity may be considered a motor carrier as opposed to a broker, only if it engages in solicitation for its own account. *Id.* at 550 (citing *Global Van Lines, Inc. v. I.C.C.*, 691 F.2d 773, 775 (5th Cir.1982)).

51.     In the *Schramm* case, the Court determined that the entity was acting as a broker and not as a motor carrier.  The Court stated that the broker did NOT accept responsibility to ship the freight under its motor carrier authority, did not solicit the load for itself and the customer understood that they were assigning/selling the load to carrier.  *See Schramm*, 341 F.Supp.2d at 549-550.

52.     Unlike *Schramm* in which the broker had both broker and motor carrier authority, and the court decided that it had used its broker authority, here RCX only has motor carrier authority. RCX could not have brokered this transaction because it had no authority to do so.  For that reason, the Court should hold that RCX Solutions, Inc. acted as the motor carrier.  *See infra*, Section A. 3.

53.     However, even if the Court examines the specific actions of RCX Solutions, Inc. it would show that they had in fact acted as the motor carrier in this transaction with About Tyme and should be deemed the motor carrier and statutory employer of Ronald Brown.

>    **a.     *RCX Solutions was Authorized to Transport and Accepted Responsibility to Ship the Freight Under its Motor Carrier Authority***

54.     RCX Solutions is an authorized motor carrier, not a broker.  (Ex. I, SAFER Web – Company Snapshot, RCX Solutions, Inc.; Ex. C Deposition of Jason Butler. 11:25-12:09; Fact 16, *supra* Section IV. Facts in Opposition to Summary Judgment).  Through his work as a salesman for Sunset Transportation, RCX Solutions, Inc. president Randy Clifton arranged for RCX Solutions, Inc. to carry the load from L'Oréal to Albea as the motor carrier.  (Facts 12, 13, 14, *supra* Section IV. Facts in Opposition to Summary Judgment).  The Bill of Lading for the load lists the carrier as Sunset/RCX Solutions and Ronald Brown signed on behalf of the carrier RCX Solutions.  (Ex. G, Bill of Lading, Fact 22, *supra* Section IV, Facts in Opposition to Summary Judgment).   The trailer used to carry the load is leased exclusively for the possession and use of RCX Solutions, Inc. (Ex. B, Xtra Lease Equipment Rental Agreement, Fact 20, *supra* Section IV, Facts in Opposition to Summary Judgment).

55.     RCX Solutions, Inc. has no authority to broker a transaction. (Fact 23, *supra* Section IV, Facts in Opposition to Summary Judgment; Ex. C Deposition of Jason Butler 11:25-12:09).  RCX Solutions, Inc. has never brokered a transaction. (*See* Ex. C Deposition of Jason Butler

28:22-29:06).   RCX Solutions, Inc. only utilizes its own employees or leased drivers to carry

loads.  (Ex. C Deposition of Jason Butler 17:09-15; Ex. D, deposition of Jonathan Neal, 65:15—

18, Ex. J, Deposition of Allan Crump, 33:10-12, 39:11-20, 43:05-11).  RCX Solutions, Inc. never

hires outside carriers.  *Id.*

### b.      RCX Solutions Inc. Solicited the Load for Itself

56.     L'Oréal is a customer of Sunset Transportation, Inc.  (Ex. D, Deposition of Jonathon

Neal, 36:13-21; Fact 17, *supra* Section IV, Facts in Opposition to Summary Judgment).  Sunset

Transportation, Inc. is a third party logistics provider.  (Ex. E, deposition of Randy Clifton,

13:12-21).  Randy Clifton is a sales agent for Sunset, Transportation. (Ex. E, deposition of Randy

Clifton, 13:08-11).   As a sales agent he brokers loads to authorized motor carriers. (Ex. E,

deposition of Randy Clifton, 13:18-21).   Through his relationship with Sunset Transportation,

Inc. Randy Clifton brokered the load to his own company RCX Solutions, Inc. as the motor

carrier.  (Ex. E, deposition of Randy Clifton, 23:19-24:14; Fact 14, *supra* Section IV, Facts in

Opposition to Summary Judgment).   RCX solutions, Inc. intended to carry the load from its

origination to its destination as it had done on all other loads under the L'Oreal / Albea Account.

