Case 2:15-cv-00073 Document 77 Filed in TXSD on 07/19/16 Page 1 of 10

United States District Court
Southern District of Texas
**ENTERED**
July 19, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ALEXANDRO PUGA, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 2:15-CV-73 |
| | § | |
| ABOUT TYME TRANSPORT, INC., *et al*, | § | |
| | § | |
| Defendants. | § | |

# ORDER

Plaintiffs Alexandro and Norma Puga filed this action against Defendant RCX Solutions, Inc. (RCX) and others[1] for personal injuries resulting from a motor vehicle collision. D.E. 27. Against RCX, the Pugas assert negligence causes of action based on respondeat superior and the breach of independent duties regarding the contractual or common law employment of Brown. The Pugas also claim gross negligence and seek exemplary damages.

Before the Court is RCX's Motion for Summary Judgment (D.E. 65), claiming that: (1) as a matter of law, About Tyme Transport, Inc. (About Tyme) was RCX's independent contractor and Brown was not RCX's employee; (2) as a matter of law, RCX was not the motor carrier responsible for Brown's driving of the tractor-trailer rig; (3) as a matter of fact, there is no evidence that RCX was independently negligent; and (4) as a matter of fact, there is no evidence of RCX engaging in gross negligence.

---

[1] Ronald Brown, the driver of the tractor-trailer rig that struck Plaintiff Alexandro Puga, died in the collision. Defendants, About Tyme Transport, Inc. (owner of the tractor and admitted employer of Brown) and Xtra Lease, LLC (owner of the trailer) have executed settlements and/or have been dismissed from the case. D.E. 55, 67, 68.

The Pugas' response (D.E. 69) focuses entirely on a new theory: that RCX was Brown's statutory employer under the Motor Carrier Act (MCA), 49 U.S.C. § 31100 et seq. and thus had and breached related duties with respect to the employment and equipping of Brown, along with statutory liability for his conduct. The parties have since provided supplemental briefing (D.E. 72, 73, 75) on whether RCX can incur liability as a statutory employer. Additionally, the Pugas seek leave to amend their complaint to include their statutory employer cause of action, which—for purposes of showing no prejudice—they present as a natural outgrowth of their respondeat superior allegations. D.E. 66, 74. RCX opposes any amendment as untimely and futile. D.E. 71, 75.

For the reasons set out below, the Court GRANTS the motion for leave to amend and DENIES the motion for summary judgment.

## STANDARD OF REVIEW

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251–52. In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits, and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion. *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002).

The Court may not weigh the evidence, or evaluate the credibility of witnesses. *Id*. Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." FED. R. CIV. P. 56(e); *see also Cormier v. Pennzoil Exploration & Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992) (*per curiam*) (refusing to consider affidavits that relied on hearsay statements); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) (*per curiam*) (stating that courts cannot consider hearsay evidence in affidavits and depositions). Unauthenticated and unverified documents do not constitute proper summary judgment evidence. *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (*per curiam*).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. FED. R. CIV. P. 56(e); *Anderson*, 477 U.S. at 248. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni*, 278 F.3d at 451.

## FACTS

According to the police report, there were poor weather conditions and wet pavement on U.S. 77 in the early evening of January 9, 2015. Alexandro Puga was driving southbound in a Dodge Ram pickup on the highway south of Refugio, Texas. Brown was traveling north at an unsafe speed. There is also evidence that he was talking on his cell phone when his tractor-trailer rig apparently hydroplaned. Brown allegedly failed to take appropriate corrective action, crossed the median, and struck Puga, causing Brown's rig to jack-knife. The vehicles caught fire and Brown died at the scene. Puga was injured and taken to the hospital. D.E. 69-1.

The Pugas sued About Tyme, the company that ostensibly employed Brown and owned the tractor he drove. About Tyme was formed by three individuals who had been friends since childhood. The company had no other officers or employees. Brown and Thurell Harris were both experienced truck drivers. They convinced Robert Thomas to contribute $20,000 to purchase a tractor and to pay the fees for authorization to drive as a motor carrier. While he acted as President, Thomas had no knowledge, experience, or training with respect to truck driving or DOT compliance and he took no active role in the management of the business.

