United States District Court
Southern District of Texas
**ENTERED**
January 03, 2017
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ALEXANDRO PUGA, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 2:15-CV-73 |
| | § | |
| ABOUT TYME TRANSPORT, INC., *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Plaintiffs Alexandro and Norma Puga (the Pugas) seek to recover damages for personal injuries from Defendant RCX Solutions, Inc. (RCX), alleging that RCX was the statutory employer of Ronald Brown (Brown), the driver of the tractor-trailer rig that struck the vehicle driven by Alexandro Puga. RCX previously sought summary judgment that it could not be liable because it was not Brown's employer by contract or by common law. D.E. 65. The Court observed that Plaintiffs had abandoned any claim of contractual or common law employment and had adopted, instead, a statutory employment argument. Because that theory had not been pled, the Court granted leave to the Pugas to amend their complaint and assert that theory.

Now before the Court is RCX's second motion for summary judgment (D.E. 91), again asserting that it has no employer-based responsibility for Brown's actions. In particular, RCX argues that: (1) as a matter of law, there was no lease agreement to support a finding that RCX was Brown's statutory employer; (2) the purposes of the Motor Carrier Act were satisfied by About Tyme's status as carrier, with the requisite

insurance coverage, and there should be no multiple-employer theory; (3) there is no evidence of proximate cause to support any theory of RCX engaging in independent negligence that caused Plaintiffs' damages; and (4) there is no evidence of gross negligence or malice.  The Pugas have responded (D.E. 94), and RCX has replied (D.E. 97).  For the reasons set out below, the motion is GRANTED IN PART and DENIED IN PART.

## FACTS

The facts briefed by the parties have not changed significantly since the previous summary judgment motion.  *See* Order, D.E. 77.  In sum, Sunset Transportation brokered the transport of a shipment for L'Oreal USA, placing it with RCX.  RCX expected to fulfill the contract by using a leased driver.  RCX's original leased driver had an equipment failure and could not handle the shipment.  So RCX, without involving Sunset Transportation, L'Oreal USA, or any other entity, called in Ronald Brown, who was co-owner of About Tyme Transport, Inc. and its only driver.  Brown agreed with RCX to transport the shipment, but there is no documentation of the terms of that arrangement. There is no evidence of a written lease and RCX denies that there was an oral lease.

It appears that Brown did not use RCX's placard on his tractor, but rather continued to drive with About Tyme's placard.  RCX now claims to have acted as broker for the shipment, assigning it to About Tyme pursuant to a Carrier Agreement (D.E. 91-3).  However, it is undisputed that RCX did not have Department of Transportation authority to act as a broker at the time of this shipment.  This argument of RCX-as-broker also runs contrary to the Bill of Lading (D.E. 94-2), which allowed Brown to pick up the

cargo that had been loaded into RCX's leased trailer.  The Bill of Lading lists "Sunset/RCX" as the carrier.

As documented in the Texas Peace Officer's Crash Report, during the transport of the L'Oreal shipment, Brown was driving at an unsafe speed in wet conditions, hydroplaned, crossed the median, collided with Alexandro Puga's vehicle, jackknifed, and caused both vehicles to catch on fire.  D.E. 94-1, p. 2.  There is also some evidence that Brown was talking on his cell phone at the time of the accident.  Brown was killed and About Tyme's tractor burned in the ensuing fire.  Puga was injured.

The Pugas designated Roger Allen as their expert on motor carrier issues and they have attached his report to their response.  D.E. 94-2, pp. 32-55.  RCX did not object to the consideration of Allen's opinions in connection with the summary judgment proceedings and, in fact, cited to them in support of some of RCX's arguments.  However, Allen's opinions are subject to a separate motion filed by RCX to limit or exclude his testimony.  D.E. 88.  Without adjudicating the motion to exclude, the Court finds that Allen's opinions are not necessary to the disposition of this motion and are thus disregarded at this time.

## DISCUSSION

### A. Statutory Employer Status Does Not Require Proof of "Lease".

RCX contends that, as a matter of law, it cannot be the statutory employer of Brown and it thus incurred no liability for his negligence.  In setting up this argument, RCX relies heavily on *Crocker v. Morales-Santana*, 854 N.W.2d 663, 668-69 (N.D. 2014), which describes the reasons for the creation of the statutory employer relationship

and uses the term "lease" as the standard scenario under which vicarious liability for a driver's negligence is extended to a carrier.  However, nothing in *Crocker* indicates that an arrangement short of a lease is insufficient to apply statutory employer liability.  That issue was not presented there.

In fact, in refusing to extend statutory employer status to a broker, the *Crocker* opinion states that the operative facts are—with respect to the specific transaction at issue—one party, in fact, acting as a carrier and the other acting as driver for the shipment.  *Id.* at 671.  As *Crocker* explains, the statutory employer relationship was created to put an end to arrangements by which carriers leased equipment owned by drivers or their associated business entities and called the drivers independent contractors or owner-operators with their own motor carrier authority in order to escape liability for incidents arising from the drivers' negligence.  *Id.* at 670  Now—whether the drivers are called direct employees, independent contractors, or owner-operators—if the carrier hires them to transport a shipment, they are the carrier's statutory employees and the carrier has statutory control over the equipment and the driver to support vicarious liability.

In this respect, *Crocker* is entirely consistent with the plain language of the statute, which states:

> (a) **General authority of Secretary**.—The Secretary may require a motor carrier providing transportation subject to jurisdiction under subchapter I of chapter 135 that ***uses*** motor vehicles not owned by it to transport property under an ***arrangement*** with another party to—
>
> (1)   make the arrangement in writing signed by the parties specifying its duration and the compensation to be paid by the motor carrier;

> > (2)     carry a copy of the arrangement in each motor vehicle to which it applies during the period the arrangement is in effect;
> >
> > (3)     inspect the motor vehicles and obtain liability and cargo insurance on them; and
> >
> > (4)     have control of and be responsible for operating those motor vehicles in compliance with requirements prescribed by the Secretary on safety of operations and equipment, and with other applicable law as if the motor vehicles were owned by the motor carrier.

49 U.S.C. § 14102(a) (emphasis added).[1]

Plaintiffs have at least raised disputed issues of material fact supporting a finding that they met the qualifying conditions for applying the statutory employer requirements. There is evidence that RCX, acting as a motor carrier, *used* the tractor owned by About Tyme to transport property under an *arrangement* with Brown.  In fact, the only time that the statute includes the term "lease" is in the heading.  The body of the statute refers to the "arrangements," rather than a "lease."  The implication is that the necessary relationship exists, whether or not it is termed a "lease."  It is the fact of "use" that triggers the vicarious liability imposed by the Motor Carrier Act.

Once the Pugas satisfy this threshold requirement—use—the statute, set out above, goes on to prescribe four categorical requirements that accompany that carrier's use, in order to make it lawful.  While the first and second requirements mandate the carrier to reduce the arrangement to writing and have that writing accompany the vehicle,

---

[1]   Plaintiffs cite 49 U.S.C. § 11107 and 49 C.F.R. § 1057 as the controlling statute and regulation for statutory employer status, as set out in *Zamalloa v. Hart*, 31 F.3d 911, 913 (9th Cir. 1994).  They further discuss the Interstate Commerce Commission (ICC) as the enforcing body.  D.E. 94, p. 8.  However, in 1995, the ICC was abolished and the statutes and regulations were reorganized and renumbered to be enforced by the Department of Transportation.  ICC Termination Act of 1995, PL 104–88, 109 Stat 803.  Plaintiffs reference the correct statute and regulations in their pleading.  D.E. 78, p. 5.

those requirements are separate from, and in addition to, the imposition of statutory liability in the third and fourth requirements.  Each of the four categorical requirements are set out with equal dignity.  Thus the duties to inspect and insure the vehicles and to control and be responsible for their operation exist whether or not the lease is written and carried with the vehicles.

The motor carrier regulations do not mandate a different result.  While RCX claims that the lease requirement for statutory employment status appears in 49 C.F.R. §§ 376.11 and 376.12, those regulations, like the statute, state only the conditions upon which the carrier may lawfully proceed with its use of equipment it does not own.[2]  It is required to enter into a lease for the equipment, setting out specific terms.  Failure to do so does not exonerate it from statutory employer liability.  Rather, the lease requirement has only the potential of placing the carrier out of compliance with the law.

The Court concludes that any requirement of a lease is a consequence of triggering the statute, not the means for triggering the statute.  Therefore, no lease—written or oral—is required prior to imposing statutory liability on RCX as an employer.  Consequently, the Court DENIES IN PART RCX's request for summary judgment based on its argument that there is no evidence of a lease.

## B.  There May Be Two Employers

RCX argues that the Pugas should not be permitted to assign the vicarious liability of an employer to RCX because that liability has already been successfully assigned to

---

[2]  "[T]he authorized carrier may perform authorized transportation in equipment it does not own only under the following conditions . . . ."  49 C.F.R. § 376.11.

About Tyme.   Previously, the Pugas had sued About Tyme as Brown's employer, including alternative pleadings that Xtra Lease, LLC and RCX were also Brown's employers—jointly or alternatively.  D.E. 1-3, 27.  Alternative and inconsistent pleadings are permissible.  Fed. R. Civ. P. 8(d).  And the Pugas's current claims against RCX are consistent with its current pleading.  D.E. 78.  The Court rejects RCX's argument that the Pugas's statutory employer theory must fail because it is inconsistent with their pleadings.

RCX goes on to state that About Tyme had more than the minimum insurance coverage limits required for motor carriers, which policy limits were paid to the Pugas to settle their claim against About Tyme.   Thus, RCX argues, the purpose behind the statutory employer provision has been served because the Pugas were able to recover for their injuries from About Tyme as a financially responsible defendant.   RCX appears to assert that the Motor Carrier Act is interested in supplying only one financially responsible party; Brown needed only one employer and that employer was About Tyme.

The first flaw in this argument is that RCX seeks to treat as res judicata a matter that was settled out of court.   A compromise and settlement between parties does not involve court action, court approval, a court decision, or a final judgment.   Thus any attempt to use the About Tyme settlement as a bar to assigning employer liability to RCX is rejected.

Second, RCX has not cited any authority for the concept that an injured party is limited to one recovery from a single financially responsible party.  If RCX is found to be "an" employer or "the" employer, the only significance of the About Tyme settlement is

in applying the one satisfaction rule.  And that issue can only be determined on the basis of the damages incurred—a matter not addressed by the summary judgment motion.

Cases have acknowledged that a driver may have more than one employer, subject to joint and several liability consistent with state law.  *See generally, Zamalloa, supra* at 916; *Simmons v. King*, 478 F.2d 857, 867 (5th Cir. 1973).  RCX's attempt to distinguish *Zamalloa* is unpersuasive.  While the *Zamalloa* court considered the driver and the carrier to have established an oral lease, that lease was evidenced by the driver setting out to pick up the load prior to executing any written lease.  Here, Brown had picked up the load at RCX's direction.  While there may be no evidence that the parties had expressly agreed to execute a written lease, it is clear that RCX, if found to be acting as a carrier in this transaction, was using Brown and his equipment.  In that event, the law imposed upon RCX an obligation to execute a written lease.

*Zamalloa* has demonstrated that a carrier's statutory employer liability begins when the driver responds to the carrier's direction.  And that liability persists, despite another carrier having contractual employer liability.  Furthermore, RCX does not attempt to distinguish the *Simmons v. King* decision.  As the Fifth Circuit held, the liability of one employer does not insulate another employer from liability.  *Simmons, supra* at 867.

Thus it makes no difference to RCX's liability that the Pugas alleged that About Tyme was liable as Brown's employer and About Tyme's insurance carrier paid policy proceeds in excess of the minimum statutory requirements.  The Court DENIES IN

PART RCX's motion for summary judgment that About Tyme's settlement insulated it from liability.

### C. There is No Evidence of Proximate Cause from Independent Negligence.

RCX argues that it had no duty to the Pugas to support a finding of individual or vicarious employer-based liability.  As set out above, the Court rejects that proposition, holding that there is a disputed issue of material fact as to whether RCX was a carrier and was Brown's statutory employer, a status that carries with it the duties imposed by law and discussed by the parties.  The Court thus holds that the Pugas are entitled to proceed on their claims that RCX is vicariously liable for Brown's negligence.  The scope of RCX's summary judgment motion does not encompass any challenge to Brown's liability, which could extend to RCX as Brown's statutory employer, given the necessary fact findings.

This does not hold true, however, with respect to allegations of RCX's independent negligence.  Again, the Court rejects RCX's argument that it had no employer-based duties related to this incident.  And the Pugas have provided evidence of breaches of RCX's duties as employer, as RCX has freely admitted that it did nothing to investigate, qualify, test, train, or supervise Brown.  The problem with respect to this category of issues is that the Pugas have not supplied evidence of proximate cause.

In response to the summary judgment motion, the Pugas refer the Court to part IV of their Response (D.E. 94) for evidence of RCX's individual liability.  But nothing in that factual recitation addresses whether or how RCX's alleged failure to meet its duties as employer foreseeably made the incident more likely or more damaging.  Even if the

Court were to refer to Allen's expert report (D.E. 94-2), which is subject to a motion to exclude, the Court finds it to be replete with evidence of duty and breach, but devoid of evidence of proximate cause. The only reference is global and conclusory: "In my opinion, the matters contained in this report and the negligence of About Tyme, RCX, and Mr. Brown led to and caused the collision on January 9, 2015." D.E. 94-2, p. 55.

Without evidence that investigating Brown or testing him would have shown Brown to be an unsafe driver, for instance, there is no proximate cause. Without evidence of an equipment defect that would have been revealed and repaired by proper inspection and maintenance, there is no proximate cause. The Pugas have offered no evidence that, had RCX satisfied its duties, the Pugas would not have been injured— RCX would not have hired Brown, it would not have assigned this particular job to Brown, Brown would have driven in a different manner, or the equipment would have functioned differently to avoid or mitigate the effect of the collision. Conclusory allegations to that effect are not sufficient to withstand a no-evidence summary judgment motion. Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

Because the Pugas have not supplied evidence to support a finding of proximate cause related to RCX's independent duties as employer, the Court GRANTS IN PART the summary judgment motion and DISMISSES the Pugas's claims against RCX for independent negligence, as stated in parts V(B) and V(C) of their second amended complaint (D.E. 78).

**D.  The Claim for Punitive or Exemplary Damages Fails.**

Last, RCX challenges the Pugas's claims for gross negligence or malice.  The Pugas's response is limited to arguments regarding RCX's independent gross negligence or malice, arising from its failure to address cell phone usage with Brown.  As previously noted, without evidence of proximate cause, the Pugas cannot maintain any of their claims based upon RCX's independent negligence.  Without negligence, there can be no assessment of gross negligence or malice.  "Recovery of punitive damages requires a finding of an independent tort with accompanying actual damages."  *Fed. Exp. Corp. v. Dutschmann*, 846 S.W.2d 282, 284 (Tex. 1993).

So the only remaining question—the one RCX briefed—is whether RCX, as statutory employer, may be held vicariously liable for Brown's alleged gross negligence or malice.  Under Texas law, applicable when this Court sits in diversity jurisdiction:[3]

> Punitive damages can properly be awarded against a master or other principal because of an act by an agent if, but only if,
>
> (a)    the principal authorized the doing and the manner of the act, or
>
> (b)    the agent was unfit and the principal was reckless in employing him, or
>
> (c)    the agent was employed in a managerial capacity and was acting in the scope of employment, or
>
> (d)    the employer or a manager of the employer ratified or approved the act.

---

[3]  *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

*Hammerly Oaks, Inc. v. Edwards*, 958 S.W.2d 387, 391 (Tex. 1997) (quoting and acknowledging Texas' adoption of Restatement of Torts § 909 (1939)).  *See also, King v. McGuff*, 234 S.W.2d 403, 405 (Tex. 1950).

The Pugas's second amended complaint (D.E. 78) and response (D.E. 94) lack allegations that RCX authorized or ratified any act of Brown that would constitute gross negligence or malice.  Neither have the Pugas offered evidence of authorization or ratification, eliminating from consideration bases (a) and (d).  Likewise, the Pugas have offered nothing in allegations or evidence that Brown was employed in a managerial capacity, eliminating basis (c).  Thus the only potential avenue for assessment of vicarious liability for punitive damages against RCX for Brown's conduct is the allegation that RCX was negligent in hiring Brown.  The Court would have to interpret this allegation as including the complaint that Brown was unfit and RCX was not just negligent, but reckless, in employing him—basis (b).

Even if the Court were to make this stretch with respect to the pleading, and even if the Court were to interpret RCX's failure to take statutory precautions, such as investigating and testing Brown, as equivalent to recklessness, the question remains whether Brown was unfit to act as a driver.  As the Court found with respect to the claims of independent negligence against RCX, the Pugas have not supplied evidence to raise a disputed issue of material fact that Brown was unfit as a driver when RCX engaged his services.

The Court GRANTS IN PART the motion for summary judgment and DISMISSES the Pugas's claims for punitive or exemplary damages.

## CONCLUSION

For the reasons set out above, RCX's motion for summary judgment (D.E. 91) is DENIED IN PART with respect to RCX's claim that it could not be a statutory employer. The motion is GRANTED IN PART, dismissing the Pugas's claims of RCX's independent negligence and any claim that RCX is independently or vicariously liable for punitive or exemplary damages.

ORDERED this 3rd day of January, 2017.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE