UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION


ALEXANDRO PUGA, ET AL.,          )      CASE NO:  2:15-CV-00073
                                 )
              Plaintiffs,        )            CIVIL
                                 )
      vs.                        )        Corpus Christi, Texas
                                 )
RCX SOLUTIONS, INC., ET AL.,     )       Friday, July 7, 2017
                                 )      (10:16 a.m. to 11:37 a.m.)
              Defendants.        )      (12:10 p.m. to 12:38 p.m.)


FINAL PRETRIAL CONFERENCE

BEFORE THE HONORABLE NELVA GONZALES RAMOS,
UNITED STATES DISTRICT JUDGE


APPEARANCES:

For Plaintiffs:            RICHARD W. HUNNICUTT, III, ESQ.
                           KALI R. GUTTMAN, ESQ.
                           Law Offices of Thomas J. Henry
                           521 Starr Street
                           Corpus Christi, TX 78401

RCX Solutions:             WILLIAM R. MOYE, ESQ.
                           COURTNEY A. PARECKI, ESQ.
                           Thompson Coe Cousins & Irons
                           1 Riverway, Suite 1400
                           Houston, TX 77056


Court Recorder:            Genay Rogan

Clerk:                     Brandy Cortez

Court Security Officer:    Adrian Perez

Transcriber:               Exceptional Reporting Services, Inc.
                           P.O. Box 18668
                           Corpus Christi, TX 78480-8668
                           361 949-2988

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

<u>**Corpus Christi, Texas; Friday, July 7, 2017; 10:16 a.m.**</u>

**(Call to Order)**

**THE COURT:** Court calls Cause Number 2:15-cv-73. Is it Puga or -- how do you pronounce your client's name?

**MR. HUNNICUTT:** Puga.

**THE COURT:** Okay. Because I've -- I've probably said it many different ways. So, if the plaintiff will announce?

**MR. HUNNICUTT:** Plaintiff Richard Hunnicutt from the offices of Thomas J. Henry on behalf of the Puga family. We're ready.

**THE COURT:** The defense?

**MR. MOYE:** Yes, your Honor. William Moye, M-O-Y-E, announce we're ready for RCX Solutions, Inc.

**THE COURT:** Okay. So, we're here for a final pretrial conference. Any settlement discussions ongoing or is that a possibility?

**MR. HUNNICUTT:** Well, I never say never, but we are miles apart.

**MR. MOYE:** Yeah, there is a -- counsel, representing his client with appropriate vigor, has made (indisc.). Our settlement agreement I should say is due on Tuesday, so by then I should have some more intelligence from my client's insurer to see if that would be accepted or not or a countermand.

**THE COURT:** Okay. Because you all are number one on the docket, so we'd be ready to go on the 17th.

1          So, let's proceed, then, with the pending motions.

2    We have three -- well, more with the motions in limine, but

3    there is defendants' motion to limit the testimony of Andrew

4    Smith, plaintiffs' motion to exclude Quintanilla's testimony on

5    DARS, and plaintiffs' motion to apply 18-001.  So, let's

6    proceed on those, and we can start with the -- I've read

7    everything.  I mean, if you want to add a couple -- couple of

8    minutes of matters, you can, but I have reviewed everything, so

9    you -- if you have anything else to say, you're welcome to make

10   some arguments on the -- we'll start with the motion to limit

11   the testimony of Smith.

12          **MR. MOYE:**  Your Honor, would you prefer I address the

13   Court from the lectern or from counsel table?

14          **THE COURT:**  Go ahead and approach the lectern.

15          **MR. MOYE:**  Thank you.

16          **THE COURT:**  It's a bit easier.

17          **MR. MOYE:**  And, Judge, indulging your comments that

18   you've read everything, it's -- it's -- I really just want to

19   focus on the response, then, or the lack of a response.  The

20   police officer is a hero; there is no doubt about that.  The

21   police officer is free to talk about what he saw; there is no

22   doubt about that.  The police officer is making opinions about

23   unsafe speed; didn't calculate a single measurement on the

24   speed.  There is some allegation that he looked at the damage

25   to the vehicles.  Well, the damage to the tractor was -- an

1   ashtray.  There's nothing left.  So, he was free in his

2   admission during his deposition that he did a heck of a good

3   job as a responding police officer.  He probably saved

4   Mr. Puga's life.  But for him to sit there in two weeks and

5   comment about speeds when he didn't measure the speeds,

6   calculate the speeds, determine the speeds, what's safe versus

7   unsafe, we feel doesn't meet the standards under 702, under the

8   *Daubert* case, and its progeny.

9           On the faulty base of action, similar, Judge; they're

10  trying to make a, essentially, a police report standard as

11  admission in civil court, which we know the case law is

12  against.  So, I would indulge the same arguments I offered for

13  the speed issues.

14          On the cell phone issues, there is no opinion that

15  this gentleman that day, Mr. Brown, was distracted.  The

16  commentary offered during his direct examination was that cell

17  phone use can be a distraction.  I'm not seeking to limit that

18  out; that's common sense.  But to take the stand and comment

19  that this gentleman that day was distracted, with no

20  eyewitnesses, no analysis -- they did do a measurement.  In

21  fairness to the judge, I don't want to misstate that they did

22  go out and do a total station measurement, where they get a

23  laser machine and shoot the roadway, but they did a CAD drawing

24  and nobody did anything with it.  So, the plaintiffs were free

25  to hire a reconstructionist, free to determine speeds based on

1  that data; no one has done it.  So, there is not a human being

2  on this earth that could say how fast Mr. Brown was going that

3  day, and not a human being on this earth that could say it was

4  unsafe for the conditions.  And with that, Judge, I appreciate

5  your time.

6          **THE COURT:**  All right.  Mr. Hunnicutt?

7          **MR. HUNNICUTT:**  Your Honor, I'll also be brief.  If

8  Officer -- Sergeant Smith was offering testimony about speeds,

9  what the actual speeds were, then I would agree.  He didn't

10 have sufficient information, and he -- he wouldn't be

11 qualified, but mainly there wasn't sufficient information.

12 Given the facts of this particular case, we think it's

13 distinguished from defendant's case law; those facts being that

14 it -- it was a heavy rain that night, a lot of water on the

15 road.  There's lots of testimony I know the Court has read on

16 that.  And Mr. Brown, going whatever speed he was going, was

17 unable to control his vehicle.  The -- in this case, it's not

18 just that he -- he crosses the yellow line into oncoming

19 traffic; he crosses his lanes, he goes through a greenbelt,

20 which I'm not sure if the Court has seen the photographs, but

21 it is -- it is a substantial greenbelt with oleander bushes.

22 It's -- it's not just ten feet; it's -- I can't remember the

23 exact number, but it's dozens and dozens of feet of greenbelt.

24 He crosses all of that and has a near head-on collision with my

25 client.  Under those circumstances, a police officer, we

1 believe, can have the opinion that the motorist, the truck

2 driver in this instance, was traveling too fast for the

3 conditions and he failed to control his vehicle.

4       **THE COURT:** Court's going to deny the defendant's

5 motion to limit the testimony of Andrew Smith.

6       So, we can proceed on the plaintiff's motion to

7 exclude Quintanilla on the limited -- limited issue, I guess,

8 of DARS.

9       **MR. HUNNICUTT:** Your Honor, our -- our argument that

10 the -- let me back up. DARS, as the Court is aware, is a free

11 program that's allowed for injured individuals in the State of

12 Texas, if they qualify, to come and get some retraining. The

13 defense and Mr. Quintanilla want to say that Mr. Puga should

14 just go to DARS and get this free -- free retraining for his

15 employment. The -- this is similar to the argument -- and we

16 argue it by analogy -- to a -- the case that was specifically

17 addressed by the Fifth Circuit, the *Guzman* case. And in that

18 the defendants were trying to make the argument that the

19 plaintiff was eligible for cheaper forms of payment for medical

20 expenses and, therefore, that should be admissible, either

21 under a failure to mitigate theory or just to try to attack

22 them on -- on *Haygood*, that there was less expensive medical

23 expenses out there and the jury should hear about that. Fifth

24 Circuit rejected that. That's not what *Haygood* requires.

25       Now, the -- I think the analogy holds true because

1  the -- our life care planner, Dr. Willingham, who is going to

2  testify live, and our -- our other experts have testified that

3  Mr. Puga is going to need retraining.  He has a left arm that

4  is essentially worthless.  It's like a lobster claw.  And,

5  then, he has substantial injuries to his legs.  He's going to

6  need retraining.  Our life care planner is projecting costs for

7  that.

8           I might also add something that may not have been

9  clear in our motion.  When I took Mr. Quintanilla's deposition,

10 in his deposition testimony he admitted that the success rates

11 for DARS, the free program the State offers, is something

12 between 14 percent and 30 percent, and it's under 50 percent.

13 I mean, the percentage success rate is very low.  And, so, what

14 the defendants are trying to do is limit or reduce future

15 medical expenses inappropriately.  It, in essence, violates the

16 collateral source rule.

17           **THE COURT:**  All right.  Mr. Moye?  Oh.

18           **MR. MOYE:**  Ms. Parecki, your Honor, if that's

19 suitable.

20           **THE COURT:**  Parecki?

21           **MR. MOYE:**  Parecki.

22           **THE COURT:**  Okay.

23           **MR. MOYE:**  Thank you, Judge.

24           **MS. PARECKI:**  Your Honor, Quintanilla's testimony

25 about DARS simply is not collateral source information, and I

1  will point out, as I did in the briefs, that plaintiffs'

2  vocational rehabilitation expert, the one who was opining that

3  Mr. Puga needs vocational rehabilitation services, advised him

4  to go through the DARS program.  The DARS program is a free

5  government-run program that their vocational rehab expert,

6  Ms. Salazar, specifically referred him to.  Our expert

7  certainly should be free to say, "Yes, he can go to DARS; it

8  would be a good place for him to go to.  And you know what,

9  Jury?  It's free of charge if he chooses to use it."  They're

10  certainly welcome to point out any testimony or evidence they

11  have about the success rate of the program.  That certainly

12  would go to the weight, not the admissibility of the testimony.

13  They're certainly free to say, "Private would be a better

14  option for him, and here's the cost of private," but our expert

15  certainly should be able to point out to the jury that it's

16  free.  And I would just remind the Court that the case law

17  talking about collateral source, particularly the Guzman case

18  that was just relied on by Mr. Hunnicutt, talks about that a

19  plaintiff can only -- that the collateral source excludes

20  evidence of payment, except that that was actually incurred.

21  And here it wouldn't be incurred if it's free.

22          Thank you.

23          **THE COURT:**  Court -- the Court's going to deny

24  plaintiffs' motion to exclude Quintanilla testimony on DARS

25  issue.

1        Then we have plaintiffs' motion to apply 18.001,

2   Texas Civil Practice and Remedies Code.

3        **MR. HUNNICUTT:**  Your Honor, the -- as the Court's

4   aware, and I'm sure you've read the briefs, that the -- the

5   case law is not really clear.  There's a couple of federal

6   courts that end up applying 18 double-o-one, and -- and I think

7   this Court has discretion to do it either way.  What I would

8   point out to the Court that -- that is not clear in the briefs

9   is that I -- when I cross examine Amy Mackenzie and the other

10  individuals, experts that the defendants have listed, on their

11  life care plan analysis, none of them are attacking the past

12  medical expenses.  Their attacks and critiques are limited to

13  the future medical.  So, this is kind of a moot point.

14       Although I don't know what somebody is going to try

15  to say when they appear live, I don't believe they have been

16  properly designated or -- or given opinions on it, but we have

17  timely filed affidavits for these bills.  Most of the past

18  medical expenses were actually paid by a workers' compensation

19  insurance carrier, if not all of them, which, as the Court's

20  aware, that's managed care, so it's not like there's runaway

21  medical expenses going on; there was actually a workers' comp

22  adjuster controlling that.  And I -- I'm not sure why they --

23  they are not agreeing to the medical bills, but --

24       **THE COURT:**  Do you want to say something?

25       **MR. MOYE:**  I shouldn't interrupt, Judge.  I didn't

1    want to interrupt counsel.

2              **THE COURT:**  Okay.

3              **MR. MOYE:**  I think he's well placed.  I think it is

4    your discretion.

5              **THE COURT:**  Okay.

6              **MR. MOYE:**  I believe that we have some arguments to

7    make, but I don't think I should make them, credibly, to

8    Mr. Puga's family.  I think if we entertain a stipulation of

9    what the past medical admissible billing is, it might render

10   all of this moot anyway.

11             **THE COURT:**  But --

12             **MR. MOYE:**  I'll withdraw a challenge to Chapter 18 --

13             **THE COURT:**  I was going to allow it --

14             **MR. MOYE:**  Yeah.

15             **THE COURT:**  -- grant their motion.

16             **MR. MOYE:**  Okay.

17             **THE COURT:**  But I was going to hear you all out.  So,

18   do you all want to do some sort of stipulation on the -- on the

19   bills, on the medical?  Is that --

20             **MR. HUNNICUTT:**  I would -- I would rather have it

21   granted.

22             **THE COURT:**  Well, I did.  I mean, I -- I'll grant it,

23   but --

24             **MR. MOYE:**  Yeah.  And, then, we will procedurally

25   work out --

1        **THE COURT:**  Right.

2        **MR. MOYE:**  -- amongst ourselves.

3        **MR. HUNNICUTT:**  Sure.  We'll -- we'll -- what we do

4   need to go through is probably both of us with a fine-tooth

5   comb to make sure they're -- you know how sometimes a flu shot

6   is --

7        **THE COURT:**  Yeah.

8        **MR. HUNNICUTT:**  -- slips in there or something.

9        **THE COURT:**  Okay.

10       **MR. MOYE:**  Fair point.

11       **THE COURT:**  So, we're good.  Those three motions were

12  pending.  Do you all want to move, then, to the motions in

13  limine?  And I'm assuming you all have conferred on those,

14  because you all -- you all did file objections to certain ones.

15       **MR. MOYE:**  We did.

16       **THE COURT:**  Yes.

17       **MR. HUNNICUTT:**  Yes, your Honor.

18       **THE COURT:**  So, I have here plaintiffs' first amended

19  motion and order in limine.  It's DE-156 filed June 26th.  So,

20  that's what I'm working off of.  And, so, Mr. Moye --

21       **MR. MOYE:**  Sure.

22       **THE COURT:**  -- if you want to address the ones you

23  have objections to.

24       **MR. MOYE:**  I do.  Your Honor, we had some late

25  filings, and we certainly didn't mean any offense to that.

1    Those were stricken.  Our apologies for --

2            **THE COURT:**  Yeah, I mean, at some point we've got to

3    start --

4            **MR. MOYE:**  I know.

5            **THE COURT:**  -- preparing, and I can't when you all

6    keep filing things.

7            **MR. MOYE:**  Fair game.  I just didn't want you to

8    think we were offering any disrespect to the Court by doing so.

9            **THE COURT:**  Yeah; no.

10            **MR. MOYE:**  We object to limine point number one.  I

11    think the precision of it about settlement negotiations is fair

12    as goes settlement negotiations between the Puga family and RCX

13    Solutions.  To the extent it touches on any issues with About

14    Tyme and About Tyme's settlement, I could reserve comment on

15    that, because there is a direct limine point on that.  Probably

16    most prudent to do that.  But I didn't want to agree to that

17    without at least urging the fact that -- that could the breadth

18    of it touch on the About Tyme issue, so I would agree to it as

19    goes settlement negotiations between RCX Solutions and the

20    plaintiffs.  If it was About Tyme, to the extent it is over

21    read enough to include the settlement itself, then I would

22    object to it.

23            **THE COURT:**  Okay.

24            **MR. MOYE:**  And we can pick up our argument with more

25    precision, I guess, on the --

1          **THE COURT:**  Later, on the other --

2          **MR. MOYE:**  Sure.

3          **THE COURT:**  Mr. Hunnicutt?

4          **MR. HUNNICUTT:**  Well --

5          **THE COURT:**  So, he agrees to it if it's RCX, and,

6     plaintiff, apparently, there is another motion in limine here

7     where we can address the other settlement.

8          **MR. HUNNICUTT:**  And do we need to talk about it now

9     or -- or -- or get to it when we get to it, but I --

10          **THE COURT:**  Let's go ahead and address it, because

11     I'm assuming this could cover that.

12          **MR. MOYE:**  Yeah.

13          **THE COURT:**  So, we might as well.

14          **MR. MOYE:**  And, Judge, it's -- I don't think there's

15     much to get to, because your Honor in the Daubert motion ruled

16     that we could cross examine their expert witness on the issue

17     of settlement and the extent it goes to bias or changing

18     positions.  Their expert received from their -- from Mr. Puga's

19     lawyers in June of 2016 a document where he highlighted the

20     statement:

21          "Plaintiffs reached a settlement with About Tyme

22          Transport, Inc. and dismissed all claims against Xtra

23          Lease.  The only remaining defendant in this lawsuit

24          is RCX Solutions, Inc."

25          Their expert was deposed several months later and

1 admitted that the highlights in his work product are his

2 highlights.  So, he highlighted the notion that there was a

3 settlement between plaintiffs and About Tyme before his

4 deposition, when we argue that his position changed.  So, in

5 the Daubert ruling your Honor already said we can cross examine

6 the witness on that issue.  It goes to 408; it goes to bias of

7 a witness.  The fact that the settlement agreement itself is

8 included in our materials that were stricken, I don't think the

9 actual number of a settlement agreement, I don't think the

10 actual letter of the words of the settlement agreement is being

11 sought for admission, but the concept of the settlement between

12 plaintiffs and About Tyme is relevant, in and of itself, from a

13 408 standpoint; it's relevant, in and of itself, to keep the

14 jury from being confused with alternate pleadings and

15 comparative fault and everything else associated with that.

16 But, most fundamentally, it's important when their own expert

17 in his file materials highlighted the notion there was a

18 settlement made.  So, I believe your Honor has already ruled on

19 this issue.  There is a signed Daubert order on this issue.

20          So, to clarify, so we all know what Will's trying to

21 offer, Mr. Moye is trying to offer, the notion of the

22 settlement.  I'm not going to ask anybody what the settlement

23 amount was.  I'm not going to ask anybody about the document

24 itself and any covenants or executions or reservations.  But

25 the notion of the settlement is absolutely, 100 percent fair

1   game, already acknowledged by your Honor.

2           **THE COURT:**  I haven't gone back to look at that

3   order, so let me look at --

4           **MR. SPEAKER:**  I believe --

5           **THE COURT:**  But, Mr. Hunnicutt, if you want to

6   proceed?

7           **MR. HUNNICUTT:**  Yeah, your Honor.  I just happened to

8   look at that order this morning, and I don't see anything that

9   can stretch to your Honor saying that settlement agreements

10  with About Tyme are admissible.  The document itself is the

11  typical boilerplate language about:  "We're not admitting

12  liability; we're paying this money."  Mr. Puga has damages --

13          **THE COURT:**  Are we talking about Roger Allen?

14          **MR. HUNNICUTT:**  Yes.

15          **THE COURT:**  And that was a causation issue?

16          **MR. HUNNICUTT:**  Roger Allen is our fleet safety

17  expert --

18          **THE COURT:**  Right.  Who -- but --

19          **MR. HUNNICUTT:**  -- and you -- you excluded his

20  opinions on -- on the law.

21          **THE COURT:**  But who is the person that highlighted

22  the settlement issue?

23          **MR. MOYE:**  Mr. Allen did.

24          **THE COURT:**  Okay.

25          **MR. HUNNICUTT:**  That would be Mr. Allen.

1          **THE COURT:**  So, where is my -- where is my order?  I

2  just don't remember.

3          **MR. MOYE:**  Sure.

4          **THE COURT:**  I just remember it being a causation

5  issue.

6          **MR. MOYE:**  Judge, I'll -- I'll direct it to you.  The

7  last paragraph on page two.

8          **THE COURT:**  (indisc.)

9          **MR. MOYE:**  Any suggestion that an expert as part of

10  plaintiffs' team had any shift in opinion related to the About

11  Tyme settlement may be the subject of cross examination.

12          **THE COURT:**  Okay.  So, you're saying -- I didn't

13  specifically rule on your issue.  You're just saying that

14  settlement should come into that because it goes to why he

15  changed his mind.  Right?  I'm not saying yes or -- what I'm

16  ruling; I'm just saying I didn't specifically address the

17  settlement issue in that order, right?

18          **MR. MOYE:**  I --

19          **THE COURT:**  I'm just saying anything regarding why --

20  I guess.  Let me go back and look at that.

21          **MR. HUNNICUTT:**  Your Honor, the way -- the way I read

22  your order was that -- and this is appropriate -- that if he

23  has anything in writing, just like if the plaintiffs have

24  pleadings at one time saying About Tyme or Ronald Brown was

25  negligent, they get to go into that.  That's a far cry from

1  saying that you can interject a settlement with another party.

2  There are -- there are only specific instances where settlement

3  with a party is admissible, like to prove ownership or -- or --

4  I can't remember all of the exceptions right now.  This is a

5  case where -- where a settlement was entered between the

6  plaintiff and About Tyme, they made the decision, because they

7  only had a $1 million policy -- I'm sorry.  I didn't mean to

8  cut you off, your Honor.

9         **THE COURT:**  No, no.  I was going to tell you I do

10  sort of -- now I'm looking at the order, and it says that any

11  shift in opinion related to About Tyme settlement may be the

12  subject of cross examination impeachment; it's not a basis for

13  excluding the opinion in its entirety.  Anyway, we can argue

14  about what that means.  So, go ahead.

15         **MR. HUNNICUTT:**  The way I -- I didn't read that to be

16  a -- a ruling in advance on any motion in limine about

17  settlement agreements not coming into evidence.  There -- there

18  are documents, like if he has in his report, where he's

19  critical of About Tyme, they get to go into that; about About

20  Tyme is no longer a party, they get to go into that.  I have --

21  I know the Court has tried many, many cases.  I've seen this

22  many, many times, and there's lots of ways defense lawyers -- I

23  used to be one for 15 years -- go into it.  But you can't say

24  the "S" word."  You can't say "settlement."

25         **MR. MOYE:**  Judge, I'm reading directly from 408(b):

1          "The Court may admit this evidence" -- under

2          compromise offers -- "this evidence for another

3          purpose, such as proving a witness's bias or

4          prejudice."

5          **THE COURT:**  I know.  But the problem is that, you

6    know, settlements are so touchy, and there is a lot of case law

7    out there; I'd probably be more comfortable if you all actually

8    briefed that issue, specifically, how that comes in.  Sure, if

9    we just talk generally, I can see where it might go to

10   impeach -- he changed his opinion when this happened.  But I

11   also don't want to go contrary to -- to the law on -- on

12   settlement.  It is a sensitive issue.  So, I just want to be

13   sure we're covering our bases.

14         **MR. MOYE:**  And can I make a statement for the

15   record --

16         **THE COURT:**  Yes.

17         **MR. MOYE:**  -- of my intent so Mr. Hunnicutt can

18   fairly brief my intent and I will have a written record --

19         **THE COURT:**  Okay.

20         **MR. MOYE:**  -- of what my intent is?

21         **THE COURT:**  So, tell us what you plan to do.

22         **MR. MOYE:**  Yes.  I am -- I plan to offer an

23   exhibit -- they put on the exhibit list Mr. Allen's file

24   materials.  That includes a document received in June where he

25   highlighted, based on his own testimony, that there was a

1  settlement between About Tyme and the Puga family, in which he

2  wrote a Rule 26 report and spent 20 plus paragraphs blaming

3  About Tyme, and then in his deposition said, "Golly, I've never

4  thought About Tyme was the motor carrier; it has always been

5  RCX."

6          **THE COURT:**  Okay.

7          **MR. MOYE:**  That's (indisc.) --

8          **THE COURT:**  So, that's why you plan to --

9          **MR. MOYE:**  Exactly.  I do not plan, your Honor and

10  Counsel, intend to offer the settlement agreement signed by the

11  Pugas into evidence.  I do not intend to offer a financial

12  number into evidence; one million dollars, two dollars,

13  whatever, what have you.  I agree with Mr. Hunnicutt; that's

14  not fair.  The overriding issue, when that gentleman takes the

15  stand, I'm free to cross examine him on that under 408.  And

16  that's the (indisc.) --

17          **THE COURT:**  Right.  And I just want to be sure --

18          **MR. MOYE:**  Exactly.

19          **THE COURT:**  -- you are.  I can certainly see your

20  argument, and --

21          **MR. MOYE:**  That's what I want to do, Judge.

22          **THE COURT:**  -- and if it plays out that way and

23  that's what happened.  I just know there is, you know, I think

24  significant case law out there, you know, regarding settlements

25  and how they can come in and what happens.  So, I would feel

1   more comfortable if you all briefed -- briefed the issue.

2           **MR. HUNNICUTT:**  Yes, we will, your Honor.

3           **THE COURT:**  Okay.

4           **MR. HUNNICUTT:**  When -- when would you like --

5           **THE COURT:**  Today is Friday; you all are set a week

6   from Monday for trial, so by -- what do you all need?  Tuesday?

7   Wednesday?

8           **MR. MOYE:**  Tuesday.

9           **THE COURT:**  Tuesday?

10          **MR. HUNNICUTT:**  Well, it's easy for me to say because

11  I'm speaking --

12          **THE COURT:**  I know.

13          **MR. HUNNICUTT:**  -- for my associate.

14          **MR. MOYE:**  I was actually going to say (indisc.).

15          **MR. HUNNICUTT:**  Tuesday would be --

16          **MR. MOYE:**  Ms. Parecki, does Tuesday work?

17          **MS. PARECKI:**  Tuesday would be great.

18          **MR. HUNNICUTT:**  By --

19          **THE COURT:**  Okay.  So, by Tuesday.

20          **MR. HUNNICUTT:**  -- by 5:00 p.m., your Honor?

21          **THE COURT:**  Tuesday by 5:00 --

22          **MR. HUNNICUTT:**  Okay.

23          **THE COURT:**  -- so we can start looking at the issue

24  on Wednesday.

25          **MR. MOYE:**  Do you -- would you request -- indulge a

1  page limit, perhaps?

2          **THE COURT:**  Probably ten?

3          **MR. MOYE:**  Thank you.

4          **THE COURT:**  Thank you for reminding me.

5          **MR. HUNNICUTT:**  And, your Honor, I was remiss.  I

6  have with me today Ms. Kali Guttman.  She's one of our new

7  associates.

8          **THE COURT:**  Nice to meet you.

9          **MR. HUNNICUTT:**  The associate you've -- the other

10  attorney that you've probably seen her name on the file,

11  Josephine Lue, her mother's going in for a procedure today.

12          **THE COURT:**  Okay.

13          **MR. HUNNICUTT:**  Elsewise, she would have been here.

14          **THE COURT:**  All right.

15          **MR. HUNNICUTT:**  I also have Mr. Leonard Hoyt.

16          **THE COURT:**  Yes.

17          **MR. HUNNICUTT:**  He is our multimedia --

18          **MR. HOYT:**  Hi, Judge.

19          **THE COURT:**  Yes.

20          **MR. HUNNICUTT:**  You're probably familiar with him.

21          **THE COURT:**  We see -- yes, we see Mr. Hoyt a lot.

22          **MR. HUNNICUTT:**  He's here to make sure we understand

23  what we need to be doing or not doing on the deposition video.

24          **THE COURT:**  So, he needs to visit with Brandy and

25  Genay to make sure the media issues work.  Okay.

1      **MR. MOYE:**  (indisc.).

2      **THE COURT:**  So, we're going to -- you all are going

3  to brief that issue, provide something by 5:00 o'clock on

4  Tuesday, limited to 10 pages.  Okay.

5      **MR. HUNNICUTT:**  And, for the record, your Honor, the

6  other motion in limine number would be 33.

7      **THE COURT:**  That's what regards --

8      **MR. HUNNICUTT:**  With regard to the settlement

9  issue --

10      **THE COURT:**  Okay.

11      **MR. HUNNICUTT:**  -- with About Tyme.  It's number 1

12  and number 33.

13      **THE COURT:**  All right.  Then, we'll proceed with the

14  other ones.

15      **MR. MOYE:**  And some of these, Judge, I don't want to

16  give the appearance I'm being too cute, and maybe I am being

17  too cute, but I just want to --

18      **THE COURT:**  Sometimes I just need clarification.

19      **MR. MOYE:**  I need some clarification, as well.  I

20  promise to follow the rules of evidence.  I will do what

21  Rule 26 requires under the Federal Rules of Civil Procedure.

22  If they ask for it, it goes to claims and defenses, and I

23  didn't give it fair game, but it carves out impeachment.  So,

24  things related to impeachment, under the rules, if they didn't

25  ask for it, it's not goes to claim and defense, but it's to

1   impeachment, I should be able to indulge Rule 26.

2           **THE COURT:**  Okay.  You're talking about Number 2 now.

3           **MR. MOYE:**  Correct.  I'm sorry.

4           **THE COURT:**  Mr. Hunnicutt?  Any issues with that?  I

5   mean, everybody should just follow the rules.

6           **MR. HUNNICUTT:**  I agree.

7           **THE COURT:**  Right?

8           **MR. HUNNICUTT:**  That's --

9           **THE COURT:**  So, that's agreed.

10          **MR. HUNNICUTT:**  I -- I understand what he's saying.

11  That's agreed.

12          **THE COURT:**  Okay.

13          **MR. HUNNICUTT:**  And I know some of these are

14  boilerplate, but, you know, we just worry, because if don't put

15  it in there and then it blows up in your face at trial --

16          **THE COURT:**  Yeah.  So, that's granted, as agreed to,

17  with the clarification.

18          **MR. MOYE:**  And, your Honor, we filed some objections.

19  Should I just -- just --

20          **THE COURT:**  Just go down the ones you object to.

21          **MR. MOYE:**  Okay.

22          **THE COURT:**  The next one is four --

23          **MR. MOYE:**  Four --

24          **THE COURT:**  -- that you object to.

25          **MR. MOYE:**  -- is now agreed.

1          **THE COURT:**  Okay.  Good.  Then, we're at seven,

2    right?

3          **MR. MOYE:**  Seven.  Limited to Ms. Puga, Norma, who is

4    a plaintiff, consortium claims, mental anguish claims; she has,

5    through her discovery responses and deposition testimony, a

6    recorded ten-year history of panic attacks, depression,

7    anxiety, sought SSD disability for it, so the extent her mental

8    anguish is a damage component for the jury, we should not be

9    deprived of an opportunity to offer the preexisting condition

10   for that.  My objection is limited to Ms. Puga.

11         **MR. HUNNICUTT:**  I agree.

12         **THE COURT:**  Mr. Hunnicutt, you agree?

13         **MR. HUNNICUTT:**  Yes.

14         **THE COURT:**  So, agreed in that respect that we're

15   limiting that to Norma Puga as the one who's going to have the

16   issues on that, right?  So --

17         **MR. HUNNICUTT:**  It's -- it's granted --

18         **MR. MOYE:**  I would offer the same objection to eight.

19         **MR. HUNNICUTT:**  -- as to Alex.

20         **THE COURT:**  Is that her name?

21         **MR. HUNNICUTT:**  I'm sorry?

22         **THE COURT:**  Right; granted -- I guess, nothing on

23   Mr. Puga.

24         **MR. MOYE:**  Uh, I couldn't dream of arguing

25   preexisting conditions for this gentleman.

1          **THE COURT:**  Okay.  All right.  So, agreed as to

2    Ms. Puga; granted as to Mr. Puga.

3          **MR. MOYE:**  And, your Honor, eight was the same

4    objection.

5          **MR. HUNNICUTT:**  Same thing, your Honor.  Well, no,

6    I'm sorry; the -- this is a little bit different because --

7          **THE COURT:**  Are you only limited --

8          **MR. MOYE:**  I'm only limited --

9          **THE COURT:**  -- to the issue?

10          **MR. MOYE:**  -- to Ms. Puga --

11          **THE COURT:**  Okay.

12          **MR. MOYE:**  -- and, frankly, it would only be

13    impeachment.  If she'd say, "Golly, I've never sought

14    treatment," when she filed an SSD application saying she needs

15    disability for it, I'd be coming --

16          **THE COURT:**  So --

17          **MR. MOYE:**  -- impeachment.

18          **THE COURT:**  I'm sorry; I didn't mean to cut you --

19    but just clarifying eight, then, it's the same issue as seven,

20    only as to Mrs. Puga.

21          **MR. MOYE:**  Correct.

22          **THE COURT:**  So, do you agree to that, Mr. Hunnicutt?

23          **MR. HUNNICUTT:**  No, actually, I cannot --

24          **THE COURT:**  Okay.

25          **MR. HUNNICUTT:**  -- because the -- the direction of

1   this motion in limine is claims.  And there's -- there's case

2   law that, while you can -- you can bring in an on-the-job

3   injury and the medical records from the on-the-job injury, you

4   can't bring in, cannot bring in, workers' compensation claim.

5           **THE COURT:**  Okay.  But I don't think he's wanting to

6   go there.

7           **MR. MOYE:**  I'm not.

8           **MR. HUNNICUTT:**  Well --

9           **THE COURT:**  That's why we're clarifying.  He's just

10  wanting to go into the prior medical of Ms. Puga regarding

11  the -- how it might fit into the mental anguish claim.

12          **MR. HUNNICUTT:**  Well, and he just mentioned the

13  social security claim.  What this is going to is he doesn't get

14  to bring in claims.

15          **THE COURT:**  Right.

16          **MR. MOYE:**  I'm not trying to.  It would be -- I'll do

17  this.  It would come in in impeachment if she says, "I've never

18  had a claim in my lifetime."  I think that's fair game for

19  impeachment.  I'll approach the bench and get a ruling from

20  your Honor.

21          **THE COURT:**  So, are you going to ask her that, if

22  she's ever had a claim?

23          **MR. MOYE:**  No.

24          **THE COURT:**  Okay.

25          **MR. MOYE:**  But if she comes off the rails and says

1   that.

2          **THE COURT:**  Just if it happens to come out.

3          **MR. MOYE:**  Exactly.  I would approach the bench and

4   seek a ruling whether or not she made any prior claims.

5          **THE COURT:**  So, I'm going to grant it regarding

6   claims.

7          **MR. MOYE:**  Fair enough.

8          **MR. HUNNICUTT:**  Right.  It's -- and on all of these,

9   if the door gets opened, then -- then --

10         **THE COURT:**  Right.

11         **MR. HUNNICUTT:**  -- we approach the bench and --

12         **THE COURT:**  Yes.

13         **MR. HUNNICUTT:**  -- and argue that the door was

14  opened.

15         **THE COURT:**  Exactly.

16         **MR. MOYE:**  And this would be, again, order in limine,

17  good for the goose, good for the gander, correct?

18         **THE COURT:**  Absolutely.

19         **MR. MOYE:**  Right.  Ten is the same objection to two.

20  I promise to do my best --

21         **THE COURT:**  Follow the rules.

22         **MR. MOYE:**  -- to follow the rules.

23         **THE COURT:**  So, that's granted.

24         **MR. MOYE:**  Eleven is now agreed.  It's an after

25  issue.  For clarification, I don't think my earlier arguments

1   about Ms. Puga are relevant to after.

2          Fifteen, if chapter 18 applies on some issues, it

3   certainly applies on this issue; that's 18.091, 15, about the

4   instruction language to a jury on the taxation issues

5   associated with pecuniary damages.

6          **MR. HUNNICUTT:**  I -- I think it's going to be handled

7   by the charge and the (indisc.).

8          **THE COURT:**  So, do you all agree on that?

9          **MR. HUNNICUTT:**  I think we are.

10         **MR. MOYE:**  Well, I -- well --

11         **THE COURT:**  What's (indisc.)?

12         **MR. MOYE:**  -- I don't agree to that, because I

13   believe 18.091 says something different than what this says.

14         **THE COURT:**  Okay.

15         **MR. MOYE:**  So, if we're agreeing that 18.091 will be

16   handled, and handle the charge, then I think we can agree to

17   that.

18         **MR. HUNNICUTT:**  Yeah, but -- I'll agree to that.

19         **THE COURT:**  Okay.  So, agreed as clarified.

20         Then, we're at 17?

21         **MR. MOYE:**  Uh, the Ms. Puga issue, as argued.

22         **MR. HUNNICUTT:**  I'm sorry; which number are we on

23   now?

24         **MR. MOYE:**  Seventeen.

25         **THE COURT:**  That is 17.

1          **MR. HUNNICUTT:** Okay. Yes. Agreed.

2          **THE COURT:** Okay.

3          **MR. HUNNICUTT:** Nothing on it -- on Mr. Puga. That

4    should be granted, but they get to go into Norma.

5          **THE COURT:** Right. So, just Mrs.

6          Nineteen?

7          **MR. MOYE:** I'm going to seek clarification.

8          **THE COURT:** Okay.

9          **MR. MOYE:** But I'm certainly not directing this at

10   counsel away from the Court, but I want his ears open.

11         **THE COURT:** Go ahead. I mean, though --

12         **MR. MOYE:** Yeah.

13         **THE COURT:** A lot of this can be worked out when you

14   all visit back and forth.

15         **MR. MOYE:** Yeah. Exactly. We had a -- we have a

16   mutual stack of medical records that are significant. I've

17   gone through and looked at some of theirs. They've made some

18   redactions. We haven't attempted yet. We know we're going to

19   have to redact comp. issues. We know the case law on the

20   substantive side of this diversity case is *Haygood*. So, I

21   think we'll work through all those issues, so this is more of

22   a --

23         **THE COURT:** Okay.

24         **MR. MOYE:** -- let's make sure we do it right, both

25   sides, sort of thing.

1          **THE COURT:**  So, I'm going to grant it, so you can --

2          **MR. MOYE:**  Fair.

3          **THE COURT:**  -- do that, but it sounds like you all

4    agreed to what needs to be done.

5          **MR. MOYE:**  Yeah.  We have.

6          **THE COURT:**  You all just need to really check each

7    other, too, on -- on the same issues.

8          **MR. MOYE:**  That's right.  And when these -- as you've

9    seen, these -- medical billing, it's hard sometimes, and if we

10   miss it during trial --

11         **THE COURT:**  Yes.

12         **MR. MOYE:**  -- and if he offers it, it needs to be

13   redacted later, you won't get any objection from me.

14         **MR. HUNNICUTT:**  Well, one thing we do, and I saw my

15   paralegal doing this, and I was amazed, because I started

16   practicing in the old days where we got out black markers

17   and --

18         **THE COURT:**  Yes.

19         **MR. HUNNICUTT:**  -- Liquid Paper, or whatever, but in

20   the -- in -- in Adobe Acrobat, the PDF reader, she searched for

21   "insurance" and goes through and blocks it just -- and it does

22   a quick search and pops through.  Now, you have to go through

23   and manually look because --

24         **THE COURT:**  Right.

25         **MR. HUNNICUTT:**  -- OCR doesn't -- the -- the

1    recognition software doesn't always --

2         **THE COURT:** Pick it up.

3         **MR. HUNNICUTT:** -- recognize the word.  But, wow.

4         **THE COURT:** I know.

5         **MR. HUNNICUTT:** It saves a lot of time.

6         **THE COURT:** It's a lot faster.  It used to take

7    weeks.

8         All right.  Twenty-two is the next issue.

9         **MR. MOYE:** I think 22 will be agreed.  I think it --

10        **THE COURT:** Okay.

11        **MR. MOYE:** -- touched on some prior issues we

12   addressed.

13        **THE COURT:** All right.  Twenty-four?

14        **MR. MOYE:** Um, it's over broad, I think.  I think I'm

15   free to get up in close and say that the lawsuit should have

16   been filed against RCX, it's abusive, they shouldn't have done

17   it, they should have known better, blah, blah, blah, blah,

18   blah.  I think it's argument.

19        **THE COURT:** I think you can -- go ahead.

20        **MR. HUNNICUTT:** I don't think that's appropriate

21   argument.  The -- I mean, he can certainly -- the -- he can

22   certainly say that, "We did nothing wrong; there is no evidence

23   to support this lawsuit."  You know, there's ways he can phrase

24   it.  But to say that it's abusive -- I mean, maybe I should let

25   him; I don't know.  I --

1         **THE COURT:** I think he can do that. I mean, it's

2   going to depend on the extent of what you do, but what you just

3   said is probably allowed.

4         **MR. MOYE:** Yeah; and I'm projecting what we're going

5   to have to argue in closing. We haven't offered evidence yet,

6   so I just didn't want to get my hands trapped. I'm not going

7   to get up there and talk this is an issue of tort reform.

8         **THE COURT:** Right.

9         **MR. MOYE:** I'm not going to do that.

10        **THE COURT:** Or -- or on and on about the abusive --

11        **MR. MOYE:** Yeah. Yeah. And I'll be careful.

12        **THE COURT:** -- (indisc.).

13        **MR. MOYE:** I realize that they're deciding my

14  client's fate as much as mine, so I will -- I will be mindful

15  of that.

16        **MR. HUNNICUTT:** Uh, now, it --

17        **THE COURT:** So, that's denied as represented at this

18  point. Right?

19        **MR. HUNNICUTT:** Well, yes, your Honor, and I do want

20  to point out, because I don't want to run afoul of it, and I'm

21  not sure how the Court wants to handle voir dire examination,

22  but I think there needs to be some questioning of the jurors if

23  anybody is a member of Citizens Against Lawsuit Abuse or

24  something like that.

25        **THE COURT:** Right, but I --

1          **MR. HUNNICUTT:** That's why this is phrased "after the

2   voir dire."

3          **THE COURT:** Right. And you all are going to do that.

4   I do very little civil voir dire. I will introduce you all, so

5   you all need to cover your witnesses with the jury, whatever it

6   is; I pretty much turn it over to you all. When we go through

7   the motions, we can talk about that a little bit more, about

8   how long you all might need and --

9          **MR. HUNNICUTT:** Okay.

10         **THE COURT:** -- for that, for opening. So, you all

11   will need to discuss those issues with the jury. So --

12         **MR. MOYE:** And -- and Mr. Hunnicutt's 24 addresses

13   completion of voir dire examination; that's fair. The reason I

14   objected to 25 was because it didn't include that. I think I'm

15   free to visit with them about Mr. Henry's law firm on voir

16   dire; it's certainly not appropriate elsewhere.

17         **THE COURT:** I think he's allowed to ask.

18         **MR. HUNNICUTT:** I think that's fine.

19         **THE COURT:** So, that's denied. And we're moving on

20   to 27?

21         **MR. HUNNICUTT:** Well, would it be -- would it be

22   granted, though, your Honor, after voir dire?

23         **THE COURT:** Right, well, what --

24         **MR. HUNNICUTT:** I mean, he shouldn't be talking about

25   attorney advertising any other time --

1          **THE COURT:**  Right.

2          **MR. HUNNICUTT:**  -- other than voir dire.

3          **THE COURT:**  And I think he agreed to that.

4          **MR. MOYE:**  I will not do so.

5          **MR. HUNNICUTT:**  Okay.

6          **THE COURT:**  Okay.

7          **MR. MOYE:**  Twenty-seven is just a -- it's a -- it's

8    the issue of fact in the whole case.  I don't know why --

9          **THE COURT:**  Right.

10         **MR. MOYE:**  -- we've got a limine point on that.

11         **THE COURT:**  I mean, that is -- I believe both sides

12   are going to be --

13         **MR. HUNNICUTT:**  The --

14         **THE COURT:**  -- hitting that over and over.

15         **MR. HUNNICUTT:**  Well --

16         **THE COURT:**  But I don't know if you had --

17         **MR. HUNNICUTT:**  -- I think --

18         **THE COURT:**  -- something specific in mind?

19         **MR. HUNNICUTT:**  Yes, I do, your Honor.  The -- if it

20   wasn't -- as the Court's aware from our response to the summary

21   judgment, and the Court references this in the order, the

22   plaintiffs were not advancing any of the common law theories of

23   vicarious liability.  We're standing only on the Statutory

24   Employee Doctrine.  The Statutory Employee Doctrine

25   specifically says it doesn't matter whether or not you would be

1    a common law employer.  We are deciding, the (indisc.) --

2         **THE COURT:**  So, your -- your deal here would be, is

3    not the common law employer, is what you're trying to say.

4         **MR. HUNNICUTT:**  Well, it -- it -- it's confusing and

5    misleads the jury to say that they were not his employer.

6    The -- I believe, based on the Court's rulings, that the jury

7    charge submitted is not going to ask whether or not Mr. Ronald

8    Brown was the employer.  It will ask if there was an

9    arrangement between Ronald Brown and RCX; I mean, using the

10   language out of the statute.  And then the Court decides, as a

11   matter of law, fact -- taking that fact finding from the jury,

12   whether or not Mr. Ronald Brown was the statutory employee.  If

13   he is, there is vicarious liability.  If he's not, there's not.

14   Now, for them to go through the trial saying, "We weren't the

15   employer; we weren't the employer," when --

16        **THE COURT:**  But --

17        **MR. HUNNICUTT:**  -- and our position is he's the

18   statutory employer, we -- we have to start using --

19        **THE COURT:**  The vernacular.

20        **MR. MOYE:**  Well, and --

21        **THE COURT:**  The right words?

22        **MR. HUNNICUTT:**  Well, the --

23        **MR. MOYE:**  I'm sorry.

24        **MR. HUNNICUTT:**  We get into a question of law.  The

25   question of fact for the jury is going to be -- and in my

1  proposed charge the first time around, when I was struggling

2  with this, I put in, of course, a scope question.  The -- but

3  then after I received the Court's order denying the motion to

4  reconsider, the light bulb came on for me about the way I

5  believe this case should be submitted to the jury, and that's

6  what I just espoused, that there should be a question about --

7  from the language on statutory employee on whether or not there

8  was an arrangement.

9          **THE COURT:**  Okay.

10          **MR. MOYE:**  Yeah, if I could, Judge, one, I have read

11  your motion to reconsider, which I think clarified issues for

12  me over the prior three orders, frankly, and your Honor was

13  clear to say that we focused too much on the words "contract"

14  and "agreement" and not on "arrangement," but you mentioned

15  it's still "lease like," and you mention --

16          **THE COURT:**  Right.

17          **MR. MOYE:**  -- it still didn't say -- I mean, it's the

18  -- the lease contract issue that we focused on, you're saying,

19  well, no, that's not right; you can have an agreement under the

20  definition.  But the problem in this case is, Judge, the facts

21  in this case are, we're offering, is that we're a broker; we

22  are not a motor carrier.  And part of the defense to suggest

23  that we are a broker is the fact that this company has employee

24  drivers and it has leased drivers.  The very same thing that

25  their experts and lawyers say we should have done in this case

1  we already have.  So, we know the rules, we do the DQ files, we

2  do all of the stuff.  So, it's germane evidence to say, our

3  course of dealing, we know the rules; we didn't do it in this

4  case because they had broker -- we had -- they had motor

5  carrier authority, they had insurance, that's why we brokered

6  the load.  So, for me to be denied to talk about those key

7  elements of the case doesn't make any sense to me.

8          **THE COURT:**  Well, I --

9          **MR. HUNNICUTT:**  I think we're going to be talking

10  about those elements.

11          **THE COURT:**  Yes.  I don't see a problem with what

12  you're trying to do at all.  I'm trying to figure out the

13  employer issue -- you know, specifically, is what

14  Mr. Hunnicutt's having a problem with.  I think it kind of

15  comes in loosely in the way we talk about employers.  I don't

16  know if there is a way to clean that up, because of the facts

17  of this case and what's going to be presented to the jury, but

18  this is the whole issue.

19          **MR. HUNNICUTT:**  Well, and -- and --

20          **MR. MOYE:**  And it's a limine point.  I mean --

21          **MR. HUNNICUTT:**  Yeah, but --

22          **MR. MOYE:**  I mean, that's -- I don't understand why

23  it's a limine point.

24          **THE COURT:**  But --

25          **MR. HUNNICUTT:**  Well --

1          **THE COURT:**  -- what you just said is not

2    objectionable as to what you're trying to do.

3          **MR. MOYE:**  Yeah.  But --

4          **THE COURT:**  Mr. Hunnicutt agrees.

5          **MR. MOYE:**  Well, but that's the --

6          **MR. HUNNICUTT:**  Right.

7          **MR. MOYE:**  -- (indisc.) say he's an employer, because

8    I get to ask when my corporate rep sits there, and I say, "Do

9    you have company employees" --

10          **THE COURT:**  "We have some employees."

11          **MR. MOYE:**  -- "I have employees."

12          **THE COURT:**  "We have" -- yes.

13          **MR. MOYE:**  "Was Ron Brown your employee?"

14          **MR. HUNNICUTT:**  Well --

15          **MR. MOYE:**  "No.  He didn't fill" --

16          **THE COURT:**  Yeah, but he's talking -- yes.

17          **MR. MOYE:**  Because he could say, "He didn't fill out

18    a driver application; we didn't maintain a DQ file."  All those

19    issues are germane to the defense that we knew what we were

20    doing as a motor carrier, knew what we were doing versus owner,

21    operator, lease situation, have a file of them, produced them

22    in the case under Rule 26.  I've got to be able to say why this

23    is distinguishable, why we brokered this load, albeit without

24    proper authority, but we brokered it.

25          **MR. HUNNICUTT:**  And, your Honor --

1          **MR. MOYE:**  I can't do it without it.

2          **MR. HUNNICUTT:**  Our expert, Roger Allen, has expert

3    testimony that -- and I know this is a question of law, and the

4    Court has already said that he's not going to get to talk about

5    questions of law, but I'm throwing this out there to kind of

6    illustrate the point.  He just mentioned that we -- they

7    considered him not to be an employee, so they don't have a DQ

8    file, "driver qualification file," they don't have a drug test,

9    they don't have X, Y, Z.  Roger Allen says that -- that he was

10   a statutory employee and, therefore, even though they say they

11   don't have one, that's actually an indictment of them --

12          **THE COURT:**  But isn't that just all --

13          **MR. HUNNICUTT:**  -- because they're supposed to.

14          **THE COURT:**  But isn't that all just argument for the

15   jury?  And I would hope, by the time you all finish, the jury

16   can distinguish, you know, what the issues are?

17          **MR. HUNNICUTT:**  Well, then --

18          **MR. MOYE:**  Took me a year and a half (indisc.) figure

19   these issues out, so --

20          **THE COURT:**  Well, I -- I still haven't figured

21   (indisc.).

22          **MR. HUNNICUTT:**  Well, and that's just it.  The --

23          **THE COURT:**  There's too many levels here of companies

24   involved and what was going on and this was not the right

25   broker --

1          **MR. HUNNICUTT:**  Sure.

2          **THE COURT:**  -- and that -- it's a little --

3          **MR. HUNNICUTT:**  Your Honor --

4          **THE COURT:**  But I would hope by the end of your time

5    with the jury you're going to have clarified it.

6          **MR. HUNNICUTT:**  I would hope so, too.

7          **THE COURT:**  Yeah.

8          **MR. HUNNICUTT:**  But -- and maybe this is a point of

9    clarification on the Court's prior ruling on Roger Allen,

10   because we want to -- in order to present our case to the jury,

11   we need to make them aware of the fact that if he's a statu- --

12   if -- if this is a statutory employee situation, then it

13   doesn't matter that they say they don't have things that they

14   would have on an employee; they're supposed to have those

15   things.  Now, I know I'm getting ahead of myself, but we kind

16   of have to figure this out so we can figure out how all of this

17   dovetails.

18         **THE COURT:**  I -- I think that all comes in.

19         **MR. HUNNICUTT:**  On the --

20         **MR. MOYE:**  Yeah.

21         **THE COURT:**  And then you all figure out how you're

22   going to argue it.

23         **MR. HUNNICUTT:**  Okay.

24         **MR. MOYE:**  Because there's a problem, too, because

25   there's not a direct motor carrier claim.  Your Honor granted

1  summary judgment on that, which makes it even dicier, and the

2  crazy thing is, I don't represent Ron Brown.

3        **MR. HUNNICUTT:**  Well, it's vicarious --

4        **MR. MOYE:**  And it's nuts.

5        **MR. HUNNICUTT:**  It's vicarious liability.

6        **MR. MOYE:**  But I'm not his lawyer; I'm not his

7  estate's lawyer.  I'm just pointing out the uniqueness of this

8  case.

9        **MR. HUNNICUTT:**  The --

10        **MR. MOYE:**  So, I also think the uniqueness of the

11  case, Judge, barring from some what I believe may be

12  dicta-esque thoughts, were there's the law what the books say

13  in contract formation, and there is how things work in the

14  motor carrier world, and sometimes we're not very consistent,

15  and that's -- that's -- is what it is.

16        **THE COURT:**  But it comes in.

17        **MR. MOYE:**  I think it comes in, as well.

18        **THE COURT:**  The facts come in, and you all have to

19  clean it up for the jury in terms of the questions.

20        **MR. MOYE:**  Yeah.

21        **MR. HUNNICUTT:**  (indisc.)

22        **MR. MOYE:**  I think Roger Allen should be able to say,

23  "These are all of the facts that I arrived at, that he was a

24  leased driver" --

25        **THE COURT:**  Yes.

1          **MR. MOYE:**  -- and, then, as a matter of law, if

2    you're a leased driver, under 392, boom, you're a statutory

3    employer.  So, that extra step I don't think is necessary, and

4    I think that's what your Honor was getting at.  But the facts

5    of this case are going to be all over the place.

6          **MR. HUNNICUTT:**  Well, I --

7          **THE COURT:**  That's why you all should settle.

8          **MR. HUNNICUTT:**  I think we -- I think we know what

9    the facts are, but the -- I would like to -- I know we haven't

10    even tried the case or put on any evidence, so we can't even

11    get to a charge conference, but I -- I think, since this is

12    weird, if -- if the Court will excuse that expression; this is

13    not a pattern jury charge case --

14          **THE COURT:**  Right.

15          **MR. HUNNICUTT:**  -- I would like to maybe get -- have

16    the Court think about this, and before we actually start

17    putting on evidence, we have an idea about this question.  And

18    I have two ways --

19          **THE COURT:**  I mean, I reviewed what you all have

20    submitted.

21          **MR. HUNNICUTT:**  And I -- I want to change what I

22    submitted.

23          **THE COURT:**  Okay.

24          **MR. HUNNICUTT:**  Because originally I was thinking

25    that I might be able to move for a directed verdict on the

1    statutory employee doctrine.  After reading the Court's third

2    order on -- on this issue --

3              **THE COURT:**  It's facts.

4              **MR. HUNNICUTT:**  -- that they --

5              **THE COURT:**  It's facts.

6              **MR. HUNNICUTT:**  Yes.

7              **THE COURT:**  It's facts.

8              **MR. HUNNICUTT:**  You were clear, three times; it

9    just -- my -- my view was muddy until the third time you hit me

10   with it.

11             **THE COURT:**  Well, because the facts are muddy.

12             **MR. HUNNICUTT:**  The -- I have been thinking of two

13   ways to have a broad form submission.  The first alternative is

14   to -- to do something like, quote:  "At the time of the

15   collision between Mr. Brown and Mr. Puga, was RCX using motor

16   vehicles it did not own to transport property under an

17   arrangement with Ronald Brown?"  Ask that fact question of the

18   jury.  And that comes out of the -- the U.S. statute that the

19   Court cited.

20             Or, we could do it where we give them a definition

21   and then ask the question, and --

22             **THE COURT:**  Okay.  Let me ask this.  Have you guys

23   discussed that?

24             **MR. MOYE:**  We haven't.  And I -- and I think --

25             **THE COURT:**  Okay.  Because I think you all probably

1    need to discuss it and pick each other's brains about it; you

2    all probably will not have an agreement, but you all might be

3    able to narrow some of the stuff down.

4              **MR. HUNNICUTT:**  Then, if I can suggest, your Honor,

5    we will talk about it, and then, if we can agree --

6              **THE COURT:**  Maybe by Tuesday?

7              **MR. HUNNICUTT:**  -- on a submission, we'll -- we'll

8    let the Court know what we're agreeing the submission is by

9    Tuesday, 5:00 o'clock?  Would that be on the same time frame?

10   And if we can't, we'll both submit the way we think it should

11   be submitted.

12             **THE COURT:**  So, you're going to submit something

13   different, is what you're saying, than what has already been

14   submitted.

15             **MR. MOYE:**  Yeah, we would probably both mutually ask

16   for leave to file a late charge.

17             **THE COURT:**  Okay.

18             **MR. HUNNICUTT:**  Just on that one question.

19             **THE COURT:**  That's kind of the core of how we decide

20   the charges is going to depend on a lot of --

21             **MR. MOYE:**  It is.

22             **THE COURT:**  -- these facts.

23             **MR. MOYE:**  And I'll admit I sat down to write a

24   charge.  I know I did.

25             **THE COURT:**  I know.

1          **MR. MOYE:**  Because, frankly, I want to be able to

2     say, "I'm a broker," because under the law, if I'm a broker, I

3     can't be a transport, I can't be a motor carrier, I win, I go

4     home.  He's going to say, "No, no, no, no, no; let's talk about

5     this," and it's not -- he's doing what he should be doing; he's

6     doing his job --

7          **THE COURT:**  Yes.

8          **MR. MOYE:**  -- and doing it well, but we have -- there

9     are some competing interests, but I presume we can streamline

10     certain issues, and we'll indulge Mr. Hunnicutt's request for a

11     Tuesday at 5:00 joint offering or at least a streamlined

12     offering --

13          **THE COURT:**  Okay.

14          **MR. MOYE:**  -- and then we'll go from there.

15          **MR. HUNNICUTT:**  I don't know about you, but we both

16     need to know how this is --

17          **MR. MOYE:**  I agree with you.

18          **MR. HUNNICUTT:**  -- and get it submitted before --

19          **THE COURT:**  Right.  I mean --

20          **MR. MOYE:**  I was -- I was wrestling with it.

21          **THE COURT:**  -- before you start the case.

22          **MR. MOYE:**  Yeah, I was -- I have been wrestling with

23     this case on these legal issues.  The comparative fault

24     assessment; how you submit a settlement person --

25          **THE COURT:**  I know.

1          **MR. MOYE:**  All these issues.  It's bizarre.

2          **THE COURT:**  Yes.  I agree.

3          So, we were on 27.  And we -- should we talk about

4  that one further?

5          **MR. MOYE:**  I think 27 and 28 we should, frankly --

6          **THE COURT:**  Kind of --

7          **MR. MOYE:**  -- because I think it's largely the same

8  thing, except it's into a expert testimony, but it's -- it's

9  the same thing.  I think we should reserve --

10          **MR. HUNNICUTT:**  Maybe table that --

11          **MR. MOYE:**  -- table 27 and 28?

12          **MR. HUNNICUTT:**  -- until after we talk.

13          **THE COURT:**  Okay.

14          **MR. HUNNICUTT:**  We'll figure out the charge.

15          **THE COURT:**  Okay.

16          **MR. MOYE:**  And thank you for that, Judge.

17          **THE COURT:**  We can do that -- how long do you all

18  think the case might take to try?

19          **MR. HUNNICUTT:**  Your Honor, I was -- for our video

20  testimony offers we have six and a half hours of testimony

21  through those.  It's like a -- less than a dozen witnesses.

22  For the -- for the live witnesses, I am estimating about six

23  hours of direct testimony.  So, that's 12 and a half, 13 hours.

24          **THE COURT:**  So, about two -- two days, plus voir

25  dire, plus the defense --

1          **MR. MOYE:**  I assume times two.

2          **THE COURT:**  Yeah, so a full week.

3          **MR. MOYE:**  Plus cross.

4          **THE COURT:**  A full week.

5          **MR. MOYE:**  A full week.

6          **THE COURT:**  Because I was just trying to see if there

7    was any other time where we could gather again to kind of

8    finalize some of these issues before the trial, but I'm not

9    sure.

10          **MR. HUNNICUTT:**  I would -- I would think we could do

11   a phone call, since --

12          **THE COURT:**  Yeah.  Court's not available Friday, the

13   14th, though.  Possibly early in the morning, but if you all

14   want to have --

15          **MR. MOYE:**  We'll make ourselves available Thursday

16   for a phone call with the Court if that satisfies these needs.

17          **MR. HUNNICUTT:**  We'll -- I will do everything --

18          **THE COURT:**  Yeah, probably in the morning, Thursday

19   morning?

20          **MR. MOYE:**  Okay.

21          **MR. HUNNICUTT:**  Thursday morning?

22          **THE COURT:**  Nine o'clock?  And then you'll all have a

23   chance to discuss.  But we're going to keep -- you know,

24   continue working, but some of these issues, then, like 27, we

25   can come back to; the charge we can come back to; settlement

1   issue.

2           Okay.  So, then, 28 is, again, that same issue, like

3   you said --

4           **MR. MOYE:**  Same.

5           **THE COURT:**  -- so we'll wait on that one.  Then, what

6   about 29?

7           **MR. MOYE:**  The 29, I think, is just follow the rules;

8   if he answers a -- if I ask a question that calls for

9   speculation, he's free to object at trial.  I don't think this

10  global, follow the rules, don't speculate, is really relevant

11  for a limine point.

12          **MR. HUNNICUTT:**  Well, actually, we're -- we're very

13  specific on -- it -- it's from the deposition testimony, page

14  83, line 25, to 84, line 5.

15          **MR. MOYE:**  Well, we're not offering this depo, Judge,

16  so --

17          **THE COURT:**  Okay.

18          **MR. MOYE:**  -- but the question was --

19          **THE COURT:**  So, if the question's asked --

20          **MR. MOYE:**  "Based on what you've reviewed, deposition

21  testimony, et cetera, what was the intent originally of who was

22  going to drive the load?"  "RCX."  That's their position in the

23  case.  The entire case is that RCX was originally charged with

24  driving the load, so I don't know what the objection is for.

25          **THE COURT:**  Mr. Hunnicutt?

1          **MR. HUNNICUTT:** But there was --

2          **MR. MOYE:** I have it here if you'd like to look.

3          **MR. HUNNICUTT:** Yeah. Would you -- that would be

4    great.

5          **MR. MOYE:** Right here.

6          **MR. HUNNICUTT:** Thank you, sir.

7          **MR. MOYE:** And I promise to lay the proper foundation

8    and predicates to ask the witness, and if it's objectionable,

9    (indisc.) --

10          **MR. HUNNICUTT:** Your Honor, I'll withdraw the

11    objection.

12          **THE COURT:** Okay. So, that was on 29. So, we're at

13    30.

14          **MR. MOYE:** It's the same argument I'd offer, Judge.

15          "QUESTION: Do you have an opinion as to how RCX

16          Solutions treated this load when they had Ronald

17          Brown take it?

18          "ANSWER: Well, it's my opinion that RCX Solutions

19          brokered the load to Mr. Brown."

20          Again, that's foundational. I'll lay the proper

21    predicate, the proper foundation at trial; it's -- it's the

22    gentleman's opinion of facts.

23          **THE COURT:** And if you want to object at trial, I

24    guess it might be appropriate, but --

25          **MR. HUNNICUTT:** Well, as long as he lays the

1  foundation first, I -- the way that was presented in the

2  deposition testimony, it -- it is speculation.

3          **THE COURT:**  Okay.  So, you want to withdraw it since

4  it's just based on the deposition?

5          **MR. HUNNICUTT:**  Well, there's no -- if he -- if he

6  appears live, then I'm withdrawing it.  If -- if they change

7  their minds and they're going to do it by video, then we'll --

8          **THE COURT:**  Is he coming live?

9          **MR. MOYE:**  Barring health issues, he'll be here live.

10         **MR. HUNNICUTT:**  So, I'll withdraw it --

11         **THE COURT:**  So, withdraw for now; we can revisit if

12 we need to.

13         **MR. HUNNICUTT:**  Exactly.

14         **MR. MOYE:**  But when we get into timing, I don't want

15 to be too schizophrenic; my wife says that I am; everybody that

16 I work with says I am.

17         **THE COURT:**  I think we all are in this business.

18         **MR. MOYE:**  But on the timing issue, we could probably

19 streamline our case a bit by offering some video, because I

20 intended to call --

21         **THE COURT:**  Okay.

22         **MR. MOYE:**  -- all these guys live; then I late filed

23 some submissions; they got properly stricken.  Maybe we can

24 talk about maybe having --

25         **THE COURT:**  If you all want to talk and have some

1  agreements; I just cold not start preparing if you all were

2  continuing to object --

3         **MR. MOYE:**  Fair.

4         **THE COURT:**  -- to deposition testimony.

5         **MR. MOYE:**  We would have done it till this morning if

6  we'd allowed to, as well.  So, I'm glad you told us off.

7         **THE COURT:**  And if you all want to streamline it,

8  you --

9         **MR. MOYE:**  All right.  So, if we file a motion for

10  leave with a rebuttal submission, we deal with that with

11  defense counsel --

12         **THE COURT:**  That's agreed to.

13         **MR. MOYE:**  Yeah, agreed to.  Fair.

14         **THE COURT:**  Yes.

15         **MR. MOYE:**  Fair.

16         **THE COURT:**  If you can do that.

17         Okay.  Thirty-one?

18         **MR. MOYE:**  I think that was handled already, Judge.

19         **MR. HUNNICUTT:**  Yes, that --

20         **THE COURT:**  Okay.  So, that's denied, right?  If I

21  recall correctly?

22         **MR. HUNNICUTT:**  Yes.  Yes, your Honor.

23         **THE COURT:**  Then, we are at 32.

24         **MR. MOYE:**  Again, I think these are charge issues,

25  Judge, because it's -- it's borrowing language from orders

1  about not being able to testify about there being a lease

2  agreement as being required.  I think there -- there clearly is

3  a lease agreement be required, because, as you pointed out

4  astutely, it's contract or arrangement.  So, it might be one

5  question's "Is there a lease agreement, yes, no?"  "Was there

6  an oral lease agreement, yes, no?"  "Was there an arrangement,

7  lease like, yes, no?"  I think they're foundational factual

8  questions.  I think when your Honor denied my summary

9  judgment -- because I was trying to seek the umbrella win on

10  only one component of what is relevant on the fact side.  So, I

11  can talk about a lease agreement; it's in the rules.  I can

12  talk about other lease-like arrangements, as your Honor pointed

13  out.

14          **THE COURT:**  So, you're going to argue there was a

15  lease agreement; not this time.

16          **MR. MOYE:**  I'm going to argue there was not a lease

17  agreement.

18          **THE COURT:**  What -- right.

19          **MR. MOYE:**  I'm going to argue there was -- but I'm

20  not --

21          **THE COURT:**  It was an arrangement.

22          **MR. MOYE:**  Exactly.  But I'm not -- well, it says

23  contract or arrangement.  And --

24          **THE COURT:**  Okay.  So, are you saying there is a

25  contract?

1          **MR. MOYE:** No, there's not.

2          **THE COURT:** Okay. It's an -- you're right. So -

3          **MR. MOYE:** Yeah. So --

4          **THE COURT:** -- what we're dealing with here is an

5    arrangement.

6          **MR. MOYE:** Well --

7          **THE COURT:** That regards a lease?

8          **MR. MOYE:** Well, but as the evidence goes to support

9    whether or not I am a broker versus more of a motor carrier,

10   all the experts in this case have testified that the rules

11   require you have to have a written lease. I understand your

12   Honor says you don't have to have a written lease. That's

13   fine. But as one piece of the pie, for the burden of proof,

14   that I don't have but I need to get at least to backdoor my

15   burden of proof, that I get to be able to say there is no

16   written lease agreement. It goes to state of mind on what we

17   thought we were doing; because we have lease agreements,

18   written, under the rules, with other drivers.

19         **THE COURT:** Okay. So, what is this motion in limine

20   getting to, Mr. Hunnicutt?

21         **MR. HUNNICUTT:** Your Honor, it's very specific.

22   The -- and let's spell it out. The defendant shouldn't say

23   that a lease agreement is required in order for RCX Solutions,

24   Inc. to be the statutory employer of Ronald Brown.

25         **THE COURT:** Well, and that's not what you're trying

1    to say.

2            **MR. HUNNICUTT:**  That -- now, they get --

3            **THE COURT:**  So, that's a key term --

4            **MR. HUNNICUTT:**  My understanding --

5            **THE COURT:**  -- "is required."

6            **MR. HUNNICUTT:**  My understanding of the law and of

7    the Court's order is that you become a statutory employer if

8    you have an arrangement.  Elsewise, employers could avoid being

9    a statutory employer by -- by having verbal arrangements all

10   the time to get around it.

11           **THE COURT:**  Okay.  But he's saying he's not --

12           **MR. HUNNICUTT:**  Right.

13           **THE COURT:**  This motion in limine is very specific

14   that a lease agreement is required, and the defense is

15   saying --

16           **MR. HUNNICUTT:**  To be a statutory employer.  That's

17   what he --

18           **THE COURT:**  Right; but he's saying he's not going to

19   say that.  That's not his argument.

20           **MR. HUNNICUTT:**  I --

21           **THE COURT:**  He's going to say there is not a lease

22   agreement, but he's not going to say it's required.

23           **MR. HUNNICUTT:**  But he's -- but statutory --

24           **MR. MOYE:**  To be a statutory employer, no --

25           **THE COURT:**  Right.

1          **MR. MOYE:** -- because I don't think I can even

2    comment about statutory employer.

3          **MR. HUNNICUTT:** It gets --

4          **MR. MOYE:** Again, that's a legal issue for the judge.

5          **MR. HUNNICUTT:** It gets -- where I have a problem is

6    what he also said, that every single expert agrees that a lease

7    agreement is required. The implication there is that it's

8    required to be a statutory employer. A lease agreement -- once

9    you are determined to be a statutory employer because of an

10   arrangement, then you're supposed to have a written lease

11   agreement. And if you don't, you're in violation. It doesn't

12   mean you're not a statutory employer. It means you're in

13   violation of your duties as a statutory employer. And --

14         **THE COURT:** Okay. So, what are you all clarifying

15   there, then? Or what -- what is -- because it's my

16   understanding the defense is saying they're not going to -- to

17   argue that or bring in evidence that a lease agreement is

18   required for a statutory employer issue.

19         **MR. MOYE:** As worded --

20         **THE COURT:** As worded.

21         **MR. MOYE:** -- that is correct.

22         **MR. HUNNICUTT:** Then -- then, we're in agreement on

23   this motion in limine.

24         **THE COURT:** Except that he does want to bring in

25   evidence there was no lease agreements here. Right?

1          **MR. HUNNICUTT:**  And that's --

2          **MR. MOYE:**  Oral, written --

3          **THE COURT:**  Right.

4          **MR. MOYE:**  -- agreements --

5          **THE COURT:**  Right.

6          **MR. MOYE:**  -- arrangements, the world of it.

7          **MR. HUNNICUTT:**  (indisc.)

8          **MR. MOYE:**  And his expert is the one who testified

9   you had to have a written agreement, not -- I mean, this is not

10  just Will Moye trying to bend the rules here.  So, if he can't

11  testify to that, that's fine, but I've got to get on this stack

12  all of the things that we did right versus all of the things we

13  did wrong --

14         **THE COURT:**  Yeah, I think we're --

15         **MR. MOYE:**  -- so the jury can have a conclusion.

16         **THE COURT:**  -- spending way too much time on this.

17         **MR. MOYE:**  Okay.

18         **THE COURT:**  I -- the -- as stated, "is required,"

19  that's agreed to.  You're not going to say it's required; lease

20  agreement.

21         **MR. MOYE:**  Required to be a statutory employer.

22         **THE COURT:**  A statutory employer.

23         **MR. HUNNICUTT:**  Right.

24         **THE COURT:**  That's the way I read this.  Maybe I'm

25  reading it wrong.

1          **MR. HUNNICUTT:**  Yes.  That's the way I meant it.

2          **MR. MOYE:**  I don't think you'll see me, outside the

3    presence of -- in front of the jury use the word "statutory

4    employer" once.

5          **THE COURT:**  Okay.

6          **MR. MOYE:**  I don't think either one of us should.

7          **MR. HUNNICUTT:**  Well, I think I have to, because he's

8    going to say he's not the employer.  So, I'll have to.

9          **MR. MOYE:**  Statutory employer.

10          **MR. HUNNICUTT:**  Well, okay.  We'll -- this is going

11   to be interesting.

12          **THE COURT:**  We're not trying the case right now,

13   so --

14          **MR. MOYE:**  Yeah, fair.  Fair.  Fair.

15          **THE COURT:**  So, 33 is the settlement; it's the

16   briefing issue that you all are going to do, right?

17          **MR. HUNNICUTT:**  Yes.

18          **THE COURT:**  So, then, 34?

19          **MR. MOYE:**  I just wanted to get clarity that your

20   Honor did have an opinion that said I'm not -- I think you can

21   have more than one employer at a time, but there's been no

22   movement or motion or ruling you can't have -- that you can

23   have, in fact, more than one motor carrier at a time.

24   Mr. Hunnicutt's expert admitted you can't have more than one

25   motor carrier at a time.  So, I just wanted to --

1          **THE COURT:**  This is employer, right?

2          **MR. MOYE:**  Exactly.  So, if it's limited to one

3  employer at a time, the labor employment liability issue, then

4  I don't care, that's fine, I'll agree to it.

5          **THE COURT:**  Mr. Hunnicutt?  It says "employer."  So,

6  that's the way I read that one.

7          **MR. HUNNICUTT:**  That's -- that's this motion in

8  limine.

9          **THE COURT:**  So, that's agreed, right?

10          **MR. HUNNICUTT:**  Yes.

11          **THE COURT:**  Thirty-five.

12          **MR. MOYE:**  Thirty-five, they did not plead in the

13  alternative.  It was -- it was pled as everybody's the motor

14  carrier, everybody's the employer, and then they settled, and

15  they admitted, "It was just me," and that's fine; they're

16  entitled to do that.  But I'm also entitled to offer evidence,

17  under all hundred years of jurisprudence, that's a prior

18  inconsistent statement, that's an admission by a party

19  opponent --

20          **THE COURT:**  Yes.

21          **MR. MOYE:**  -- that's bias of the witnesses --

22          **THE COURT:**  Yes.  Yes.

23          **MR. SPEAKER:**  -- and (indisc.) --

24          **THE COURT:**  Yes.  Mr. Hunnicutt, why wouldn't he be

25  able to do that?

1          **MR. HUNNICUTT:**  I think he would be entitled to do

2    that.  I'll withdraw 35.

3          **THE COURT:**  Okay.  All right.  So, that's all on the

4    plaintiffs' motions.

5          **MR. MOYE:**  And 36, Judge --

6          **THE COURT:**  No, you didn't object to --

7          **MR. MOYE:**  Okay.  Well --

8          **THE COURT:**  -- 36.

9          **MR. MOYE:**  I promised no questions of law consistent

10   with Mr. Allen, but, frankly, if we get through some issues,

11   that might change some things.  We might all have to revisit

12   some of these --

13          **THE COURT:**  Okay.

14          **MR. MOYE:**  -- questions of law issues.

15          **THE COURT:**  All right.

16          **MR. MOYE:**  Thank you.

17          **THE COURT:**  So, we're moving, then, to defendant's

18   motion in limine, and the plaintiff had some objections, not as

19   many.  And the first one I'm showing is to 22, irrelevant

20   opinions by Everett Dillman.

21          I'm going to have to break about 11:45 just to do a

22   quick swearing in, and then we can continue if we're --

23          **MR. HUNNICUTT:**  Okay.

24          **THE COURT:**  -- if we're still at it.

25          **MR. HUNNICUTT:**  Um, well --

1          **MR. MOYE:**  I'll streamline it.

2          **THE COURT:**  That might give you all some -- some time

3  to --

4          **MR. MOYE:**  I don't think he's going to talk about

5  loss of earning capacity; I think he's going to talk about pre-

6  injury earning capacity; he's not a voc. rehab., by his

7  admission; I'll withdraw it.

8          **THE COURT:**  Okay.

9          **MR. MOYE:**  I think this is overly prophylactic, and

10  our apologies for that.

11          **THE COURT:**  Twenty-three, then.

12          **MR. MOYE:**  Been handled.

13          **THE COURT:**  Okay.  Then, we have 24?

14          **MR. MOYE:**  Twenty-four, I think we can maybe save for

15  the evidence.  I think the doctor on video showing how things

16  worked is an appropriate demonstrative for the jury.  Our

17  objection, it shouldn't be submitted into evidence.

18          **THE COURT:**  And I haven't seen it; I don't know what

19  it is.

20          **MR. HUNNICUTT:**  No, we're -- we're not going to --

21  no, I'm not going to -- I agree.  It's a demonstrative.  It --

22  and it will not be marked as evidence and go back to the jury.

23  It's demonstrative, just like anatomical drawings.

24          **THE COURT:**  So, but it's going to be played for the

25  jury through the deposition.

1          **MR. HUNNICUTT:**  Yes.

2          **THE COURT:**  Okay.

3          **MR. MOYE:**  It's --

4          **THE COURT:**  So, we're good on that?

5          **MR. MOYE:**  The doctor admitted it to assist the jury,

6     so, sure.

7          **THE COURT:**  Okay.

8          **MR. MOYE:**  And 25, their objection clarified my

9     concerns, so we're in agreement, or, in fact, I'll just

10    withdraw, make life easier.

11         **THE COURT:**  Okay.  That was it on that, then.  So,

12    those are the motions in limine.  You all may -- as you all

13    confer further on different things, I understand different

14    issues may come up, so we can revisit some things, right, is

15    where we're leaving that?

16         **MR. HUNNICUTT:**  Yes, your Honor.  The -- even -- even

17    though we didn't mention Number 26, just like counsel did on

18    Jennings, I think before Mr. Allen and Mr. Jennings, the truck

19    safety experts, both testify, we'll -- we'll probably need to

20    revisit with the Court where the line is drawn on a question of

21    law that they don't talk about versus the educating the jury on

22    the requirements of the statute.  And I would like to have some

23    more guidance from the Court before I put my expert on the

24    stand.

25         **THE COURT:**  Okay.  And you all need to talk about

1　that further, because, as we say, what's good for you is good

2　for you --

3　　　　　　**MR. HUNNICUTT:**　Right.

4　　　　　　**THE COURT:**　-- so, where are we going; if you all --

5　we can have some agreements on that, or at least you all can

6　discuss it further, then I can -- it's going -- it's going to

7　be a hard line --

8　　　　　　**MR. HUNNICUTT:**　Yeah.

9　　　　　　**THE COURT:**　-- a little bit difficult to -- what's

10　too much and what's going too legal and --

11　　　　　　**MR. HUNNICUTT:**　So, yeah.　I think that would be a

12　good topic maybe for Thursday morning.

13　　　　　　**THE COURT:**　Okay.　About experts?

14　　　　　　**MR. HUNNICUTT:**　The question of law thing.

15　　　　　　**THE COURT:**　So, testimony -- and you all discuss that

16　further in the meantime.

17　　　　　　**MR. HUNNICUTT:**　We will.

18　　　　　　**MR. MOYE:**　And Mr. Hunnicutt's suggestion is a

19　prudent one.　We're kind of in the same boat, frankly.

20　　　　　　**THE COURT:**　Yes.

21　　　　　　**MR. MOYE:**　And we appreciate you offering us a little

22　flexibility to work some of these issues out.

23　　　　　　**THE COURT:**　Well, I hope I offer you all so much

24　flexibility that you all settle the case.

25　　　　　　**MR. MOYE:**　Yes.　Yes.

1          **THE COURT:** But, anyway --

2          **MR. MOYE:** Yes.

3          **THE COURT:** So, let's go to exhibits. Plaintiff

4     filed some exhibits; defendant had some objections.

5          **MR. MOYE:** Your Honor, Ms. Parecki will --

6          **THE COURT:** Okay.

7          **MR. MOYE:** Thank you.

8          **(Pause)**

9          **MR. MOYE:** Your Honor, I have a new medical

10    condition; I don't want to put it on the record, but can I walk

11    out to the washroom, please?

12         **THE COURT:** Yes.

13         **MR. MOYE:** Thank you.

14         **THE COURT:** Yes.

15         **MR. HUNNICUTT:** And if the -- well, I guess we're --

16         **THE COURT:** Did you all talk about --

17         **MR. HUNNICUTT:** -- going till 11:40.

18         **THE COURT:** -- these already? Were they objected to?

19         **MR. HUNNICUTT:** There -- there has been some

20    discussion about these.

21         **THE COURT:** Okay. So, let's see where we are, then.

22    What does the defendant object to on the plaintiffs' exhibits?

23         **MS. PARECKI:** All right, your Honor, beginning with

24    Exhibits 2 and 4, I believe our first objection has now been

25    ruled on, because it had to do with the issue about applying

1   Section 18.001 --

2           **THE COURT:**  Right.

3           **MS. PARECKI:**  -- which has now been denied by the

4   Court -- or granted by the Court.  So, the only thing that we

5   would add is that the billing record affidavits that have been

6   submitted by plaintiffs' counsel need to be redacted to move --

7           **THE COURT:**  Right; and you all discussed that.

8           **MR. HUNNICUTT:**  Yeah, and, your Honor, I agree.

9   The -- we've been in the process of trying to redact all of the

10  usual insurance references, collateral sources.  Anything else

11  the Court has -- has been ruling on, we will work diligently

12  with counsel so that if there's -- if there -- so we have a

13  clean copy by --

14          **THE COURT:**  Right.

15          **MR. HUNNICUTT:**  -- I suggest --

16          **THE COURT:**  And it almost sounded like earlier, from

17  the comments, that you all were going to try to come to some

18  sort of agreement on the billing as --

19          **MR. HUNNICUTT:**  Right.

20          **THE COURT:**  -- submitted, and -- and all.

21          **MR. HUNNICUTT:**  Right.

22          **THE COURT:**  So, I think you all can work that out.

23  So, what else?

24          **MS. PARECKI:**  We had objected to Exhibits 5, 6, and

25  7, to the extent they contained causation opinions by Trooper

1    Smith.  That now has been effectively ruled on by the Court in

2    denying our motion to limit his testimony, so I think 5, 6, and

3    7 -- our objections to 5, 6, and 7 have been effectively

4    mooted.

5            **MR. HUNNICUTT:**  We'll still redact insurance

6    references --

7            **THE COURT:**  Right.

8            **MR. HUNNICUTT:**  -- out of those, and whatever other

9    matters.

10           **MS. PARECKI:**  Exhibit 10, your Honor, is video of the

11   scene that was taken by a cell phone of some witness who was

12   there.  My only problem with that is, until that cell phone

13   video is authenticated in some form or fashion, I guess by

14   Trooper Smith, since he was there at the scene, it should --

15           **THE COURT:**  Okay.  So, is someone going to

16   authenticate that?

17           **MR. HUNNICUTT:**  Yes.  We're going to be bringing Rene

18   Garza, who was the -- he's been listed.

19           **THE COURT:**  Okay.

20           **MR. HUNNICUTT:**  We're bringing him live.  I can have

21   him on and off the stand in 15 minutes.  Also, Trooper Smith

22   looked at that video and said, "Yes, that's exactly the way it

23   looked," so I think it's proven up already through Trooper

24   Smith.  But we'll also have Mr. Garza.

25           **THE COURT:**  All right.

1          **MS. PARECKI:**  And it was -- it was Mr. Garza's cell

2     phone video?

3          **MR. HUNNICUTT:**  Yes.

4          **MR. PARECKI:**  Okay.

5          **THE COURT:**  Okay?

6          **MS. PARECKI:**  Your Honor, Exhibit 11, news articles

7     about the collision --

8          **THE COURT:**  Yeah.  How does that come in?

9          **MS. PARECKI:**  -- I mean, those are clearly hearsay.

10         **THE COURT:**  How do these articles come in,

11    Mr. Hunnicutt?

12         **MR. HUNNICUTT:**  Um, normally they would not.

13         **THE COURT:**  Right.

14         **MR. HUNNICUTT:**  And we put them on the list in case,

15    for some reason, the door gets opened.

16         **THE COURT:**  Okay.  But, no.  So --

17         **MR. HUNNICUTT:**  But --

18         **THE COURT:**  So, this objection is sustained.  Unless

19    some special matter comes up, you can certainly approach, but

20    they generally don't come in.  So --

21         **MS. PARECKI:**  Exhibits 14 and 15 we had referred to

22    our limine point number 25 about cumulative graphic photos, but

23    I think that's now been handled because of, you know, the

24    response by Mr. Hunnicutt, you know, that they'll only use

25    what's appropriate.  So, I think those have already been

1   handled.

2           **THE COURT:**  Okay.

3           **MS. PARECKI:**  Exhibit 47, these are Ronald Brown's

4   cell phone records.  Your Honor, in the joint pretrial order

5   the parties agreed under the admissions of fact -- there were

6   very few facts that we all agreed, but we did agree that Ronald

7   Brown was on his cell phone at the time of the collision.  It

8   says in the joint pretrial order for these facts no evidence is

9   needed, this is a fact, it's been admitted, no parties are

10  contesting it, so the production of Ronald Brown's cell phone

11  records would just be used to, you know, push that issue again

12  in front of the jury to -- to our prejudice.  I don't see how

13  they're relevant, in light of --

14          **THE COURT:**  I guess --

15          **MS. PARECKI:**  -- our stipulation --

16          **THE COURT:**  Okay.

17          **MS. PARECKI:**  -- that he was on his -- on the phone.

18          **THE COURT:**  Mr. Hunnicutt?

19          **MR. HUNNICUTT:**  Um, I'll withdraw that.  If -- once

20  again, if I feel like something has happened during trial --

21          **THE COURT:**  Right.

22          **MR. HUNNICUTT:**  -- then it will be Number 47 that

23  I'll ask the Court to allow me to use.

24          **THE COURT:**  Okay.  What else?

25          **MS. PARECKI:**  Your Honor, Exhibit 71.  This was a

1    PowerPoint that Mr. Hunnicutt used at one of the witnesses'

2    depositions that had a chart of surgical procedures that had

3    been formed -- performed on his client.  Case law holds that

4    when the underlying records are being admitted, as they will be

5    here -- obviously, medical records are going to be admitted in

6    this case -- that it's improper to submit an exhibit to the

7    jury, you know, that has been compiled by counsel.

8            **THE COURT:**  Well, was it a summary?  Or what --

9    what -- what are we talking about?

10           **MR. HUNNICUTT:**  This was a -- this was a -- a -- it

11   was just -- yeah, it was like a brief summary of the, I believe

12   it was 13 surgeries that Mr. Puga had undergone.

13           **THE COURT:**  Okay.  And it's just a sheet --

14           **MR. HUNNICUTT:**  And --

15           **THE COURT:**  -- a document that you're --

16           **MR. HUNNICUTT:**  -- I just used it for demonstrative

17   purposes --

18           **THE COURT:**  Okay.

19           **MR. HUNNICUTT:**  -- just to walk through the

20   testimony.

21           **THE COURT:**  So, but -- so, it will come in while --

22           **MR. HUNNICUTT:**  I am not going to offer it as

23   evidence.

24           **THE COURT:**  -- during the deposition, but you're not

25   offering it.

1          **MS. PARECKI:**  That's fine.

2          **THE COURT:**  Okay.

3          **MR. HUNNICUTT:**  It's a demonstrative only.

4          **MS. PARECKI:**  That's fine.

5          **THE COURT:**  So, it's withdrawn as an exhibit, right?

6          **MS. PARECKI:**  Right.

7          **MR. HUNNICUTT:**  Right.

8          **THE COURT:**  To go to the jury, so --

9          **MS. PARECKI:**  That's fine.

10          **THE COURT:**  All right.

11          **MS. PARECKI:**  Same thing with Exhibit 74, your Honor.

12   That's a demonstrative.  If Mr. Hunnicutt only meant --

13          **MR. HUNNICUTT:**  Yes, we already --

14          **MS. PARECKI:**  That's fine.

15          **THE COURT:**  Okay.

16          **MR. HUNNICUTT:**  Yeah.  We covered that.

17          **THE COURT:**  So, withdrawn as an exhibit.  All right.

18          **MR. HUNNICUTT:**  Yes.  And, just for the record, it

19   will -- it will be for demonstrative purposes only.

20          **THE COURT:**  Okay.

21          **MS. PARECKI:**  Your Honor, Exhibits 79 and 80, these

22   are expert reports. They're hearsay.

23          **THE COURT:**  Yeah, reports generally don't come in --

24          **MR. HUNNICUTT:**  Yes.  I -- I know.

25          **THE COURT:**  Okay.

1          **MR. HUNNICUTT:**  I usually put them on the exhibit

2    list in case, you know --

3          **THE COURT:**  In case -- sometimes --

4          **MR. HUNNICUTT:**  -- sometimes they come in.

5          **THE COURT:**  Well, because sometimes both sides put

6    them in and they kind of agree and nobody objects to them,

7    so --

8          **MR. HUNNICUTT:**  Right.

9          **THE COURT:**  -- but they -- they shouldn't.

10   Generally, they're not.

11         **MR. HUNNICUTT:**  I -- I agree that they --

12         **THE COURT:**  So --

13         **MR. HUNNICUTT:**  -- that under normal circumstances it

14   wouldn't come in.

15         **THE COURT:**  So, withdrawn, right?

16         **MR. HUNNICUTT:**  They're withdrawn.

17         **THE COURT:**  Okay.  What else?

18         **MS. PARECKI:**  Exhibits 88 and 89, these are evidence

19   of proof of insurance, RCX; they shouldn't come in under Rule

20   411.

21         **MR. HUNNICUTT:**  The -- there is information on these

22   cards that -- I agree that the interjection of insurance would

23   be -- may be inappropriate, but the -- there is information on

24   these cards listing RCX as the carrier or implying that they're

25   the carrier.  If I can figure out a way that this can get

1   redacted and not interject insurance, I'd like to try.

2          **THE COURT:**  Okay.  So, you're going to look at that

3   further?

4          **MS. PARECKI:**  I would just add to that, your Honor,

5   there are other documents that Mr. Hunnicutt can use in this

6   case that name RCX as the motor carrier.  I'm not sure that we

7   need to go so far --

8          **THE COURT:**  So --

9          **MR. HUNNICUTT:**  Well --

10         **MS. PARECKI:**  -- as to admitting insurance documents.

11         **THE COURT:**  Well, they're not going to come in as is,

12  obviously.  If he can come up with -- with some solution, I

13  will hear him out to see if it's appropriate.

14         **MR. HUNNICUTT:**  Okay.  I'll have to approach on 88

15  and 89.

16         **MS. PARECKI:**  Your Honor, Exhibit 91, we objected

17  because it's, again -- again, it's an expert report.

18         **MR. HUNNICUTT:**  Agreed.

19         **THE COURT:**  So, withdrawn on 91?

20         **MR. HUNNICUTT:**  Well, your Honor, the -- let's see.

21  In this life care plan, I agree that the expert report doesn't

22  come in.  There are some tables at the end which actually give

23  just the raw numbers that I would ask that the tables, we would

24  be allowed to mark the tables, so that the jury doesn't have to

25  just try to rely on their memory about the testimony.  The

1 tables just reflect the numbers, the present values.

2          **THE COURT:** The expert created the tables? (indisc.)

3          **MR. HUNNICUTT:** The expert created the tables;

4 they're attached as exhibits, so to speak, to the report.

5          **MS. PARECKI:** Your Honor, that's still hearsay. I

6 mean, plaintiffs' counsel is free to, you know, throw numbers

7 up on --

8          **THE COURT:** If you all don't agree, it's not

9 admissible.

10          **MS. PARECKI:** Thank you.

11          **THE COURT:** Okay. So, sustained on -- was that 91?

12 Sorry. Yes.

13          **MR. HUNNICUTT:** Yes, your Honor.

14          **THE COURT:** Okay. What else?

15          **MS. PARECKI:** Exhibit 93, we don't have an objection

16 as long as it's only being used as a demonstrative and doesn't

17 go back to the jury.

18          **THE COURT:** So, is that agreed to, Mr. Hunnicutt?

19          **MR. HUNNICUTT:** Uh, I'm trying to remember Exhibit 4.

20 I don't remember it being called that.

21          **THE COURT:** That would -- I'm looking at 93. Is that

22 the one you were looking at?

23          **MR. HUNNICUTT:** Yeah.

24          **MS. PARECKI:** That's correct, your Honor.

25          **THE COURT:** Yes.

1          **MR. HUNNICUTT:**  Okay.  I'll use it as a demonstrative

2   only.

3          **THE COURT:**  So, withdrawn as an exhibit, correct?

4          **MR. HUNNICUTT:**  Yes.

5          **THE COURT:**  Okay.  What else?

6          **MS. PARECKI:**  Exhibit 94, I think this has been

7   covered.  A demonstrative?  Just doesn't go back to the jury?

8          **THE COURT:**  Is that agreed, Mr. Hunnicutt?

9          **MR. HUNNICUTT:**  Yes.

10          **THE COURT:**  So, withdrawn as an exhibit.  All right.

11          **MS. PARECKI:**  Exhibit 100 is another expert report,

12   your Honor.

13          **THE COURT:**  Is that agreed?

14          **MR. HUNNICUTT:**  Yes, agreed.

15          **THE COURT:**  That's Number 100.  So, that's withdrawn

16   as an exhibit.  What else?

17          **MS. PARECKI:**  Same thing for Exhibit 107, your Honor.

18          **THE COURT:**  Those are reports?

19          **MR. HUNNICUTT:**  Yes, your Honor.

20          **THE COURT:**  Okay.  So, withdrawn as an exhibit.

21   That's -- what else?

22          **MS. PARECKI:**  Their rebuttal exhibit, 19.

23          **THE COURT:**  So, we stopped at 107, right?

24          **MS. PARECKI:**  That's right, your Honor.

25          **THE COURT:**  Okay.  So, 119?

1          **MS. PARECKI:** And it --

2          **THE COURT:** Did you say 119, rebuttal?  I'm sorry.

3          **MS. PARECKI:** Rebuttal was 19; I'm sorry.

4          **THE COURT:** Nineteen.  I'm not hearing you.  Okay.

5          **MS. PARECKI:** Another report.

6          **MR. HUNNICUTT:** Well, this is Mr. Quintanilla's

7  report, and I -- I -- obviously, certain things have to happen

8  in his testimony, but I may need to use his report to impeach

9  him.  That's why I have it as a possible --

10          **THE COURT:** But it doesn't --

11          **MS. PARECKI:** It doesn't come in as an exhibit.

12          **THE COURT:** -- not as an exhibit to go back to the

13  jury, right?

14          **MR. HUNNICUTT:** Right.

15          **THE COURT:** So, that's withdrawn as an exhibit?

16          **MR. HUNNICUTT:** Yes, your Honor.

17          **THE COURT:** Okay.  What else?

18          **MS. PARECKI:** Rebuttal 21, your Honor, is another

19  report.

20          **MR. HUNNICUTT:** Same thing, your Honor.

21          **THE COURT:** So, agreed?

22          **MR. HUNNICUTT:** We'll withdraw it as an exhibit.

23          **THE COURT:** All right.  What else?

24          **MS. PARECKI:** Rebuttal Exhibits 25 through 30 are

25  deposition transcripts.

1          THE COURT:  Those --

2          MS. PARECKI:  I don't think those come in as

3    exhibits.

4          THE COURT:  Those --

5          MR. HUNNICUTT:  No, I -- I'm sorry; I missed that.

6          THE COURT:  All right.  Withdrawn?

7          MR. HUNNICUTT:  I usually try to take those out when

8    my staff puts them in.

9          THE COURT:  Okay.

10          MS. PARECKI:  Give me just a minute, your Honor.

11          THE COURT:  Okay.

12      **(Pause)**

13          MS. PARECKI:  Okay.  Rebuttal Exhibit 31, a report,

14    your Honor.

15          MR. HUNNICUTT:  Withdraw as an exhibit.

16          THE COURT:  All right.

17          MS. PARECKI:  Same thing for Rebuttal Exhibits 32 to

18    34.

19          MR. HUNNICUTT:  Agreed.

20          MS. PARECKI:  They're also reports.

21          MR. HUNNICUTT:  Agreed.

22          THE COURT:  Thirty-two through 34 you said, correct?

23          MS. PARECKI:  Yes, your Honor.

24          THE COURT:  Okay.

25          MS. PARECKI:  I believe that was it for our -- our

1   objections to their exhibits.

2          **THE COURT:**  Okay.  So, then, we have defendants'

3   exhibits, and there are some -- and I'm looking at Document 169

4   filed on June 30th, 2017, which is RCX's second amended trial

5   exhibit.  That's what I'm working off of, correct?  So, there

6   were some objections by the plaintiff there?

7          **MR. HUNNICUTT:**  Yes, your Honor.  We objected to 1,

8   2, and 3 because these are pleadings.  Pleadings don't get

9   marked as evidence and go back to the jury.  They can be used,

10  just like a deposition transcript, under certain

11  circumstances --

12         **THE COURT:**  I think that's right.  Aren't they just

13  used, like, to -- to just when you're questioning the witness?

14  Or --

15         **MR. HUNNICUTT:**  Right.

16         **THE COURT:**  I don't know that they go back to the

17  jury.  I'm asking the defense here.

18         **MS. PARECKI:**  Yeah; no, I would -- I would argue that

19  they do, your Honor, and there is Fifth Circuit case law on

20  that, which I could --

21         **THE COURT:**  Okay.  If you want to provide that, I'll

22  look at it.

23         **MS. PARECKI:**  Okay.  Right now or later?

24         **THE COURT:**  Uh -- whenever.  If you have it now,

25  we'll take it now.

1          **MR. HUNNICUTT:**  I've -- I've never heard of such case

2    law, so I -- I would like an opportunity to --

3          **MS. PARECKI:**  It's Continental Insurance Company

4    of --

5          **THE COURT:**  I -- I don't recall sending that back to

6    the jury, pleadings, but I don't remember for sure.

7          **MS. PARECKI:**  This is a Fifth Circuit case,

8    *Continental Insurance Company of New York versus Sherman*.  I'll

9    withdraw it.

10          **THE COURT:**  Okay.  So, those will not be used as

11    exhibits to go back, all right, to the jury.

12          **MR. HUNNICUTT:**  One through three.

13          **THE COURT:**  So, that was 1, 2, and 3 withdrawn.  What

14    else?

15          **MR. HUNNICUTT:**  The -- there's interrogatory answers

16    that they want to mark as -- this is similar to the pleadings

17    or deposition transcripts.  The numbers are 4, 5, 41, 42, 43,

18    and 44.

19          **THE COURT:**  I'm sorry; would you start over?

20          **MR. HUNNICUTT:**  Yeah.

21          **THE COURT:**  Four?

22          **MR. HUNNICUTT:**  Four -- 4 and 5 --

23          **THE COURT:**  Okay.

24          **MR. HUNNICUTT:**  -- where they're -- they want to mark

25    an interrogatory.

1           **THE COURT:**  Right.  I got it.

2           **MR. HUNNICUTT:**  And, then, 41 through 44.

3           **THE COURT:**  Okay.  So, you're wanting to send those

4    back, also?  Ms. --

5           **MR. HUNNICUTT:**  And those -- our position on those is

6    they're -- they're treated exactly like deposition transcripts

7    and pleadings, which is, under certain circumstances you -- you

8    can read them to the jury, but --

9           **THE COURT:**  Ms. Parecki, you want to address that?

10          **MR. HUNNICUTT:**  -- but you don't send them back.

11          **MS. PARECKI:**  All right.  Your Honor, we will agree

12    to withdraw if -- if the ruling is that we can read the

13    interrogatory answers.

14          **THE COURT:**  Yeah, you can use it during the trial.

15          **MR. HUNNICUTT:**  The -- well, and, then, there's --

16    there's separate issues.  The -- this point is just that they

17    don't go -- come back into evidence.  And --

18          **THE COURT:**  Right.  That's all I'm doing.  We're just

19    doing exhibits right now, right?

20          **MR. HUNNICUTT:**  Right.  I just don't want to be held

21    to -- she just threw in, "If we can read them."  I'm not giving

22    a blanket, "Yes, you can read them," because --

23          **THE COURT:**  Right; you might object to how they use

24    it with the witness --

25          **MR. HUNNICUTT:**  Well --

1          **THE COURT:**  -- but that's different than it going

2     back, right now, for purposes --

3          **MR. HUNNICUTT:**  -- there are -- there are certain --

4     and to -- to let the Court in on -- on what -- a problem I

5     foresee, there were interrogatories that were sent to Xtra

6     Leasing, which was the company that originally owned the

7     trailer and then leased it to RCX.  That -- that company is no

8     longer a party.  There were some interrogatories that were sent

9     to Xtra Lease, and their answers, there is not a sufficient

10    foundation, so I have legal reasons why --

11         **THE COURT:**  I know, but are they trying to admit

12    those?

13         **MR. HUNNICUTT:**  Well --

14         **THE COURT:**  Didn't they just agree they're not going

15    back?

16         **MR. HUNNICUTT:**  Yes.  They agreed to that, but --

17         **THE COURT:**  Okay.

18         **MR. HUNNICUTT:**  -- but counsel --

19         **THE COURT:**  Oh, do you think they're just going to

20    stand up and read it to the jury?

21         **MR. HUNNICUTT:**  Well --

22         **MS. PARECKI:**  That's right, your Honor.

23         **MR. HUNNICUTT:**  That -- and counsel just said, "As

24    long as we can read them to the jury," and I just want to throw

25    in, no, there may be totally separate objections to just

1   reading it to the jury.

2          **THE COURT:**  So, you're not going to have a witness

3   for it to come in through?  Like, didn't you all say X --

4          **MS. PARECKI:**  Oh, sure.  Sure.  I mean, (indisc.) --

5          **THE COURT:**  You're not just going to stand up there

6   and act like it's a stipulation you're reading to the jury.

7   What are you all doing with that?

8          **MS. PARECKI:**  I wouldn't think so.

9          **MR. MOYE:**  I think, actually, your Honor, if I may

10  interrupt, I think that's how we'd offer a sworn interrogatory

11  response from a former party, is to read the question and read

12  the answer into evidence.  About Tyme has interrogatories,

13  verified in the case, while I was in it, where they admitted

14  that they were sued in the proper capacity as the motor

15  carrier.

16         **THE COURT:**  So, well, I'm just asking, how do you

17  plan to present it, okay?

18         **MR. MOYE:**  I would, in -- in my case in chief,

19  between a witness, stand up and ask permission from the judge

20  to read --

21         **THE COURT:**  Okay.

22         **MR. MOYE:**  -- Interrogatory Number 8 into evidence --

23         **THE COURT:**  And you're saying --

24         **MR. MOYE:**  -- question, answer.

25         **THE COURT:**  -- that's improper, Mr. Hunnicutt?

1          **MR. HUNNICUTT:**  No.  That -- procedure wise, that is

2   proper.  Procedure wise --

3          **THE COURT:**  You're just saying because it's not a

4   party anymore.

5          **MR. HUNNICUTT:**  I -- all I'm pointing out -- and this

6   was just triggered because counsel just said, "As long as we

7   get to read them," just as a blanket statement, and I said,

8   "Now, wait a minute, that's" -- procedurally, yes.  I agree.

9   That -- what Mr. Moye just said is procedurally how you use an

10  interrogatory.  But the case law says that the interrogatory

11  question and the interrogatory answer still have to meet other

12  rule of evidence requirements, and so I -- I'm just -- I'm just

13  pointing out that I am reserving my right to make other

14  objections.

15         **THE COURT:**  Okay.  So, you don't know which ones

16  they're using yet.  So, would it depend on which ones they use

17  you may object?

18         **MR. HUNNICUTT:**  Then I may be objecting.

19         **THE COURT:**  Okay.  All right?

20         **MS. PARECKI:**  Deal with it -- deal with it --

21         **THE COURT:**  We're all clear on that?

22         **MR. HUNNICUTT:**  But I -- we're -- we're all in

23  agreement that they don't go back --

24         **THE COURT:**  They're not going back.

25         **MR. HUNNICUTT:**  -- to the jury room.

1          **THE COURT:** That's what we're doing.

2          **MR. HUNNICUTT:** Okay.

3          **THE COURT:** So, anything else? Any other objections?

4          **MR. HUNNICUTT:** The -- another objection, your Honor,

5    and I'm -- I'm going down our -- our -- from our objections to

6    the pretrial submission.

7          **THE COURT:** Yes.

8          **MR. HUNNICUTT:** Number 15, their exhibit -- our --

9    their Number 15 exhibit, the FMS -- FMC --

10         **THE COURT:** Do you withdraw?

11         **MS. PARECKI:** I can help with that, as long as we may

12   use it demonstratively with our experts, but we're not going to

13   ask that it --

14         **THE COURT:** Okay.

15         **MS. PARECKI:** -- be sent back with the jury.

16         **MR. HUNNICUTT:** And this -- once, again, this is

17   getting into a question of law. We will have to -- we'll have

18   to talk to the Court further about this and the charge and

19   figure out what we do and don't talk to the jury about.

20         **THE COURT:** Okay. So, that's withdrawn as an

21   exhibit, though, by the defense.

22         **MS. PARECKI:** That's correct, your Honor.

23         **THE COURT:** Okay. What else?

24         **MR. HUNNICUTT:** Number 45 is the settlement agreement

25   on About Tyme.

1          **THE COURT:**  Which is a subject to some briefing, so

2     we'll --

3          **MR. HUNNICUTT:**  Which is -- yes.

4          **MS. PARECKI:**  (indisc.)

5          **THE COURT:**  We'll hold that one.

6          **MR. HUNNICUTT:**  That's, uh --

7          **MR. MOYE:**  And, your Honor, it -- I am -- not to step

8     on Ms. Parecki's toes, but to clean the issue up, I have

9     already acknowledged I wasn't trying to admit the settlement

10    agreement.  Would it serve as well --

11         **THE COURT:**  Right.

12         **MR. MOYE:**  -- for me to withdraw that now?

13         **THE COURT:**  Yes, let's withdraw it.

14         **MR. MOYE:**  And then brief those issues --

15         **THE COURT:**  Sure.

16         **MR. MOYE:**  -- relevant to our commentary (indisc.)

17    the record?

18         **THE COURT:**  Sure.

19         **MR. MOYE:**  Thank you, Judge.

20         **THE COURT:**  So, he's withdrawing 45.

21         Okay.  Anything else on exhibits?

22         **MR. HUNNICUTT:**  Um --

23         **THE COURT:**  Because I'm getting ready to go to

24    witnesses.

25         **MR. HUNNICUTT:**  Not other than we'll have to go

1    through redacting.

2              **THE COURT:**  Right.  But that's --

3              **MR. HUNNICUTT:**  But no -- no other --

4              **THE COURT:**  You all --

5              **MS. PARECKI:**  Nothing else on our end on that, your

6    Honor.

7              **THE COURT:**  Okay.  So, then, we have Plaintiffs'

8    witnesses designated on June 23rd, and there are some

9    objections to the witness list by the defense.  Do you all want

10   to address those?  Although I have some old objections, because

11   I struck yours.  So, what's the issue here?

12             **MS. PARECKI:**  I think we objected to, um -- I think

13   we objected to causation opinions from Trooper Smith.  That's

14   already been dealt with today, so we would withdraw our

15   objection to that.

16             **THE COURT:**  Right.  But any --

17             **MS. PARECKI:**  And, then, there was an objection to

18   any opinions from Roger Allen, their liability expert, that

19   have already been stricken by the Court in its prior Daubert

20   ruling.

21             **THE COURT:**  Okay.  So, you're just saying follow the

22   orders.

23             **MS. PARECKI:**  Correct.  Correct, your Honor.

24             **THE COURT:**  Follow case law and follow the orders of

25   the Court.  So, nothing else on the witnesses, right?

1          **MR. HUNNICUTT:**  No, your Honor.

2          **MS. PARECKI:**  No -- no other objections from RCX as

3     to their --

4          **THE COURT:**  All right.  And, so, then we have

5     defendants' witness list, and there were some objections from

6     plaintiff there.

7          **MR. HUNNICUTT:**  The --

8          **THE COURT:**  Regarding corporate reps or something.

9          **MR. HUNNICUTT:**  Yes, your Honor.  Their -- they list

10    as one of their witnesses a corporate rep.  Just "corporate

11    rep."

12         **THE COURT:**  No name?

13         **MR. HUNNICUTT:**  No name.

14         **THE COURT:**  What are you all doing with that?

15         **MS. PARECKI:**  Your Honor, About Tyme's rep would be

16    Robert Thomas, who has already appeared and been deposed in

17    this case, and Randy Clifton would be RCX's witness, who has

18    appeared and been deposed in this case.

19         **THE COURT:**  So, you've listed them, right?

20         **MS. PARECKI:**  I mean --

21         **MR. HUNNICUTT:**  Yeah, they're named.  But --

22         **THE COURT:**  Yes.

23         **MS. PARECKI:**  Yes.  They're named.  So --

24         **MR. HUNNICUTT:**  My problem is they list separately --

25         **THE COURT:**  Right.

1          **MR. HUNNICUTT:**  -- a corporate -- a corporate rep.

2          **THE COURT:**  But it doesn't sound like it's anybody.

3          **MR. MOYE:**  Your Honor, we'll acknowledge that Randy

4    Clifton will be RCX Solutions' corporate rep, who was deposed

5    in the case, is president of the company, very thoroughly

6    (indisc.).

7          **THE COURT:**  That's not an extra third person --

8          **MR. MOYE:**  Yeah.  No.

9          **THE COURT:**  -- basically; he just wants to be sure.

10         **MR. HUNNICUTT:**  The -- yeah.  I --

11         **MR. MOYE:**  There will -- nobody that has not already

12   been deposed.

13         **THE COURT:**  That's right.

14         **MR. HUNNICUTT:**  Okay.  Because, then, specifically,

15   they have a corporate rep for About Tyme, a corporate rep for

16   RCX Solutions, and a corporate rep for Xtra Lease.  Those are

17   all separate things, and I just want to make sure the Court's

18   not going to let him call some unnamed, undesignated corporate

19   rep.

20         **THE COURT:**  Not based on the representations just

21   made now.

22         **MR. HUNNICUTT:**  Okay.

23         **THE COURT:**  Okay?

24         **MR. HUNNICUTT:**  That -- that was it for the

25   witnesses.

1     **THE COURT:**  Okay.  So, we're done with the witnesses.

2   We -- we -- I guess we need to go through the depositions.  We

3   can do that shortly.  Some of the rulings today may affect some

4   of the depositions.  What I may do is, while I'm doing the

5   swearing in, maybe you all can visit further on objections to

6   deposition testimony.

7     So, you all said about a full week to try.  I

8   typically seat eight jurors on a civil case, and then the

9   alternates are all jurors, and it's a unanimous, in federal

10  court, unanimous verdict on a civil case.  I do, I've already

11  told you, very little voir dire.  I let you all do that.  So,

12  about how much time might you all need for the voir dire

13  process?

14    **MR. HUNNICUTT:**  My goal is to always do it within 30

15  minutes.  The problem, as I'm sure the Court is aware, is

16  sometimes the panel accommodates me; sometimes they get really

17  talkative, and 30 minutes --

18    **THE COURT:**  So, 30 to 45 minutes?

19    **MR. HUNNICUTT:**  Thirty to 45.

20    **THE COURT:**  The defense?

21    **MR. MOYE:**  How big is the venire?

22    **THE COURT:**  How big -- um --

23    **MR. MOYE:**  Is it 24 or --

24    **THE COURT:**  How many do we have?

25    **THE CLERK:**  Twenty to 25, your Honor.

1          **THE COURT:**  Twenty --

2          **MS. SPEAKER:**  Twenty-five.

3          **THE COURT:**  Twenty-five?  About 25?

4          **MR. MOYE:**  I think 45 minutes a side would be fair,

5     Judge.

6          **THE COURT:**  Okay.  And what about opening statements?

7     I'm just trying to plan for how we're going to proceed.

8          **MR. HUNNICUTT:**  I'd like 15 minutes.

9          **THE COURT:**  Okay.  Fifteen to 20 minutes would be

10     fine.

11          **MR. MOYE:**  Twenty.

12          **THE COURT:**  Twenty?  Okay.  So, 20 each.

13          So, I think we need to address depositions, only if

14     you all -- because if you all are going to start editing those

15     and getting those ready, you probably need the Court's rulings,

16     right?  It will be tedious and time consuming, but we -- I

17     think it will make it easier for everyone.

18          **MR. HUNNICUTT:**  Yes, your Honor.

19          **MR. MOYE:**  Well, as you -- and I think that we, both

20     sides, had some clarification issues, that there were some

21     objections made to witnesses that we know we're going to call

22     live.  We're not hearing those.

23          **THE COURT:**  Right.  No.  No, no, no.

24          **MR. MOYE:**  This is only video cut objections --

25          **THE COURT:**  Right.

1          **MR. MOYE:**  -- reserved for relevance, other basis.

2          **THE COURT:**  So that you know what you need to cut and

3    edit and present and we're not wasting the jury's time.

4          **MR. MOYE:**  Thank you, your Honor.

5          **THE COURT:**  All right.  So, what I was going to do,

6    then, is just kind of go down; we could start with the

7    defendants' objections and just go down as they lay them out.

8    We'll start with Clifton.  I have defendants' amended

9    objections at DE-161 filed June 28th.

10          **MS. PARECKI:**  Correct, your Honor.

11          **THE COURT:**  That's what I was going to start going

12    through, and just kind of in that order; Clifton, Butler,

13    et cetera, et cetera.

14          But what I might do right now is go ahead and take a

15    little break.  I think -- Brandy, are we doing that at 11:45?

16          **THE CLERK:**  Yeah, if she's here.

17          **THE COURT:**  Okay.  So, maybe as soon as we can get

18    that done.  So, let's take about a 10, 15-minute break, and if

19    you all want to discuss the deposition matters further to

20    streamline it with the Court, it would be helpful.

21          **THE CLERK:**  Your Honor, they can go in the jury room?

22          **THE COURT:**  Yes.  You all can go in the jury room.

23          **MR. MOYE:**  Okay.  Great.

24          **THE COURT:**  And if not, we'll just go down the --

25    those lists.

1        **(Recess was taken from 11:37 a.m. until 12:10 p.m.)**

2                **THE COURT:**  Okay.  So, shall we start going down the

3    depos?

4                **MR. HUNNICUTT:**  Your Honor, we -- in about 20 minutes

5    we went through several depositions.

6                **THE COURT:**  Okay.

7                **MR. HUNNICUTT:**  We've worked out a lot of agreements.

8                **THE COURT:**  Okay.

9                **MR. HUNNICUTT:**  We have a few things on each one that

10   we have to have the Court's ruling on.

11               **THE COURT:**  Okay.

12               **MR. HUNNICUTT:**  We have I think three witnesses left.

13               **MS. PARECKI:**  Two or three.  Yeah, two and a half.

14               **MR. HUNNICUTT:**  Two or three that we haven't talked

15   about yet.

16               **THE COURT:**  Two or three.  Okay.  Well, let's get --

17   see what we can do through these and then maybe if there's just

18   two or three left, you-all can talk about them, and if there's

19   any issues, I can address them on Thursday.

20               **MS. PARECKI:**  All right, your Honor.

21               **THE COURT:**  When we visit.

22               **MR. HUNNICUTT:**  With the Court's permission, can I

23   just argue this from --

24               **THE COURT:**  That's fine.

25               **MR. HUNNICUTT:**  -- because I'm juggling --

1          **THE COURT:**  Yes.

2          **MR. HUNNICUTT:**  -- three binders at once.

3          **THE COURT:**  Yeah, yeah, yeah.  Okay.

4          **MS. PARECKI:**  Can I do the same, your Honor?

5          **THE COURT:**  Right.  And it would be a little bit

6    easier for me, although we -- if there's some -- if it's easier

7    for you-all, we can do it different.  If you just go down --

8          **MS. PARECKI:**  Right.

9          **THE COURT:**  -- the way the Defendant's amended

10   objections are, the witnesses like that; just because it will

11   be easier for me to flip through that.

12         **MS. PARECKI:**  Sure; absolutely.  Will you hear me

13   from this spot?

14         **THE COURT:**  Yes.

15         **MS. PARECKI:**  All right.  All right.  So, starting

16   with --

17         **THE COURT:**  Clifton then.

18         **MS. PARECKI:**  Clifton, Page 17, your Honor, Line 15,

19   through Page 19, Line 5.

20         **THE COURT:**  Seventeen, Line 15?

21         **MS. PARECKI:**  Through 19, Line 5.

22         **THE COURT:**  Okay.

23         **MS. PARECKI:**  And these are questions about who's a

24   statutory employee.

25         **THE COURT:**  You might have to speak up for Genay,

1    right, Genay?  Are you having trouble?

2              **THE COURT RECORDER:**  Just a little bit.

3              **THE COURT:**  Just speak up a little bit.

4         **MS. PARECKI:**  Does it help if I talk into this?

5              **THE COURT RECORDER:**  It's -- if you're able to move

6    it a little closer to you.

7         **MS. PARECKI:**  Is this better?

8              **THE COURT RECORDER:**  That's okay.  Thank you.

9              **THE COURT:**  Okay.

10        **MS. PARECKI:**  All right, your Honor.  These are

11   questions of a lay witness about what is a statutory employee,

12   improper questioning, legal issues of a fact witness.

13             **THE COURT:**  Okay.  Mr. Hunnicutt.

14        **MR. HUNNICUTT:**  Your Honor, I think it's important

15   that the jury understands that this company, I asked three

16   different people that should have known about the whole

17   doctrine of statutory employee.  They're -- they are operating

18   as a motor carrier.  That's -- I asked the safety director.

19   Here I'm asking the president if -- if he knows what a

20   statutory employee is and therefore, that, you know, he's going

21   to be responsible, and he says, "no."

22             **THE COURT:**  Overruled.  The Court will allow it.

23   Because we're not getting into the details of what a statutory

24   employer is.  It's just, when I looked at this yesterday, it

25   was kind of you're asking just do you know what it is, more,

1  that's the way I take it.

2          **MR. HUNNICUTT:** Right.

3          **THE COURT:** Okay. What else?

4          **MS. PARECKI:** Your Honor, Page 20, Lines 12, through

5  Page 21, Line 16.

6          **THE COURT:** Okay.

7          **MR. HUNNICUTT:** I'm asking him here his understanding

8  of the -- of the legal agreements. I make it clear that I

9  understand he's not a lawyer, but just as a businessman, what's

10 your understanding of what the agreement is.

11         **THE COURT:** Okay. And the objection.

12         **MR. HUNNICUTT:** I'm paraphrasing.

13         **MS. PARECKI:** I, you know, we're not -- he says we're

14 not binding you to law opinion, but I want your businessman's

15 explanation of the relationship. I -- I don't think it's

16 proper questioning, your Honor.

17         **THE COURT:** Okay. Just make sure we can hear you.

18 Because when Genay goes like this, she probably can't hear, is

19 having trouble hearing you.

20         **THE COURT RECORDER:** Yes, ma'am.

21         **THE COURT:** Just speak into the -- the Court's going

22 to overrule that objection.

23         **MS. PARECKI:** All right.

24         **THE COURT:** Okay. What else?

25         **MR. HUNNICUTT:** The next one was Page 30, Line 11.

1          **THE COURT:**  Page 30, Line 11.  Okay.  What's the

2   objection?  I mean, I know what it is, but if -- because I went

3   through this yesterday, but if you want to say a couple of

4   things --

5          **MS. PARECKI:**  And I do --

6          **THE COURT:**  -- it makes it easier and faster to go

7   through.

8          **MS. PARECKI:**  And I do particularly on this one, your

9   Honor, because these all go to what would be independent

10  negligence claims against RCX; you know, whether they vet their

11  drivers, whether they make sure they're hiring safe drivers.

12  And you granted our motion for summary judgment as to

13  independent negligence claims.  And the only issue is statutory

14  employer, so this whole issue about safety and not wanting to

15  have unsafe drivers, that's not relevant.

16         **MR. HUNNICUTT:**  Your Honor, I think it is relevant

17  because they -- they made no effort to comply with their

18  requirements as a -- as a statutory employer.  And there's --

19  and yet they know that it would be -- there are valid safety

20  reasons why they should be compliant.

21         **MS. PARECKI:**  But that's not how the questioning

22  goes, your Honor.  The questioning is, you don't want an unsafe

23  company or an unsafe driver.  I mean, clearly the implication

24  is that Ronald Brown was unsafe, and we didn't vet him, but

25  that's -- that would be independent negligence.  The

1   Defendants --

2           **THE COURT:** I -- the Court's going to overrule that

3   objection.

4           And just, if you can speak into the mike so -- so the

5   recording can pick you up a little better.

6           All right. What else on Clifton?

7           **MR. HUNNICUTT:** Go to Page 50, Line 15.

8           **THE COURT:** Fifty.

9           **MS. PARECKI:** And your Honor, do you want us to let

10  you know the ones that we've withdrawn? Some of them we've

11  withdrawn.

12          **THE COURT:** No. I just need to know the -- whatever

13  I still need to address. I'm assuming anything else will have

14  been agreed to.

15          So, we're at Page 50, Line 15. I think the objection

16  was hearsay.

17          **MS. PARECKI:** Yes, your Honor.

18          **THE COURT:** Mr. Hunnicutt.

19          **MR. HUNNICUTT:** Your Honor, I think it -- we're not

20  offering it for the proof of the matter asserted because that

21  is -- that's admitted, and everybody admits it. So,

22  definitionally it's not hearsay. It's also -- well, it's

23  definitionally not hearsay. The --

24          **MS. PARECKI:** If it's not being offered for the

25  matter asserted, what's it being offered for?

1          **THE COURT:**  Yeah, what is it for?

2          **MR. HUNNICUTT:**  Well, it -- it is admitted that he --

3    that he's on a cell phone and that the incident happened.  It

4    completes the picture for the jury that he gets a call, and how

5    he found out about it.

6          **THE COURT:**  But he could probably say that without

7    getting into a lot of -- let's see.

8          **MR. HUNNICUTT:**  Well --

9          **MS. PARECKI:**  You know, we've stipulated that he was

10   on a cell phone, and Mr. Hunnicutt is saying he's not offering

11   it for the truth of the matter asserted, but that is what it's

12   being offered for, and it's unnecessary because we all agree he

13   was on a cell phone.  It's hearsay.

14         **MR. HUNNICUTT:**  There's -- there's another portion

15   where Thurrel -- where he talks about Thurrel Harris says that

16   Ronald Brown says, with a number of exclamation points, you

17   know, expletives, and then he doesn't hear anything more, and

18   then he finds out that he had been in a crash when he gets a

19   call from the --

20         **THE COURT:**  Yeah.  I'm going to sustain the objection

21   there.

22         **MR. HUNNICUTT:**  Okay.

23         **THE COURT:**  Okay.  What's next?

24         **MS. PARECKI:**  I think that was it, your Honor, for

25   Clifton.

1          **THE COURT:**  Okay.

2          **MS. PARECKI:**  So, that would take us to Butler.

3          **THE COURT:**  All right.  And where -- what page?

4          **MS. PARECKI:**  Page 19, your Honor.

5          **THE COURT:**  Okay.  Can you speak up just a bit?  With

6   all the rustling of the papers and movement, I think we're

7   having trouble picking you up.

8          **MS. PARECKI:**  Sure.  Page 19, your Honor, Line 21.

9          **THE COURT:**  Okay.

10          **MS. PARECKI:**  Through 21, Line 5.

11          **THE COURT:**  All right.

12          **MS. PARECKI:**  This again, kind of similar to the one

13   we talked about earlier, this is questioning about statutory

14   employee under the DOT regs and responsibilities --

15          **THE COURT:**  Yeah.  Well, and he doesn't even answer

16   the question anyway.  So, sustained.  I mean, he just says, "I

17   didn't understand the question."  Right?

18          **MS. PARECKI:**  So, it's sustained?

19          **THE COURT:**  Sustained.  Well, I'm looking at Page 19,

20   Line 21, through Page 20, Line 4, is what I just sustained.

21   Right?

22          **MR. HUNNICUTT:**  Okay.

23          **THE COURT:**  I don't know where you-all are next.  I

24   know there's some more objections that are --

25          **MR. HUNNICUTT:**  We'll take Line 19 -- or Page 19,

1    Line 21, through Page 20, Line 4, we'll take out.

2              THE COURT:  Right.

3              MR. HUNNICUTT:  The -- they're objecting --

4              MS. PARECKI:  Through Page 21, Line 5.  We had

5    objected continuing through from --

6              MR. HUNNICUTT:  And this would be similar to the --

7    to the prior testimony that the --

8              THE COURT:  So, Page 20, Line 5, through Page 21,

9    Line 5?

10             MS. PARECKI:  Yes, your Honor.

11             THE COURT:  Okay.

12             MS. PARECKI:  For the same reason.

13             THE COURT:  And overruled.  That was -- that kind of

14   goes along with the other ruling I have initially on Clifton.

15             So, what else?

16             MS. PARECKI:  Your Honor, Page 29, Line 24, through

17   30, Line 1.

18             THE COURT:  Okay.

19             MS. PARECKI:  And our objection there is that

20   Plaintiff's counsel left out our witness's answer or skips over

21   it.  So, for completeness, we would ask that --

22             THE COURT:  Oh yeah, you've got to have the answer in

23   there.

24             MR. HUNNICUTT:  Then I'll withdraw the question.

25             THE COURT:  Okay.

1        **MR. HUNNICUTT:** Because he didn't answer the

2   question. He didn't.

3            **THE COURT:** So, you're withdrawing that?

4        **MR. HUNNICUTT:** I'll withdraw, let's see, what is

5   that? Twenty-nine, Line 24, through 30, Line 1.

6            **THE COURT:** Okay.

7        **MR. HUNNICUTT:** We'll withdraw.

8            **THE COURT:** What else?

9        **MS. PARECKI:** And --

10           **THE COURT:** Go ahead.

11       **MS. PARECKI:** It's the same issue, your Honor, for

12  the next one which is Page 30, Line 18, through Page 31, 20.

13  Left out the -- skipped over our witness's answer.

14           **THE COURT:** Yeah. If you have a question, you need

15  an answer.

16       **MR. HUNNICUTT:** Oh, your Honor, I'm sorry. Can we go

17  back to the prior -- Mr. Hoyt (ph.s.) just pointed out to me

18  the -- the subsequent -- the subsequent testimony won't make

19  sense unless we keep Page 29, Line 24 to 25, just as an

20  introduction to what the document is. Elsewise they won't know

21  what document we're talking about.

22           **THE COURT:** No. If you want to keep that in there,

23  you need to keep the answer. Right? Because there was an

24  answer. Is that wrong? That's about About Tyme Transport is a

25  carrier on the document?

1          **MR. HUNNICUTT:** No, it's not. I mean, he --

2          **THE COURT:** Okay. So, was --

3          **MR. HUNNICUTT:** -- just says that. And then I object

4    nonresponsive to the answer.

5          **THE COURT:** Who is listed -- I see a question here,

6    who is listed as a carrier on this document? That was in the

7    question and --

8          **MR. HUNNICUTT:** Right.

9          **THE COURT:** -- then he answers "About Tyme

10   Transport".

11         **MR. HUNNICUTT:** Yes. I'm going to take out that

12   question and his nonresponsive answer which is "About Tyme

13   Transport".

14         **THE COURT:** Oh, I see what you're saying; you just

15   want to leave 24 and 25 in.

16         **MR. HUNNICUTT:** Right.

17         **THE COURT:** Okay. Not --

18         **MR. HUNNICUTT:** So, that's -- it just introduces the

19   topic.

20         **THE COURT:** But then it goes to where?

21         **MR. HUNNICUTT:** Then -- then we go down to 30, Line

22   6, "Let's read the first line".

23         **THE COURT:** Oh, is there a problem with that?

24   They're going to be talking about --

25         **MS. PARECKI:** It's not that big of a deal. I just do

1  think it misrepresents, you know, our witness did say, "About

2  Tyme" because I'm trying to establish that.

3          **MR. HUNNICUTT:** But --

4          **THE COURT:** Well, but that -- if you want to put that

5  in, I mean, you-all can discuss that. He's asking 24 and 25 to

6  stay in, and then it really goes with Line 6. So, I will allow

7  that.

8          **MR. HUNNICUTT:** Okay. Thank you, your Honor.

9          **THE COURT:** Twenty-four and 25 to remain in. Okay.

10  What else? What else?

11          **MS. PARECKI:** I'm sorry, your Honor, just a minute.

12  Page 37, Line 9, through 37, Line 15.

13          **THE COURT:** Thirty-seven, 9 through 15?

14          **MS. PARECKI:** Yes, your Honor. Lack of foundation.

15          **THE COURT:** Overruled. Okay. What else?

16          **MR. HUNNICUTT:** The next was 39, Line 17.

17          **THE COURT:** Thirty-nine?

18          **MR. HUNNICUTT:** Yes.

19          **THE COURT:** Seventeen.

20          **MR. HUNNICUTT:** Page 39, Line 17.

21          **MS. PARECKI:** Through 40, 12.

22          **THE COURT:** So, the objection is hearsay. It's that

23  same issue, right?

24          **MS. PARECKI:** Yes, your Honor.

25          **THE COURT:** Sustained. Okay. What else?

1          **MR. HUNNICUTT:**  That's it for Butler.

2          **THE COURT:**  So, we go to Peterson?

3          **MS. PARECKI:**  That's right, your Honor.

4          **THE COURT:**  All right.

5          **MS. PARECKI:**  The only one at issue is Page 79, Line

6     13.

7          **THE COURT:**  Page 79; hold on.  Line 13.  Let me get

8     there.

9          **MS. PARECKI:**  Through Page 80, Line 19.  So, he's

10    leading -- there's counsel testimony about burn injuries being

11    the most painful, and also, I don't think that's --

12         **THE COURT:**  So, the first part is certainly leading.

13    So, sustained.  And then we go to 22, Line 22.  And what's the

14    objection to the rest of that?

15         **MS. PARECKI:**  Well, it's built off the leading

16    question.  I mean, the witness --

17         **THE COURT:**  Okay.  But he -- he -- overruled to the

18    second part starting at Line 22.  So, sustained regarding --

19    we're on Page 79, Lines 13 through 21 sustained; the remainder

20    overruled.

21         All right.  Next?

22         **MS. PARECKI:**  That was all we had for Peterson.

23         **THE COURT:**  Okay.  Great.  On Salazar.

24         **MS. PARECKI:**  Page 116, Line 21.

25         **THE COURT:**  Okay, 116.

1          **MS. PARECKI:**  Through 117, Line 12.  Leading and

2     asking the witness to speculate, your Honor.

3          **MR. HUNNICUTT:**  I withdrew Page 116, I withdrew Line

4     25, through Page 117, Line 12.  So, the only thing -- so, I've

5     withdrawn most of what she just referenced --

6          **THE COURT:**  Okay.

7          **MR. HUNNICUTT:**  -- except I would like to keep Page

8     116, Line 21 through 24.

9          **THE COURT:**  Overruled regarding Lines 21 through 24.

10    Okay.

11         **MR. HUNNICUTT:**  Then her next objection is on Page

12    117, Line 13 through 22.

13         **MS. PARECKI:**  For the same reasons, your Honor.

14    Leading and asking the witness to speculate.

15         **MR. HUNNICUTT:**  I don't think that's a leading

16    question, and this is her field, she's not speculating.

17         **MS. PARECKI:**  She says "offhand."  She already has

18    testified she doesn't really know what he's asking her to opine

19    on.

20         **MR. HUNNICUTT:**  No, that's not true.  She testified

21    early on -- earlier in the deposition that -- that she is

22    familiar with U.S. Department of Labor standards and

23    definitions.

24         **THE COURT:**  Yeah, overruled.  What else?

25         **MR. HUNNICUTT:**  The -- so, that's it for Salazar.

1  The next one would be --

2          **THE COURT:** Thomas.

3          **MR. HUNNICUTT:** Mr. Thomas.

4          **MS. PARECKI:** Beginning at Page 56, Line 12 through

5  Line 13.

6          **THE COURT:** Fifty-six, Line 12. And I'm speaking it.

7  I've got it highlighted, but the record doesn't, so that's why

8  I'm trying to make sure we're loud enough for the record to

9  pick it up. We're at Page 56, Line what?

10         **MS. PARECKI:** Line 12 through 15. It's irrelevant,

11  it is unfairly prejudicial; no evidence in this case that cell

12  phone use caused the accident. Trooper Smith didn't cite

13  distracted driving or cell phone use in his crash report.

14         **THE COURT:** Okay. Mr. Hunnicutt.

15         **MR. HUNNICUTT:** I don't think the trooper has to cite

16  him for -- for being a distracted driver or cell phone use.

17  He's on the cell phone. There is no explanation for why he --

18  he goes out of his lane and crosses --

19         **THE COURT:** Yeah. Overruled. Next.

20         **MS. PARECKI:** Is your ruling the same, your Honor,

21  for the related questions on 56, Line 23, through 57, Line 5?

22         **THE COURT:** Let me see. Yes, overruled. Okay.

23         **MS. PARECKI:** All right. Page 56, Line 23.

24         **MR. HUNNICUTT:** No, we just covered that.

25         **THE COURT:** Fifty-six.

1          **MS. PARECKI:** Oh, I'm sorry.

2          **THE COURT:** Yeah.

3          **MR. HUNNICUTT:** Fifty-nine, Line 7.

4          **MS. PARECKI:** Mr. Hunnicutt withdrew Page 60, Line

5     15, to Page 61, Line 14.

6          **THE COURT:** I don't -- I have no idea where you-all

7     are because I can barely hear you and the record is certainly

8     not picking you up. So...

9          **MS. PARECKI:** I'm going to come to the lectern.

10          **THE COURT:** Okay. That would probably be better.

11          **MR. HUNNICUTT:** Her next objection starts at Page 59,

12     Line 7, and goes to Page 61, Line 25. I have withdrawn

13     voluntarily Page 60, Line 15, through 61, 14. So, what we need

14     the Court's ruling on is 59, Line 7, through 60, Line 14.

15          **MS. PARECKI:** And your Honor, on Page 59, Line 7,

16     it's talking about the cell phone bills which we covered in the

17     exhibits, but they're not relevant because we've all stipulated

18     that he was on the cell phone. Also, it's hearsay.

19          **THE COURT:** Well, a portion of it is hearsay --

20          **MS. PARECKI:** Right.

21          **THE COURT:** -- for sure. I think when you get down

22     maybe to, was that Line 23?

23          **MS. PARECKI:** Right, your Honor; up until Page 60,

24     Line 16.

25          **THE COURT:** Okay. So, sustained as to hearsay

1  starting Page 59, Line 23, through Line 14 on Page 60.

2          And I overrule the objection on Page 59, Lines 7

3  through 22.  Okay.  Is that clear?

4          **MS. PARECKI:**  Clear, your Honor.

5          **MR. HUNNICUTT:**  Yes, your Honor.

6          **THE COURT:**  Okay.

7          **MS. PARECKI:**  Page 84, Line 7 through 19.

8          **THE COURT:**  Eighty-four.

9          **MS. PARECKI:**  Based on your prior rulings, I'll

10  withdraw.

11          **THE COURT:**  Okay.  What else?

12          **MS. PARECKI:**  That's all we have for Thomas.

13          **THE COURT:**  Okay.  And we're moving to Crump.

14          **MR. HUNNICUTT:**  Oh, your Honor, we had one on Thomas.

15          **THE COURT:**  Okay.

16          **MR. HUNNICUTT:**  That was Page 83, Line 16 through 19.

17          **THE COURT:**  Eighty-three, Line 16 through 19.

18          **MR. HUNNICUTT:**  Calls for a legal conclusion.

19          **THE COURT:**  Ms. Parecki.

20          **MS. PARECKI:**  Your Honor, there is an interrogatory

21  answer from About Tyme where they -- wherein they admit that

22  they were sued in the right capacity as the motor carrier,

23  so...

24          **MR. HUNNICUTT:**  They're -- it just said that they'd

25  been sued in the correct capacity.  This is in -- this question

1  is different.  This says Mr. Brown was not driving under RCX's

2  DOT authority.  If he's a statutory employee then he actually

3  is.

4          **MR. MOYE:**  Judge, this is --

5          **MR. HUNNICUTT:**  But this is a legal question.

6          **MR. MOYE:**  -- if I may.  That's -- that's fundamental

7  to the case, when About Tyme admits that this driver is driving

8  under their DOT authority.  And if they put on evidence he

9  wasn't, that's fine, but he can't be deprived of --

10         **THE COURT:**  Right.  I mean, it's going to be -- it's

11  going to go both ways.

12         **MR. MOYE:**  Yeah.

13         **THE COURT:**  You-all are going to have evidence one

14  way, they're going to do the other, so overruled.  So, what

15  else?

16         **MR. HUNNICUTT:**  That's it for Thomas, your Honor.

17         **THE COURT:**  Okay.  Then we're moving to Crump.

18         **MS. PARECKI:**  Page 16, Line 10 through 18.

19         **THE COURT:**  Lines?

20         **MS. PARECKI:**  Ten through 18.

21         **THE COURT:**  Okay.  And tell me who Crump is again.

22  Okay.  That's overruled there on Page 16.

23         Who is Crump?  Some of the witnesses I can fit in,

24  but I'm just trying to get a perspective on the depo.

25         **MR. MOYE:**  Mr. Crump is a employee of RCX.

1          **THE COURT:**  Okay.

2          **MR. HUNNICUTT:**  He was the safety director.

3          **THE COURT:**  Okay.  So, next.

4          **MS. PARECKI:**  Eighteen, 16 to 19.

5          **THE COURT:**  Overruled.  Next.

6          **MS. PARECKI:**  Page 27, Lines 4 through 14.

7          **THE COURT:**  Four through 14.

8          **MS. PARECKI:**  And your Honor, the reason for the

9    objection there is that the rule that's being referenced

10   actually says "road test or equivalent", and so it's

11   misstating.

12         **THE COURT:**  Has what?  Says what?

13         **MS. PARECKI:**  I'm sorry.  It says, "road test or

14   equivalent", so the questioning is leaving out part of what the

15   rule actually says so, it's misleading.

16         **MR. HUNNICUTT:**  I'll -- I'll withdraw that.  We've --

17         **THE COURT:**  Okay.

18         **MR. HUNNICUTT:**  -- we've gotten to the part where we

19   had -- where we had stopped conferring.

20      **(Laughter)**

21         **THE COURT:**  Oh, okay.  No more -- you-all haven't

22   conferred any more further than this?

23         **MR. HUNNICUTT:**  No.

24         **MS. PARECKI:**  That's right.

25         **MR. HUNNICUTT:**  We've gotten to the point we were at.

1       **THE COURT:**  Well, I'd rather you-all do that, and

2    you-all can do it now and then I can come back on the bench, or

3    you-all can do it and we can finish it out Thursday morning at

4    our phone conference.  I'll leave that up to you-all.

5       **MR. HUNNICUTT:**  I think that there's only a few

6    witnesses and so, maybe it would be best to do it Thursday

7    morning.  The way the Court's ruling, it's --

8       **THE COURT:**  Okay.

9       **MR. HUNNICUTT:**  -- really nice.  There's, you know --

10       **THE COURT:**  Okay.

11       **MR. HUNNICUTT:**  -- you've already had your mind made

12    up.  We can just --

13       **THE COURT:**  Okay.

14       **MR. HUNNICUTT:**  -- we can resubmit jointly what we

15    need rulings on, and if you have any questions of us about what

16    our actual foundation was, then you can just rule or --

17       **THE COURT:**  Ask on Thursday.

18       **MR. MOYE:**  It's the most Mr. Hunnicutt and I have

19    ever agreed, Judge.

20       **THE COURT:**  Because you-all want to get out of here

21    because it's Friday.

22    **(Laughter)**

23       **MR. MOYE:**  That's exactly right.

24       **THE COURT:**  And I do, too.

25       **MR. HUNNICUTT:**  I'm hungry.

1          **THE COURT:**  Okay.  Now, I know.  So, let me have

2     that.  So, this is what we have.

3          So, we're recessing.  Tuesday, you-all are going to

4     file -- you-all are going to confer further regarding the

5     charge to be submitted to the jury.  You-all are going to file

6     either something agreed to on the charge or your different

7     versions of what you've already submitted by Tuesday at 5:00 as

8     well as briefing on the settlement with About Tyme.  You-all

9     are going to -- whether that comes in regarding the expert that

10    the Defense is wanting to use that with.  So, you-all are going

11    to do briefing on that Tuesday at 5:00 also, limited to 10

12    pages.

13         There are some motions in limine left hanging;

14    probably some that may deal with the settlement.  It was -- I

15    have 27, 28, and 33, which was probably the Plaintiff.

16         **MR. MOYE:**  There are some relevant to the settlement

17    and some relevant to the charge --

18         **THE COURT:**  Yes.

19         **MR. MOYE:**  -- so they should both be accommodated

20    after Tuesday.

21         **THE COURT:**  And then we're also going to discuss on

22    Thursday when we reconvene what we're doing with the expert

23    testimony questions of law.  You-all are going to visit further

24    on that.

25         **MR. HUNNICUTT:**  Right.

1       **THE COURT:**  That's going to be a little bit

2  difficult, but it may be you-all can kind of flesh that out.

3  We don't need to address that.  And then we're going to address

4  the remaining depos that you-all haven't conferred on, correct?

5       **MR. HUNNICUTT:**  Yes, your Honor.

6       **THE COURT:**  Did I miss something?

7       **MR. MOYE:**  Your Honor, originally you were out on

8  Friday?  I don't know.  Can I visit with Ms. Cortez about maybe

9  having some access to the courtroom Friday to test some of the

10  issues?

11       **THE COURT:**  Yeah; no, I'll be -- I'll be here on

12  Friday.  I just can't -- I don't have time for you-all on

13  Friday.

14       **MR. MOYE:**  Okay.

15       **THE COURT:**  But you-all can -- yeah, just talk to

16  Brandy any time you-all want to come in.

17       **MR. MOYE:**  Thank you.

18       **THE CLERK:**  Your Honor.

19       **MR. HUNNICUTT:**  Your Honor, if I can ask a couple of

20  other logistics questions.

21       **THE COURT:**  Okay.

22       **MR. HUNNICUTT:**  In voir dire, I like to use a

23  PowerPoint.  I don't show any evidence, but just, I've found

24  that, you know, it helps with their attention to like put my

25  question up that I'm going to then, you know, get -- the

1    general question, you know, to get answers from.

2              **THE COURT:**  Okay.

3              **MR. HUNNICUTT:**  Will the Court allow a PowerPoint

4    here in the courtroom?

5              **THE COURT:**  I mean, I don't know what you have.  You

6    might show it to them --

7              **MR. HUNNICUTT:**  Well --

8              **THE COURT:**  -- first so that it's not so many

9    objections.

10             **MR. HUNNICUTT:**  Then I would also offer that I know

11   some people like to do PowerPoints in their opening statement.

12   Sometimes I do, sometimes I don't, but what I would suggest, so

13   that we don't have needless objections during the opening

14   statement or the voir dire is that if either one of us is going

15   to use a PowerPoint, and if the Court will allow a PowerPoint

16   in voir dire and opening statement, then --

17             **THE COURT:**  I don't mind if it's agreed to.  It's

18   just when we don't turn it over and then there's a ton of

19   objections, and it takes a bunch of time.  If you-all want to

20   exchange those, and there's a couple of objections here and

21   there that I can address, I don't mind that.

22             **MR. MOYE:**  Yeah, I -- I try cases with a PowerPoint

23   on voir dire now, too, because I read Lisa Blue's book that

24   it's really smart to do it that way.  And I'll show it to

25   counsel before it's shown to the jury.  I'll do the same for

1 opening and I trust they'll do the same.

2     **MR. HUNNICUTT:**  Okay.  Then --

3     **THE COURT:**  Yes.

4     **MR. HUNNICUTT:**  I just want to make sure the Court

5 will allow us to do it.

6     **THE COURT:**  No.  I -- I'm pretty much if you-all

7 agree on matters; not always --

8     **MR. HUNNICUTT:**  Okay.

9     **THE COURT:**  -- but for the most part --

10     **MR. MOYE:**  If you have questions or any problems --

11     **MR. HUNNICUTT:**  Yeah.

12     **THE COURT:**  -- if you agree, I agree.

13     **MR. HUNNICUTT:**  All right.  Then that's what we'll

14 do.  We'll exchange our PowerPoints.

15     The other question logistically is when we go to play

16 the video depositions of witnesses, we have our video

17 technician and I assume they're going to have theirs.  Do we --

18 obviously they -- they can work out who has the best equipment,

19 and we use one set of equipment, but can we play our Direct and

20 then they play their Cross --

21     **THE COURT:**  Yes.  Yes.

22     **MR. HUNNICUTT:**  -- and then we play our Redirect.

23     **THE COURT:**  I mean, you're going to be doing your

24 Case-In-Chief.  You present --

25     **MR. HUNNICUTT:**  Okay.

1          **THE COURT:**  -- what you're going to present.  Then

2    they can come in and present depo excerpts if they want to,

3    kind of like for Cross.

4          **MR. HUNNICUTT:**  Okay.

5          **THE COURT:**  Right?

6          **MR. HUNNICUTT:**  Yes, that -- I -- I just -- every

7    once in a while I have a judge that has an opinion about it.

8          **THE COURT:**  Well, I -- well, and lawyers like to do

9    it all kinds of ways, too.

10         **MR. HUNNICUTT:**  Sure.

11         **THE COURT:**  So, sometimes they want to just wait till

12   their Case-In-Chief to present things.

13         **MR. MOYE:**  Frankly, once you rule, these are going to

14   be portal to portal, probably with no Redirect or Recross

15   anyway; it might be just hit "play" and everybody goes.  They

16   go; we go.

17         **THE COURT:**  Well, but -- and that's why this is time

18   consuming, but I think it clears it up for tech people and

19   everyone else to kind of move it along.

20         **MR. HUNNICUTT:**  All right.  Thank you, your Honor.

21         **THE COURT:**  Okay.  So, hopefully you-all can settle,

22   and if not, we will -- Brandy, when are we reconvening?

23   Thursday at what time?

24         **THE CLERK:**  July 13th at 9:00 a.m.

25         **THE COURT:**  Okay.  By phone, right?

1          **MR. MOYE:**  Yes.  Ms. Cortez, will you direct the

2   phone for us to call into?

3          **THE CLERK:**  Yes.

4          **MR. MOYE:**  Thank you.

5          **THE COURT:**  Okay.  Well, have a good weekend.

6          **MR. HUNNICUTT:**  Thank you, Judge, you as well.

7          **MS. PARECKI:**  Thank you; you, too.

8       **(This proceeding was adjourned at 12:38 p.m.)**

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATION


I certify that the foregoing is a correct transcript from the

electronic sound recording of the proceedings in the above-

entitled matter.




_____          _August 7, 2017_


                    TONI HUDSON, TRANSCRIBER