(Ex. F. Affidavit of Randy Clifton; *see also* Ex. E, Deposition of Randy Clifton, 23:09-11, Facts

17, 18, *supra* Section IV, Facts in Opposition to Summary Judgment).

57.     There was nothing that would prevent RCX Solutions, Inc., as the motor carrier, from

being able to handle the shipment from Albea to L'Oréal, assuming a driver was available

because RCX had the proper licenses, certificates and authority to act as the motor carrier.   (Ex.

D, Deposition of Jonathan Neal, 65:19-66:05; Fact 16, *supra* Section IV, Facts in Opposition to

Summary Judgment).

c.   *RCX Solutions, Inc. did not Advise L'Oréal, Albea, and Sunset they were Assigning the Load to Another Motor Carrier*

58.   Due to an equipment breakdown RCX Solutions, Inc. dispatched Ronald Brown to transport the load.  (Fact 18, *supra* Section IV, Facts in Opposition to Summary Judgment). Ronald Brown signed the Bill of Lading on behalf of the designated carrier RCX Solutions, Inc. (Fact 22, *supra* Section IV, Facts in Opposition to Summary Judgment).  No one at RCX Solutions, Inc. advised any customer that it was hiring an outside carrier to transport the load. (Fact 19, *supra* Section IV, Facts in Opposition to Summary Judgment). No one at RCX Solutions, Inc. advised any customer that it was going to act as a broker and transfer the load to a separate motor carrier's control.  (*See* Fact 20, *supra* Section IV, Facts in Opposition to Summary Judgment).  No permission was requested or required because RCX Solutions, Inc. intended to continue as the motor carrier for all intents and purposes.  It is only after this collision, that RCX Solutions, Inc. is claiming they were a broker despite there being no indication they took any action as a broker in the transaction.

59.   Based on the facts underlying the specific transaction in this case and the nature of the relationship between L'Oréal, Sunset Transportation, Albea, and RCX Solutions, Inc., RCX acted as the motor carrier.  *See Schramm v. Foster*, 341 F.Supp.2d 536 at 549-550 (discussing facts showing whether an entity acts as a motor carrier).  Randy Clifton solicited the load for the RCX Solutions, Inc. account because it was his company that he wanted to obtain business for. Sunset Transportation, the broker, conveyed the load to RCX Solutions, Inc. as the motor carrier. RCX Solutions, Inc. was authorized to carry the load and they accepted responsibility to transport the load.  No one at RCX Solutions, Inc. asked the permission of any customer or the original broker if further brokering was permitted or advised anyone that further brokering would occur.  The facts show that RCX Solutions, Inc. intended to carry the load itself under its own

motor carrier authority and in fact did so.

### 3.  *RCX Solutions, Inc. could Not Legally be a Broker*

59.     The facts indicate that RCX Solutions, Inc. acted as a motor carrier qualifying them as the statutory employer under the federal regulations.  *See* 49 U.S.C. § 13102(2, 14); 49 C.F.R. §§ 371.2(a), 390.5.

60.     In addition to the facts, as a matter of law, RCX Solutions, Inc. could not have been a broker.  RCX Solutions, Inc. is not authorized for broker authority, only for motor carrier authority. (Fact 23, Section IV, Facts in Opposition to Summary Judgment).

61.     Because the RCX Solutions, Inc. does not have broker authority, it cannot broker loads without first applying for and receiving a license to operate as a broker according to 49 U.S.C. § 13902(a)(6):

> **(6)     Separate registration required**
> A motor carrier may not broker transportation services unless the motor carrier has registered as a broker under this chapter.

   49  U.S.C. § 13902(a)(6)

62.     A broker who knowingly engages in interstate brokerage without the required operating authority is liable to the United States for a civil penalty and can be liable to any injured party for all valid claims regardless of the amount pursuant to 49 U.S.C. § 14916(c):

> **(c)     Civil Penalties and Private Cause of Action**
> Any person who knowingly authorizes, consents to, or permits, directly or indirectly, either alone or in conjunction with any other person, a violation of subsection (a) is liable—
> (1)     to the United States Government for a civil penalty in an amount not to exceed $10,000 for each violation; and
> (2)     to the injured party for all valid claims incurred without regard to amount.

49 U.S.C. § 14916(c).

63.     Randy Clifton, President of RCX solutions, Inc. is also President of a company called

RCX Supply Chain Solutions, LLC.  (Ex. J, Deposition of Allan Crump, 29:03-11).  RCX Supply Chain Solutions, LLC is a registered broker and authorized to operate as a broker with the U.S. DOT, except its broker authority was revoked from November 3, 2014 until November 17, 2014.  (Ex. L, FMCSA Motor carrier – Licensing and Insurance – RCX Supply Chain Solutions LLC).

64.     On November 6, 2014, during the period in which RCX Supply Chain Solutions, LLC's brokering authority was revoked, Randy Clifton used Defendant, RCX Solutions, Inc. to contract with ABOUT TYME TRANSPORT, INC.  A Carrier Agreement dated November 6, 2014, lists RCX Solutions, Inc. as the "Broker" and About Tyme Transport, as the "Carrier".  (Ex. M. Carrier Agreement).

65.     Despite the titles that RCX Solutions, Inc. chose to assign itself and About Tyme, Inc., the case law states that what parties choose to call themselves is not determinative of their true identity.  *Gonzalez v. J.W. Cheatham, LLC*, 125 So.3d 942, 945 (Fl. App. 2013) (quoting *Hewlett–Packard Co. v. Brother's Trucking Enters., Inc.*, 373 F.Supp.2d 1349, 1352 (S.D.Fla.2005)).  It is the facts underlying the transaction.  *Id.*  (quoting *Schramm v. Foster*, 341 F.Supp.2d 536, 550).  Federal law is clear that RCX Solutions, Inc. was not a broker. 49 U.S.C.A. § 13902(a)(6).  Furth more, the "Carrier Agreement" was signed about 2 months prior to the incident at issue in this case.   The agreement entered between RCX Solutions, Inc. and Ronald Brown for him to carry the load on the date of the incident shows that Ronald Brown was dispatched by RCX Solutions, Inc. and carrying the load under their authority.

66.     The facts show that RCX Solutions, Inc. could not have legally brokered any transaction, including the transaction which forms the underlying facts of this lawsuit.  A question remains, however, as to whether Randy Clifton attempted to illegally use RCX Solutions, Inc. instead of

RCX Supply Chain Solutions, Inc. as a broker during RCX Supply Chain Solutions' broker revocation period.  Another unanswered question is whether Randy Clifton ever intended Ronald Brown to carry the load through About Tyme Transport, Inc.'s motor carrier authority rather than through RCX Solutions, Inc. or whether it is their attempt to escape liability for the collision by calling themselves a broker, when the facts indicate otherwise.

### 4.      The Lease Between RCX Solutions, Inc. and Xtra Lease, LLC Required RCX Solutions, Inc. to Maintain Control of the Trailer

67.      RCX Solutions, Inc. took possession of Unit OTRT W06745, a 2014 Wabash Trailer on August 12, 2014, by entering into a lease agreement with Xtra Lease, LLC.  (Ex. B, Equipment Rental Agreement).

68.      Under the Xtra Lease Equipment Rental Agreement, RCX Solutions, Inc. was required to maintain exclusive possession and control of the trailer for the duration of the lease:

> **4 Delivery, Receipt & Dropoff**
> (b) By taking possession of the Equipment, Lessee accepts the Equipment in the condition noted in the Equipment Rental Agreement and acknowledges receipt of the Equipment in good repair and working condition.  Lessee shall have exclusive possession, control and use, and assumes complete responsibility for the condition, operation, inspection and maintenance of the Equipment during the lease.  Lessee shall return the Equipment to Xtra Lease in the same condition noted in the Equipment Rental Agreement, normal wear excepted.

(Ex. B, Equipment Rental Agreement).

69.      RCX Solutions, Inc. could not have leased the trailer to Ronald Brown or About Tyme Transport, Inc. as an outside carrier under the terms of the lease.

70.      Instead, RCX Solutions, Inc. could have any of their employees haul the trailer because in that way it would remain within the company's "exclusive possession, control and use." (*See* Ex. B, Equipment Rental Agreement).

71.      The Equipment Rental Agreement is therefore evidence that RCX Solutions, Inc.

18

considered Ronald Brown an employee or a leased driver carrying loads under RCX, Solutions, Inc.'s motor carrier authority.  Otherwise, Ronald Brown's possession of the trailer would be violative of the Xtra Lease agreement.

72.     Importantly, the RCX Supply Chain Solutions, Inc. was not a party to the Equipment Lease Agreement.  Neither RCX Solutions, Inc. nor Xtra Lease, LLC contemplated that the trailer would be used to broker loads to outside carriers.  Otherwise, RCX Supply Chain Solutions, LLC as a separate entity would have entered into its own contract with Xtra Lease and such contract would necessarily contain a provision authorizing RCX Supply Chain Solutions, LLC to broker the trailer to an outside carrier. Ultimately, the evidence shows that Ronald Brown was not an outside carrier but working under the motor carrier authority of RCX Solutions, Inc.

**B.**   **RCX Solutions, Inc. is Independently Negligent in its Hiring, Supervision, Retention and Entrustment of a Motor Vehicle to Ronald Brown**

73.     Negligent hiring, retention and supervision are based on an employer's direct negligence. *Morris*, 78 S.W. 3d at 49.

74.     Negligent hiring, negligent retention and negligent supervision focus on an unfit or incompetent servant and actions or inactions by the employer which create an unreasonable risk of harm.  *See Doctor's Hosp. of Laredo Ltd. P'ship v. Droom*, 1998 WL 7554, at *20 (Tex. App.—San Antonio, Feb. 18, 1998), opinion withdrawn and superseded, 1998 WL 741568 (Tex. App.—San Antonio, Oct. 21, 1998).

75.     A negligent hiring and management claim in Texas requires a plaintiff to establish that: (1) an employee of the defendant committed an actionable tort against the plaintiff, (2) the plaintiff suffered damages as a result of the employee's foreseeable conduct, (3) the employer was negligent in hiring or supervising the employee and (4) the employee's misconduct would

not have occurred but for the employer's negligence.  *Ayres v. Parker*, 2013 WL 4048328, at *18

(W.D. Tex. July 29, 2013).

76.     Broken down, a negligent hiring action requires a showing of duty, a breach of that duty,

and damages proximately caused by the breach.  *Eure v. Sage Corp.*, 61 F.Supp.3d 651, 667

(W.D. Tex. 2014).   The plaintiff must show that he "suffer[ed] some damages from the

foreseeable misconduct of an employee hired pursuant to the defendant's negligent practices."

*Id.*

77.     To establish liability under a negligent entrustment theory, the plaintiff must show that:

(1) the employer entrusted the vehicle to its employee; (2) the employee was an unlicensed,

incompetent or reckless driver; (3) at the time of the entrustment, employer knew or should have

known that employee was an unlicensed, incompetent or reckless driver; (4) employee was

negligent on the occasion in question; and (5) employee's negligence proximately caused the

collision.  *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754 (Tex. 2007).

78.     RCX Solutions, Inc. was the statutory employer of Ronald Brown and owed a duty to

properly investigate him as a driver prior to hiring him:

> **49 CFR § 391.53: Driver investigation history file.**
>
> (a)     After October 29, 2004, each motor carrier must maintain records relating to the investigation into the safety performance history of a new or prospective driver pursuant to paragraphs (d) and (e) of § 391.23. This file must be maintained in a secure location with controlled access.
>
> > (1)     The motor carrier must ensure that access to this data is limited to those who are involved in the hiring decision or who control access to the data. In addition, the motor carrier's insurer may have access to the data, except the alcohol and controlled substances data.
> >
> > (2)     This data must only be used for the hiring decision.
>
> (b)     The file must include:

(1)    A copy of the driver's written authorization for the motor carrier to seek information about a driver's alcohol and controlled substances history as required under § 391.23(d).

(2)    A copy of the response(s) received for investigations required by paragraphs (d) and (e) of § 391.23 from each previous employer, or documentation of good faith efforts to contact them. The record must include the previous employer's name and address, the date the previous employer was contacted, and the information received about the driver from the previous employer. Failures to contact a previous employer, or of them to provide the required safety performance history information, must be documented.

(c)    The safety performance histories received from previous employers for a driver who is hired must be retained for as long as the driver is employed by that motor carrier and for three years thereafter.

(d)    A motor carrier must make all records and information in this file available to an authorized representative or special agent of the Federal Motor Carrier Safety Administration, an authorized State or local enforcement agency representative, or an authorized third party, upon request or as part of any inquiry within the time period specified by the requesting representative.

79.    In addition to investigating a driver prior to hire, a motor carrier must maintain a driver qualification file.  49 CFR § 391.51, mandates that:

### § 391.51: General requirements for driver qualification files.

(a)    Each motor carrier shall maintain a driver qualification file for each driver it employs. A driver's qualification file may be combined with his/her personnel file.

(b)    The qualification file for a driver must include:
(1)    The driver's application for employment completed in accordance with § 391.21;
(2)    A copy of the motor vehicle record received from each State record pursuant to § 391.23(a)(1);
(3)    The certificate of driver's road test issued to the driver pursuant to § 391.31(e), or a copy of the license or certificate which the motor carrier accepted as equivalent to the driver's road test pursuant to § 391.33;
(4)    The motor vehicle record received from each State driver licensing agency to the annual driver record inquiry required by § 391.25(a);
(5)    A note relating to the annual review of the driver's driving record as required by § 391.25(c)(2);
(6)    A list or certificate relating to violations of motor vehicle laws and

21

ordinances required by § 391.27;

(7)  (i)  The medical examiner's certificate as required by § 391.43(g) or a legible copy of the certificate.

80. Despite the requirements to investigate a driver and maintain a qualification file on him, RCX Solutions, Inc. did nothing to screen Ronald Brown prior to employing him nor did they keep any records on his qualifications. The only thing Randy Clifton did was check whether About Tyme Transport, Inc. had operating authority and print out a copy of the carrier's safety rating. (Ex. F, Deposition of Randy Clifton, 30:7-25).

81. The RCX Solutions, Inc. safety director Allan Crump admitted that he performed no investigation whatsoever on Ronald Brown because he did not consider him to be a leased driver. (*See* Ex. J, Deposition of Allan Crump, 27:15-28:15, 38:5-10).

79. Ronald Brown did not have to fill out an application for employment as required by the FMCSA in a driver qualification file. (Ex. C, Deposition of Jason Butler, 43:16-21; *see* 49 C.F.R. § 391.51(b)(1)).

82. Allan Crump also did not perform a road test as required under 49 C.F.R. § 391.51(b)(3) and testified that he believes a road test is not required if a potential driver states they have prior driving experience. (Ex. J, Deposition of Allan Crump, 26:11-27:14). He would rely solely upon the driver's purported experience.

83. The only training at RCX Solutions, Inc. at the time of the collision was an orientation video. (Ex. J, Deposition of Allan Crump 23:13-18). The video was not shown to Ronald Brown because it was only shown to those the company considered employees or owner/operators. (*Id.* at 25:10-23).

84. After the collision, the company began showing a safety video series recommended by their insurance company which included hours of service, defensive driving and other topics.

Every month there is a new assignment for the drivers and quizzes, such that it is an ongoing training system.  (*Id.* at 21:10-23:12). Prior to the collision there was no such training protocol.

85.     RCX solutions, Inc. performed no investigation whatsoever after the collision. Allan Crump did not do a root cause analysis or examine whether the collision was preventable:

> Q:     Did you do a – an investigation after this crash where Mr. Brown was on his cell phone, lost control of his vehicle, slid across the median and had a head-on collision with my client?
>
> A:     No.

*Id.* at 37:25-38:04.

86.     RCX Solutions, Inc. never had a safety meeting with its employees.  (Ex. J, Deposition of Allan Crump, 20:08-11).  They had one meeting in the last 5 years where safety was a topic that arose, however none of the factors that would have prevented the collision in this case were discussed at the meeting. (Ex. J, Deposition of Allan Crump, 20:12-21:09).   Mobile device use was not discussed, defensive driving was not discussed and proper driving technique in bad weather was not discussed.   (*Id.* at 21:03-09).   No steps in hiring, training, supervision, and retention were performed on Ronald Brown.

87.     Based on the foregoing, RCX Solutions, Inc. had a duty to perform a reasonable investigation into Ronald Brown before allowing him to haul goods on their behalf.  They breached that duty by failing to perform any investigation into Mr. Brown's safety performance history or maintain any records evidencing his qualifications as a driver of a commercial motor vehicle.  Specifically no training whatsoever was conducted on defensive driving, the dangers of cell phone use or proper driving technique on wet roadways.  An investigation would have revealed whether Ronald Brown was qualified to operate a commercial motor vehicle, and

training and supervision would have prevented him from engaging in the dangerous driving behaviors which caused the collision.

88.     In sum, RCX Solutions, Inc. entrusted Ronald Brown to drive a fully loaded tractor trailer without having performed any check into his background.   Ronald Brown while in RCX's employ drove too fast for the conditions on the roadway, took faulty evasive actions and was engaging in a cell phone conversation at the time of the tragic wreck, making RCX Solutions, Inc. liable for the negligent entrustment of the vehicle to Ronald Brown.   (*See* Facts 10, 11 *supra* Section IV, Facts in Opposition to Summary Judgment).

**C.   Plaintiff Presents Sufficient Evidence to Defeat Summary Judgment on Gross Negligence**

89.     Gross negligence is a higher degree of negligence, often equated with recklessness. *See Burk Royalty Co. v. Walls*, 616 S.W.2d 911, 920 (Tex. 1981).  To recover on a gross negligence theory, the plaintiff must prove that: (1) the act or omission, when viewed from the defendant's standpoint at the time it occurred, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and (2) the defendant had actual, subjective awareness of the risk but proceeded with a conscious indifference to the rights, safety, or welfare of others.   Tex. Civ. Prac. & Rem. Code §41.001(11)(A).   Either element may be proved by circumstantial evidence. *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1998).

90.     Ronald Brown was on his cell phone at the time of the collision.  (Ex. C, Deposition of Jason Butler 39:17-40:12, Ex. K, Deposition of Robert Thomas, 59:11-61:11).   Cell phone records revealed that he had been on the phone with Thurrell Harris, a friend and former driver, for 3 minutes immediately before the crash.  (*See* Exhibit K, Deposition of Robert Thomas, 59:11-61:11).   He had also spoken with Mr. Thurrel Harris about half an hour earlier for approximately 31 minutes. *Id.*   Ultimately his cell phone records showed multiple instances of

talking on the cell phone throughout the day. *Id.*

91.     Allan Crump, the safety director for RCX Solutions, Inc., would consider it to be poor judgment for a driver to be on his mobile device, on a rainy night, to lose control of his vehicle, cross more than 100 feet of greenbelt median and run head on into traffic. (*See* Ex. J, Deposition of Allan Crump, 42:02-19).

92.     RCX Solutions, Inc.'s safety director Allan Crump was aware that mobile device use can be extremely dangerous in a commercial motor vehicle. (Ex. J, Deposition of Allan Crump 16:10-14).

93.     He knows that there is a high probability of serious injury or death if a truck driver is on a mobile device inappropriately and gets involved in a collision. (Ex. J, Deposition of Allan Crump 16:15-18).

94.     Despite this knowledge, RCX Solution, Inc. does not know whether at the time of the collision, they provided any training material or instruction regarding cell phone dangers. (*See* Ex. J, Deposition of Allan Crump, 24:12-19).

95.     RCX Solutions, Inc. has policies about mobile device use for their drivers, but did not require or recommend to leased drivers or outside carriers anything about mobile device use. (Ex. E, Deposition of Randy Clifton, 36:12-18).

96.     RCX Solutions, Inc. has no requirement that an outside carrier use any equipment to make mobile communications safer. (Ex. E, Deposition of Randy Clifton, 44:4-7).

97.     Randy Clifton, the president of RCX Solutions, Inc. understands that the reason that an employer investigates the safety record of a driver is that he wouldn't want an unsafe driver hauling his loads or pulling his trailers. (Ex. E, Deposition of Randy Clifton, 30:07-14).  He agrees that commercial motor vehicles weigh upwards of 70, 80 or 90,000 pounds and people

can get seriously killed or injured if a driver is unsafe.  (Ex. E, Deposition of Randy Clifton, 30:15-25).

98.     The facts above prove that in this case RCX Solutions, Inc. was aware of the extreme degree of risk involved in employing an unsafe driver and in not checking into a driver's safety records.   Additionally, RCX Solutions, Inc. knew that cell phone use while operating a commercial motor vehicle has the potential to result in serious injury or death.   Acknowledging that they have a cell phone policy for their own drivers, they fail to have any policy, requirement or recommendation whatsoever for those drivers they do not consider to be under their employ. Evidence of gross negligence is clear where RCX Solutions, Inc. employed Ronald Brown to carry a load for them and did nothing to protect the public when they knew of the high likelihood of serious injury or death that could result from their failure to conduct or enforce any safety rules.

99.     Accordingly, the Court should allow the trier of fact to make a decision as to whether or not RCX Solutions, Inc. acted with gross negligence.

## VI. CONCLUSION AND RELIEF REQUESTED

100.    For these reasons, Plaintiffs ask the court to deny *Defendant's Motion for Summary Judgment*.  Plaintiffs prays for such other and further relief to which they may be justly entitled.

RESPECTFULLY SUBMITTED,

THE LAW OFFICES OF THOMAS J. HENRY
4715 FREDERICKSBURG ROAD, 5TH FLOOR
SAN ANTONIO, TEXAS 78229
PHONE: (210) 656-1000
FAX: (361) 985-0601

BY:     */S/ RICHARD HUNNICUTT, III*
THOMAS J. HENRY
Federal Admission No.: 12980
STATE BAR NO. 09484210

RICHARD HUNNICUTT, III
Federal Admission No.: 17838
STATE BAR NO. 10279700
*rhunnicutt-svc@tjhlaw.com**
Service by Email to this address only*

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing has been delivered to

the individual identified below, by the method of service indicated on May 23, 2016.

***Via CM/ECF: dortega@namanhowell.com***
***& ekrudop@namanhowell.com***
David L. Ortega
Erik L. Krudop
Naman, Howell, Smith & Lee, PLLC
10001 Reunion Place, Suite 600
San Antonio, Texas 78216
Tel: (210) 731-6353
Fax: (210) 785-2953
COUNSEL FOR ABOUT TYME TRANSPORT, INC.

***Via CM/ECF: lpickett@gallowayjohnson.com***
***& rcapehart@gallowayjohnson.com***
Les Pickett
Ron T. Capehart
Galloway, Johnson, Tompkins
Burr & Smith
1301 McKinney Suite 1400
Houston, Texas 77010
Tel: (713)599-0700
Fax: (713)599-0777
COUNSEL FOR XTRA LEASE, LLC

***Via CM/ECF: lpickett@gallowayjohnson.com***
***& rcapehart@gallowayjohnson.com***
WILLIAM R. MOYE
ANDREW J. McCLUGGAGE
One Riverway, Suite 1600 Houston
Texas 77056
Tel: (713) 403-8210
Fax: (713) 403-8299
COUNSEL FOR RCX SOLUTIONS, INC.

*/S/ RICHARD HUNNICUTT, III*
RICHARD HUNNICUTT, III

27