By the time of the shipment arranged with RCX, Harris had left the company. Brown took care of all of the operations and maintained his paperwork in the truck. The expectation was that if there was a profit after paying expenses, Brown and Thomas would split it 50/50. But Thomas never received any money from the company profits, if any. Thomas admitted to nearly total ignorance of the requirements of the MCA or

Federal Motor Carrier Safety Regulations (FMCSR) specifically and the business of truck driving, generally. Brown, alone, was responsible for qualifying to do the work, generating the contracts, performing the work, and receiving the money.

RCX argues that About Tyme was Brown's sole employer. It represents that the Pugas settled their claims against About Tyme on that basis. Yet there has been no determination in this case—as a matter of fact or law—that About Tyme was acting as "an" employer or "the" employer under the MCA and FMCSR.

The Pugas also sued RCX as Brown's employer for the shipment he was hauling at the time of the collision. RCX, relying on two written agreements, maintains that it was not, and could not be, Brown's employer because it contracted only with About Tyme and About Tyme was an independent motor carrier. The agreements, however, are not the whole story.

RCX is one of at least three companies largely controlled by Randy Clifton. As the company witnesses[2] testified, RCX is in the business of hiring company drivers and leasing owner/operators to drive shipments under RCX's motor carrier number. RCX Supply Chain Solutions, Inc. (RCXSCS) is a brokerage company, placing shipments with independent motor carriers who work under their own motor carrier number. Sunset Transportation (Sunset) is a broker, that places shipments with RCX, RCXSCS, or other companies as circumstances require. All three companies share the same office and the

---

[2] The summary judgment evidence includes deposition testimony of Jason Butler, who works in sales as a driver recruiter for RCX; Jonathan Neal, Operations Manager for both RCX and RCXSCS; Randy Clifton, President of both RCX and RCXSCS, and Sales Agent for Sunset; and Allan Crump, Safety Director for RCX.

same employees, who work for all three at the direction of Randy Clifton, with paychecks issued by one of the RCX companies.

On November 6, 2014, RCX entered into a Carrier Agreement with About Tyme. D.E. 65-2.  Brown signed the agreement for About Tyme, without Thomas's knowledge or participation.  Pursuant to the Carrier Agreement, RCX agreed to act as a broker to find and negotiate shipping agreements for which About Tyme would act as motor vehicle carrier, hauling freight.  Under the Carrier Agreement, About Tyme agreed to supply equipment and drivers for the shipping agreements—on RCX's receipts only—at scheduled rates of compensation.  About Tyme would provide liability insurance and comply with MCA requirements and provided evidence of its own Department of Transportation (DOT) authority.  In sum, the parties agreed that the arrangement was one by which About Tyme was RCX's independent contractor.  The parties disclaimed any direct employment relationship.

According to defense witnesses, the Carrier Agreement was a mistake.  RCX is not a broker, as recited in the Carrier Agreement.  Furthermore, if About Tyme were to be hired as an independent motor carrier, its agreement should have been with RCXCSC. RCX does not hire carriers, only drivers (whether company drivers or leased owner/operators).

RCX and About Tyme also executed a Trailer Interchange Agreement, dated November 6, 2013.  Pursuant to that agreement, RCX agreed to rent to About Tyme trailers that RCX owned, leased, or controlled for purposes of completing shipments. Brown signed that agreement in his own name as "User".  During the time that Brown or

About Tyme was in possession of those trailers, Brown or About Tyme was responsible for the safety, maintenance, damages and losses of the trailers and their tires. Once again, About Tyme was responsible for providing liability insurance. D.E. 65-3.

But defense witnesses testified that the Trailer Interchange Agreement was also a mistake. It is only appropriate for shipping arrangements with leased owner/operators, not independent motor carriers. And About Tyme, as an independent motor carrier, does not operate as a "User".

With respect to the particular freight that Brown was hauling at the time of the collision, L'Oreal had an arrangement with Sunset by which Sunset would broker the shipping of empty cosmetic cases from Albea, in Brownsville, Texas, to L'Oreal in Little Rock, Arkansas. Sunset placed the shipment with RCX. RCX began the job in-house, but encountered equipment problems and could not complete the job. Jason Butler, on behalf of RCX, called Brown to take over the shipment. Brown had already alerted RCX that he was available and looking for a shipment to get him back to Little Rock. So Brown took the About Tyme tractor to Brownsville and began the shipment that ended in the collision south of Refugio, Texas.

## DISCUSSION

In the course of summary judgment proceedings, the Pugas have admitted that they are no longer predicating liability against RCX on any contractual or common law theory of employment-related duties. They contend that traditional notions of respondeat superior do not apply, citing *Tamez v. Southwestern Motor Transport, Inc.*, 155 S.W.3d 564, 573 (Tex. App.—San Antonio 2004, no pet.). D.E. 73, p. 3. Instead, each of their

arguments by which they oppose summary judgment and seek to amend their complaint involves liability predicated upon a finding that RCX was Brown's statutory employer under the FMCSR.

RCX, claiming that About Tyme was clearly Brown's employer, argues that Brown cannot have more than one employer, thus exonerating RCX. Whether or not Brown can have more than one employer (an issue this Court need not and does not address at this juncture), the summary judgment question is whether either About Tyme or RCX satisfied the requirements of an employer under the FMCSR as a matter of law or whether there are fact issues. The resolution of claims between the Pugas and About Tyme does not pretermit this issue.

The summary judgment evidence raises disputed issues of material fact because About Tyme could be determined to have no functional role in Brown's arrangement with RCX. Practically speaking, About Tyme's only reason for existing was to provide the financing for the purchase of the tractor. All other operations were controlled by Brown, alone. By the same token, the evidence indicates that the job was initially given to RCX and that RCX called in Brown to fill in for it. RCX only contracts with company drivers and owner/operators rather than independent motor carriers. Thus, if it contracted with Brown, it did so as if Brown were merely an owner/operator, a classic fact pattern for the application of the statutory employer provisions. *See generally, Crocker v. Morales-Santana*, 854 N.W.2d 663, 668-69 (N.D. 2014).

On this record, the Court cannot, as a matter of law, rule out RCX as Brown's statutory employer at the time of the collision. Without the ability to determine the

employment issue, the Court cannot determine what duties RCX owed with respect to Brown's alleged employment, such that all other issues set out in RCX's motion remain incapable of resolution on this record.

Because there is sufficient evidence to raise a fact question on the issue of RCX as Brown's statutory employer, permitting Plaintiffs to amend their complaint to allege statutory employer claims is not futile. Because RCX's authority to act as a broker is a contributing fact to the employment issues, and Plaintiffs recently learned that RCXSCS, which is set up as a brokerage company, may have been without authority to act in that capacity at the time of the transaction, there are new issues related to how and why the L'Oreal shipment was assigned to Brown, ostensibly through RCX. Claims related to this issue are, likewise, not futile.

While RCX complains about the lack of good cause for amendment and the timing thereof, the Court notes that the parties apparently consented to the taking of the relevant depositions after the discovery deadline. There is also limited prejudice because the issue of which company was Brown's employer has been apparent from the start of this case. New evidence was obtained at the May 3, 2016 depositions and this Court is willing to continue this matter to accommodate the parties' concerns regarding prejudice.

## CONCLUSION

For the reasons set out above, the Court DENIES the motion for summary judgment (D.E. 65), and GRANTS the motion for leave to file second amended complaint (D.E. 66). The Clerk of the Court is ordered to file Plaintiffs' Second Amended Complaint, which was filed as Exhibit A to Plaintiff's motion. (D.E. 66-1).

The Court GRANTS the Joint Motion for Continuance (D.E. 76) and enters a Second Amended Scheduling Order.

ORDERED this 19th day of July, 2016.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE