UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION


| | | |
|---|---|---|
| ALEXANDRO PUGA, ET AL., | ) | CASE NO:  2:15-CV-00073 |
| | ) | |
| Plaintiffs, | ) | CIVIL |
| | ) | |
| vs. | ) | Corpus Christi, Texas |
| | ) | |
| RCX SOLUTIONS, INC., ET AL., | ) | Thursday, July 13, 2017 |
| | ) | (8:58 a.m. to 10:04 a.m.) |
| Defendants. | ) | |


TELEPHONIC STATUS CONFERENCE


BEFORE THE HONORABLE NELVA GONZALES RAMOS,
UNITED STATES DISTRICT JUDGE



APPEARANCES:

| | |
|---|---|
| For Plaintiffs: | RICHARD W. HUNNICUTT, III, ESQ. |
| | Law Offices of Thomas J. Henry |
| | 521 Starr Street |
| | Corpus Christi, TX 78401 |
| | |
| For RCX Solutions: | WILLIAM R. MOYE, ESQ. |
| | COURTNEY A. PARECKI, ESQ. |
| | Thompson Coe Cousins & Irons |
| | 1 Riverway, Suite 1400 |
| | Houston, TX 77056 |
| | |
| Court Recorder: | Frenchie Carbia |
| | |
| Case Manager: | Brandy Cortez |
| | |
| Transcriber: | Exceptional Reporting Services, Inc. |
| | P.O. Box 18668 |
| | Corpus Christi, TX 78480-8668 |
| | 361 949-2988 |


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

1       **Corpus Christi, Texas; Thursday, July 13, 2017; 8:58 a.m.**

2                       **(Telephonic Conference)**

3                          **(Call to Order)**

4           **THE COURT:**  Court calls Cause Number 2:15-cv-73,

5     *Puga v. RCX.*  If the Plaintiff will announce?

6           **MR. HUNNICUTT:**  Richard Hunnicutt on behalf of the

7     Plaintiff.  Ready.  I also have with me Josephine Lue, who's

8     going to be probably not talking, but listening.

9           **THE COURT:**  Okay.  The Defense?

10          **MR. MOYE:**  Your Honor, William Moye here for

11    Defendant RCX, joined by Ms. Parecki, who you met on Friday.

12          **THE COURT:**  All right.  So we are continuing our

13    final pretrial conference, so let's finish out the deposition

14    issues we had started.  So hold on one second.

15          And I believe we left off, we may have been in the

16    middle of someone, let me get to that witness, because you all

17    said that's where you all had stopped conferring, and I believe

18    that was Mr. Crump.

19          **MR. HUNNICUTT:**  That's correct.

20          **THE COURT:**  So what else do we need to address on

21    Mr. Crump then?

22          **MS. PARECKI:**  Your Honor, Courtney Parecki here.  The

23    next one that Defendant objected to is Page 33, Line 21,

24    through Page 34, Line 9.

25          **THE COURT:**  And what's the objection?

1          **MS. PARECKI:**  The objection, your Honor, is that

2   Plaintiff's counsel is questioning the witness about statutory

3   employee under the DOT.  The regulations don't say statutory

4   employer or statutory employee, they use the term employer and

5   employee.  The statutory employer doctrine is a legal doctrine

6   that has arisen from the regulations for the purpose of

7   allowing the Courts to impose vicarious liability on an

8   authorized motor carrier for the negligence of a driver under

9   certain statutory defined circumstances when certain criteria

10  are met.  So questioning a lay witness about a legal doctrine

11  arising out of regs when the regs don't even use that term is

12  improper questioning of the witness.

13          **THE COURT:**  Okay.  I'm looking at Page 32, Line 21,

14  through Page 33, Line 9, correct?

15          **MS. PARECKI:**  I'm sorry, your Honor --

16          **MR. HUNNICUTT:**  No.

17          **MS. PARECKI:**  -- 33/21 through 34/9.

18          **THE COURT:**  Oh, I'm sorry.  Okay, okay.

19  Mr. Hunnicutt?

20          **MR. HUNNICUTT:**  Yes, your Honor.  Actually I

21  disagree, not in terms of that it's not in the statute, but

22  it's a term of art in the industry and our expert also has

23  testified that that's the statutory -- that's what people call

24  it in the carriers.  But my whole point on this and why it's

25  relevant is that this is the director of safety and I want to

1   show the jury that this company made no effort to comply with

2   this statute.

3           I asked it two ways.  I first asked if he heard of

4   the concept of statutory employee under DOT and then I draw on

5   this without using that phrase.  I said, well, have you ever

6   heard of the concept and he said no, no.

7           **THE COURT:**  Yeah, overruled.  The objection --

8           **MR. HUNNICUTT:**  The Court already ruled on this on

9   another witness.

10          **THE COURT:**  I'm sorry.  The objection is overruled.

11          Next?

12          **MS. PARECKI:**  Page 41, Line 11, through 42/17.

13          **THE COURT:**  Okay.  And I'm not -- last week I had

14  just reviewed all this, so I was more fresh on it.  I was not

15  going to go back and spend the time, since you guys were the

16  ones -- I guess we decided we were going to hear it.  So I may

17  be a little slower today.  Plus I wasn't sure what you all were

18  going to agree on and it would be inefficient for me just to go

19  back and review everything I had already reviewed.

20          So we are looking at Page 41, Line 11, through

21  Page 42, Line 16, is that what you said?

22          **MS. PARECKI:**  Line 17, your Honor.

23          **THE COURT:**  Line 17.  Sorry.  And the objection is?

24          **MS. PARECKI:**  These are questions about whether

25  Mr. Crump thought certain behavior was reckless and whether he

1    would ratify the behavior and that would go to the issue of

2    punitives, your Honor, which has already been dismissed

3    pursuant to our motion for summary judgment.  Mr. Crump's

4    opinion as to whether or not talking on a hands-free cell phone

5    device is considered reckless driving is not a proper question.

6    The jury will determine whether or not there was negligence.

7    Again, recklessness, that goes to punitives, which are no

8    longer in the case.

9            **THE COURT:**  All right.  Mr. Hunnicutt?

10           **MR. HUNNICUTT:**  Yes, your Honor.  This man is the

11   safety director.  I still have to prove up as part of the

12   underlying basis that Ronald Brown was negligent and if he's

13   reckless the jury can certainly that in terms of whether that's

14   been reasonably proved.  But even though the Court has granted

15   their summary judgment on gross negligence, this is still

16   relevant and important to the Plaintiffs' case to put on

17   evidence that Ron Brown was guilty of negligence that day.  And

18   that's something that the Defendants have not conceded and in

19   fact they just -- or are trying to advance a proposed charge to

20   submit my client's negligence.

21           **THE COURT:**  All right, the Court's going to overrule

22   the objection.

23           Next?

24           **MR. HUNNICUTT:**  That's it for this witness,

25   your Honor.

1          **THE COURT:**  Okay.  So the next witness I have would

2    be Smith?

3          **MS. PARECKI:**  That's right, your Honor.

4          **THE COURT:**  Okay.  And what do you all not agree on

5    regarding Mr. Smith, or Dr. Smith I guess.

6          **MS. PARECKI:**  Page 9, Lines 2 to 5.

7       **(Pause)**

8          **THE COURT:**  Mr. Hunnicutt, I'm inclined to sustain

9    that.  Do you have any argument on that?

10          **MR. HUNNICUTT:**  No, your Honor.

11          **THE COURT:**  Sustained.

12          Okay, next?

13          **MS. PARECKI:**  Page 18, Lines 9 through 18.

14       **(Pause)**

15          **THE COURT:**  The Court's going to overrule that.

16          You guys aren't including like if an attorney

17    objected or things like that, that's not going to be included

18    in the clips, is it?

19          **MR. HUNNICUTT:**  Yes, your Honor.  As much as we

20    possibly -- well, I can't speak for their video technician, but

21    I've instructed my video technician whenever he can to take out

22    the attorneys talking and the attorney objections.  As the

23    Court I'm sure is aware, sometimes the answer and the

24    objection --

25          **THE COURT:**  Right.

7

1          **MR. HUNNICUTT:**  -- are coming out at the same time,

2    in which case we have to keep the answer.

3          **THE COURT:**  Okay.  Ms. Parecki, any comments on that?

4          **MS. PARECKI:**  The objections need to come out,

5    your Honor.

6          **THE COURT:**  Okay.  Thank you.  So we're all in

7    agreement they need to come out.  Sometimes the people are

8    talking over each other and there's an answer in there and it

9    may be unavoidable.  But, all right.

10          Next?

11          **MS. PARECKI:**  Page 25, Line 9, through 26, Line 1.

12          **THE COURT:**  Twenty-five, Line 9.

13       **(Pause)**

14          Response, Mr. Hunnicutt?

15          **MR. HUNNICUTT:**  Well, your Honor, I'm not sure what

16    the form objection is.  He did not object leading and usually

17    that's supposed to be said if that's what it is.

18          **MS. PARECKI:**  I can clarify the objection,

19    your Honor.

20          **THE COURT:**  Go ahead.

21          **MS. PARECKI:**  He's asking the witness whether it's

22    correct to understand that the primary concern of the other

23    physicians --

24          **THE COURT:**  Yeah.

25          **MS. PARECKI:**  -- was the third degree burns.

1          **THE COURT:**  I'm going to sustain that, so that's

2   sustained.

3          Next?

4          **MS. PARECKI:**  Page 27, Line 10, through 28, Line 15.

5          **THE COURT:**  Twenty-seven, Line 10, through 28, Line,

6   what did you say, 15?

7          **MS. PARECKI:**  Fifteen.

8          **THE COURT:**  Okay.

9          **MS. PARECKI:**  The incomplete hypothetical and the

10  witness says that he has not seen or examined the patient for

11  that purpose, so lack of foundation.

12         **THE COURT:**  The Court's going to overrule that.

13         Next?

14         **MS. PARECKI:**  Page 28, Line 25, through 29, Line 10.

15     **(Pause)**

16         **THE COURT:**  Mr. Hunnicutt?

17         **MR. HUNNICUTT:**  Well, there's a form objection that

18  I -- I don't know how to respond to that.  He did not object

19  leading.  And I'm just asking him whether these extensive

20  injuries to his lower extremities would change his gait

21  (indisc.) had he expected it would -- it did.

22         **MS. PARECKI:**  He said I don't know, I haven't seen

23  him, if I'd seen him in the past several months maybe I could

24  answer that.

25         **THE COURT:**  So this one's specific.  The Court's

1  going to sustain.  The issue before was more of a general if

2  this happens, the portion I just overruled the objection to,

3  but this one's more specific to the Plaintiff it appears and he

4  doesn't know, is the way I'm seeing that.

5          Am I looking at that correctly?

6          **MS. PARECKI:**  I believe so, your Honor.

7          **THE COURT:**  The Court's going to sustain that then.

8          Okay, next?

9          **MS. PARECKI:**  Page 33, Line 2 through 33, Line 16,

10 your Honor, which this goes to whether the doctor believes that

11 any medical expenses are reasonable and necessary and I believe

12 that --

13         **THE COURT:**  I think he says he doesn't know, right?

14 He has --

15         **MR. HUNNICUTT:**  Well, your Honor, and actually

16 Ms. Parecki and I discussed this, I believe that we are close

17 to having a stipulation.  Mr. McCluggage and Ms. Lue, our

18 respective associates, have been going over the bills and I

19 think they've just about ironed out a final dollar amount.  I

20 agreed I would pull this if there's a stipulation.

21         **THE COURT:**  Okay, I'm going to sustain it for now.

22 You can bring it back up if you need to.

23         All right, next?

24         **MR. HUNNICUTT:**  Okay.

25         **MS. PARECKI:**  Page 74, your Honor, Line --

1      **THE COURT:**  Seventy-four?

2      **MS. PARECKI:**  Yes, your Honor.

3      **THE COURT:**  All right.

4      **MS. PARECKI:**  Line 19 through Page 75, Line 25.

5      **THE COURT:**  Mr. Hunnicutt?

6      **MR. HUNNICUTT:**  I'm sorry, I was on the wrong page,

7  your Honor.  I think that's a valid hypothetical.

8      **MS. PARECKI:**  Your Honor, the doctor is saying

9  generally that you have to consider genetics, you have to

10 consider the shape of the person's back, you have to consider

11 previous activity levels, and there's nothing in the

12 questioning that shows that he considered any of that for

13 Mr. Puga, but then at the end Plaintiffs' counsel tries to

14 elicit a causation opinion from him.  I don't think it's built

15 on an adequate foundation.

16     **THE COURT:**  Overruled.  Overruled.

17     Next?  Is that it on that one?

18     **MR. HUNNICUTT:**  Yes, your Honor.

19     **MS. PARECKI:**  Plaintiffs' counsel had one objection,

20 I believe, to Smith.

21     **THE COURT:**  Okay.  Which one?

22   **(Pause)**

23     **MR. HUNNICUTT:**  Yes.  I'm finding out that my desk is

24 too small to hold all this paperwork.  Okay, the --

25     **THE COURT:**  You all sure provided a lot of papers in

1    this case.

2              **MR. HUNNICUTT:**  I'm sorry, your Honor.

3              **THE COURT:**  No, go ahead.

4              **MR. HUNNICUTT:**  Page 59, Line 13, through 63,

5    Line 11, and I think if the Court reads it you'll see our

6    objection.  He goes into marijuana use that's described in the

7    medical records.  That's irrelevant and the prejudicial effect

8    outweighs any relevance.

9              **THE COURT:**  Do you want to --

10             **MS. PARECKI:**  The reason it would be --

11             **THE COURT:**  -- respond, Ms. Parecki?

12             **MS. PARECKI:**  Sorry, your Honor.  The reason it would

13   be relevant is because the questioning has to do with whether

14   or not it affects Mr. Puga's ability to manage his pain if he

15   has medication and he is combining it with marijuana use and

16   the doctor is questioned about the fact that his nurse

17   practitioner, Ms. Marino (ph.s.), had a concern about that and

18   offered him advice.  So it goes to that purpose.

19             **THE COURT:**  The Court's going to sustain the

20   objection.

21             So we're moving to Neal, correct?

22             **MS. PARECKI:**  Yes, your Honor.

23             **THE COURT:**  All right.

24             **MR. HUNNICUTT:**  Yes, your Honor.

25             **THE COURT:**  Where are we?

12

1          **MS. PARECKI:**  Page 59, Lines 20 to 21.

2          **THE COURT:**  Fifty-nine, hold on one second, 59,

3    Line -- what was the line?

4          **MS. PARECKI:**  Line 20 to Line 21.

5          **THE COURT:**  It was just the question was the

6    objection?

7          **MS. PARECKI:**  Yes.  And the reason I objected to

8    that, your Honor, is that at Line 19 the witness answered that

9    it bills the customer and then at Line 20 Plaintiffs' counsel

10   changed it to they're billing it to the carrier and if you look

11   at the confirmation rate page that they're talking about, it

12   actually identifies About Tyme as the carrier and About RCX as

13   the broker.  Which, you know, is central to our argument in the

14   case, so it's just a misstatement, misrepresentation as to what

15   company.

16         **THE COURT:**  Mr. Hunnicutt?

17         **MR. HUNNICUTT:**  I don't think that is a

18   misrepresentation.  On the bill of lading the carrier -- when

19   you look at the document, the carrier rate information is

20   filled out the way I was reading it out.

21       **(Voices overlap)**

22         **THE COURT:**  I'm sorry, I didn't get that.

23         **MR. HUNNICUTT:**  Well, if you look at the prior -- on

24   the prior testimony before the part they want to keep out, if

25   you look at Page 59, Line 6, we're -- I'm sorry, we're talking

 1    about the carrier rate confirmation, which is on Page 33, and

 2    then we go down to -- and at the top it says RCX Solutions on

 3    this form as the carrier.  I don't see any of this as

 4    objectionable.

 5            MS. PARECKI:  It's a misrepresentation of what that

 6    document represents.

 7            THE COURT:  Oh, well, overruled.  You all can do that

 8    through cross examination or whatever it may be.  So that's

 9    overruled.

10            Next?

11            MR. HUNNICUTT:  Your Honor, the Defendants have just

12    sent over --

13            THE COURT:  I'm not going to address the new stuff

14    just yet.  We'll address that in a little bit.  Because I think

15    I told you if you all had agreements, I wouldn't mind you all

16    adding things.  But I want to finish what we had started and

17    then we can go back and see what the Defendant is proposing.

18    Okay?

19            MR. HUNNICUTT:  That's it for Neal, your Honor.

20            THE COURT:  I'm sorry?

21            MS. PARECKI:  (Indisc.)

22            THE COURT:  I'm having trouble hearing you all.  You

23    all probably both need to speak up a bit.  This is a little

24    hard to do, doing it by phone, because we can't see each other

25    to kind of stop when someone else is talking and, you know, I'm

1    kind of talking over you all too.

2           But where are we?  We were talking about Neal.  I

3    just addressed that one objection.  What else on Neal?

4           **MS. PARECKI:**  Your Honor, that was it.

5           **THE COURT:**  Okay.

6           **MS. PARECKI:**  And that was it for the depo

7    objections, with the exception of Dillman.  As you may recall,

8    Dr. Dillman was re-deposed on June 30th.

9           **THE COURT:**  Right.

10          **MS. PARECKI:**  And the Court gave the parties until --

11   this was a Friday.  And the Court gave the parties until

12   Monday, July 3rd, to do their offers for Dillman.

13          **THE COURT:**  Right.

14          **MS. PARECKI:**  Plaintiffs filed their offers for

15   Dillman, I'm looking at the electronic filing here, at 5:14

16   that day, and the next day, of course, was the 4th.  On the 5th

17   RCX submitted just two objections.

18          **THE COURT:**  Okay.

19          **MS. PARECKI:**  They were stricken as untimely and I

20   would just re-urge that we would be able to argue those.

21          **THE COURT:**  Yeah, we can proceed on those based on

22   the holiday and the way it transpired, I guess.  So what are

23   the objections there?

24          **MS. PARECKI:**  Your Honor, Page 57 --

25          **THE COURT:**  Okay, hold on, because I'm thinking I

1    don't have the full deposition on -- I have -- let me see what

2    I have here.  It doesn't appear to be Dillman's full

3    deposition.  Hold on just a second.

4        **(Pause)**

5            Let's see, I only have --

6            **MS. PARECKI:**  If you have Volume 1, that's what the

7    objection goes to, your Honor.

8            **THE COURT:**  On 1?

9            **MS. PARECKI:**  On Volume 1.

10           **THE COURT:**  Okay, well, let me -- I do have that one

11   fully.  What page?

12           **MS. PARECKI:**  Page 57.

13           **THE COURT:**  So the objections go to Volume 1 even

14   though --

15           **MS. PARECKI:**  Right, because we didn't do objections,

16   we were waiting to see --

17           **THE COURT:**  Okay.

18           **MS. PARECKI:**  -- if the Plaintiffs --

19           **THE COURT:**  Okay, okay.  So Page 57, where?

20           **MS. PARECKI:**  Line 11, your Honor, through -- just 11

21   through 12.  I think improperly suggesting that -- I mean his

22   age is irrelevant.  The fact that he's 84 --

23           **THE COURT:**  Yeah, sustained.  I don't know why his

24   age would be relevant.  Sustained.

25           What else?

1      **MS. PARECKI:**  The only other one, your Honor, that I

2  see I had on this is if you look at Page 73, beginning with

3  Line 13, and it goes down to Page 74, Line 15 --

4      **THE COURT:**  Okay.

5      **MS. PARECKI:**  -- the number that Dr. Dillman is using

6  for -- for his earnings, he actually corrects that at Page 75,

7  Line 14 through 18.  Mr. McCluggage pointed out that he had

8  made a misstatement, that the 34,000 really should be 26,735.

9  So I just wanted that part included.

10     **THE COURT:**  You just want to add something?

11     **MS. PARECKI:**  That's right.

12     **THE COURT:**  That's fine.  Mr. Hunnicutt, any problem

13  with that?

14     **MR. HUNNICUTT:**  I'm trying to keep up, let me --

15  because I didn't think they had --

16     **THE COURT:**  We can't hear you.  I'm assuming you're

17  on speaker phone trying to deal with all these documents, but

18  we can't hear you.  You may have to pick up your phone.

19     **MR. HUNNICUTT:**  Oh, yeah.

20     **THE COURT:**  There you go.

21     **MR. HUNNICUTT:**  I am -- now I've lost track of where

22  I was.

23     **THE COURT:**  Okay, we are looking at Dillman depo, the

24  first one.  We are on Page 73.  And that deposition is dated

25  August 4th of last year, 2016.  So that's the one we're working

17

1    off of.  Because apparently you all were waiting to do

2    objections until the second depo was taken, is my

3    understanding.

4         **MR. HUNNICUTT:**  That's not my understanding, but I

5    have no problem with dealing with this now.  I thought -- well,

6    anyway, that's fine.  They were good enough to agree to let me

7    take Professor Dillman to update things and I will deal with

8    this.  The --

9         **THE COURT:**  They're just wanting to add, we're on

10   Page 75, there's maybe a -- he corrects himself in terms of the

11   amount.  I'm allowing them to do it, but I didn't know if there

12   was something specific you wanted to say on that.

13        **MR. HUNNICUTT:**  I don't have a problem with him

14   correcting that.

15        **THE COURT:**  Okay.  We're good there then.  What else

16   on Dillman?

17        **MS. PARECKI:**  That was it, your Honor.

18        **THE COURT:**  Okay.  Then --

19        **MR. HUNNICUTT:**  So my record is clear, they're taking

20   out or adding in on Dillman on Page 75?

21        **THE COURT:**  They're adding in on Page 75.  Now, I did

22   exclude on Page 57, Lines 11 and 12, I believe where you ask

23   his age, he's 84.

24        **MR. HUNNICUTT:**  Yes.

25        **THE COURT:**  I sustained the objection.  So we're

1  taking out Lines 11 and 12.

2          **MR. HUNNICUTT:**  Okay.  He looks even older than 84,

3  so….

4          **THE COURT:**  What's that?

5          **MR. HUNNICUTT:**  He looks even older than 84, so

6  that's okay with me.

7          **THE COURT:**  Well, okay.  So then that's it on the

8  depos we have been addressing, as far as I can tell.  So the

9  next thing was that the Defendants, let me find my notes,

10  provided new depo excerpts, and I think where we had left off

11  on that was you all were going to confer.  If you all agreed on

12  adding things, fine.  If there was objections, I wasn't sure

13  that I was going to go forward on that because I thought that

14  was kind of a late filing.

15          So where are you all on those depo excerpts from the

16  Defendants?

17          **MR. MOYE:**  Yes, your Honor.  Mr. Moye here.  I

18  believe I've gained permission from Mr. Hunnicutt for the late

19  filings, but Mr. Hunnicutt specifically reserved his right to

20  provide objections, which I think is fair game.  So I don't

21  think it would be that long to rip through just a few

22  objections, but I understand the Court's position that if we

23  couldn't agree on the entire submission you might not hear it.

24  But I want to make it fundamentally clear Mr. Hunnicutt did

25  reserve his right to lodge objections.

1          **THE COURT:**  Right, and do you have objections,

2     Mr. Hunnicutt?

3          **MR. HUNNICUTT:**  I have, yes, but there are -- I'll be

4     specific.  We have -- I agree with about 90 percent of what

5     they -- or don't object to about 90 percent of what they want

6     to submit.  That would be Butler, there are two quick

7     objections, and then one quick objection in Crump, one in

8     Clifton.  So we're just talking about four objections, four or

9     five objections total.

10         **THE COURT:**  All right, I'll look at it.  So we're

11    going to go to Crump and what are Plaintiffs' objections there?

12         **MR. HUNNICUTT:**  The only objection on Crump is on

13    Page -- they want to play Page 38, Lines 5 through 13, Page 38,

14    Lines 5 through 13.

15         **THE COURT:**  Okay, you want me to look at that?

16     **(Pause)**

17         So what's the objection?

18         **MR. HUNNICUTT:**  The objection is nonresponsive to --

19         **THE COURT:**  Ms. Parecki or Mr. Moye, who's addressing

20    that?

21         **MS. PARECKI:**  Your Honor, Ms. Parecki.  The answer's

22    responsive.  He may not like the answer, but the witness was

23    able to clarify -- he's permitted to do so in response to the

24    question.

25         **THE COURT:**  The Court's going to overrule that

20

1   objection.

2          What else?

3          **MR. HUNNICUTT:**  That's it for Crump.

4          **THE COURT:**  Okay, then --

5          **MR. HUNNICUTT:**  The next one --

6          **THE COURT:**  -- we're going to Clifton?

7          **MR. HUNNICUTT:**  So Clifton, on Page 52, Page 52,

8   Lines 6 through 16, there's a discussion of insurance.

9          **MR. MOYE:**  Your Honor, Mr. Moye here, we'll withdraw

10  the Clifton offer, because Mr. Clifton's going to be a live

11  witness at trial.

12         **THE COURT:**  All right.  Very good.  So nothing else

13  on the depositions, correct?

14         **MR. HUNNICUTT:**  Nothing else on Clifton.  They also

15  want -- they have some on Butler that we had two objections to.

16         **THE COURT:**  Okay, what are the objections?

17         **MR. HUNNICUTT:**  The first objection is on Page 27,

18  Lines 17 through 22.

19         **THE COURT:**  Seventeen through 22, okay, let me see.

20      **(Pause)**

21         That's overruled.  What else?

22         **MR. HUNNICUTT:**  Next one is 28, Lines 5 through 7.

23      **(Pause)**

24         **THE COURT:**  That's overruled.

25         **MR. HUNNICUTT:**  The next -- and that's it for Butler.

1          **THE COURT:**  Okay.

2          **MR. HUNNICUTT:**  And we have no objections to their

3    submission on Neal.  That was it for the new submissions.

4          **THE COURT:**  Okay, very good.  So then let's next

5    address the issue on the settlement with About Tyme and whether

6    it comes in through Allen because the Defense is saying there

7    was a shifting I guess opinions after the settlement.  So

8    Mr. Hunnicutt, did you want to address the settlement issue?

9          **MR. HUNNICUTT:**  Yes, your Honor.

10          **THE COURT:**  And I did review the briefing, so….

11          **MR. HUNNICUTT:**  Okay, and I'll be brief.  Based on my

12    ruling of -- or my reading of the court case law, in order for

13    something as prejudicial as a settlement to come into evidence,

14    there must be a significant reason.  And different Courts use

15    different language, but we included a quote from the Seventh

16    Circuit that it has to be a significant reason.

17          And the reasons are if the jury hears -- and I know

18    Mr. Moye wants to say I just want to just let them know there

19    was a settlement, not know the amount.  And that would highly

20    prejudice the Plaintiffs because they may be assuming that my

21    client already got 10 million or my client already got

22    20 million.  I mean they don't know the amount.  And so it's a

23    Pandora's box, once you open it up and the jury starts to

24    realize that somebody already got money, whether it was from an

25    insurance company or from a settlement, that has a horrible

1   prejudicial effect.

2          And then I'm faced with the Hobson's choice if the

3   Court decides to let them mention that there was a settlement

4   with About Tyme, then I have the Hobson's choice of then

5   waiving the terms of the settlement to let the jury know it was

6   only $1 million and --

7          **THE COURT:**  I don't think any amounts come in, if it

8   even comes in.  I think that the cases are pretty clear on

9   that, that we're not supposed to do that.

10         Right, Mr. Moye?  Or Ms. Parecki?  Who's addressing

11  that?  I'm sorry.

12         **MR. MOYE:**  I'm sorry, Mr. Moye.  That's correct.

13  There's actually a Third Court case out of Judge Fisher's Court

14  that allowed the concept but not the numbers.

15         **MR. HUNNICUTT:**  And my point, your Honor, is not that

16  I want that to happen.  I'm illustrating the Pandora's box

17  here, that once you open up the fact of the settlement, that is

18  highly prejudicial.

19         Now, the key thing is to look at Roger Allen's report

20  and his testimony.  We included a little bit of his transcript.

21  Mr. Moye was very aggressive, he was doing his job, but he was

22  very aggressive in trying to badger Mr. Allen into saying that

23  he changed his opinion.  He actually didn't.  In his report

24  from day one, and it's fair game for them if he has a prior

25  inconsistent statement to impeach him with his report, he said

1   that Ronald Brown was negligent, that About Tyme was negligent,

2   and RCX.  He never changed his position.

3           **THE COURT:**  Okay.  Mr. Moye, you want to get into the

4   specifics about what changed and how and --

5           **MR. MOYE:**  That's right.  And I'll answer the

6   question directly.  He said under oath that, quote, he has

7   never thought About Tyme was the responsible motor carrier,

8   that from the beginning of time he thought and always had

9   thought that RCX Solutions was the responsible motor carrier.

10  And that's a fundamental key change from his written report,

11  wherein he says that this driver is driving for a About Tyme in

12  the course and scope of his employment with About Tyme on the

13  date of the accident.  So it is a key change for him to say I

14  never thought About Tyme was the motor carrier.

15          Well, question one, how were they all negligent then?

16  Why did you put 19 federal violations that they could only be

17  violating if they were the motor carrier?  Why did you say that

18  it was a preventable accident on behalf of About Tyme when

19  preventability is only judged against the motor carrier?

20          This gentlemen was given a letter from the lawyers,

21  which is not privileged, where they gave him the roadmap on

22  their motion for summary judgment where he highlighted that we

23  were the only Defendant left and About Tyme had settled the

24  case.  That occurred in June, four months after he made his

25  written report.  And then in November, when he was deposed, he

1    said, aw, shucks, I never thought that.  Well, why did he write

2    a 30-page report with 20 items that implicate About Tyme as the

3    motor carrier?

4         So foundationally it's not a question of him saying

5    About Tyme is not negligent, it's a question of under oath and

6    in this trial in front of this jury he's going to say, golly, I

7    never thought About Tyme was the motor carrier.  It is belied

8    by his report.  This is fair game for cross examination.  It is

9    fair game for bias.  Rule 408 is fundamentally clear, it

10   doesn't say the word "significantly" anywhere.  This is

11   instrumental to our case.  It is very important.  This

12   gentleman has to be impeached with that evidence that he put in

13   his file, I didn't hand it to him in his depo, he had it in his

14   file four months before he was deposed and he highlighted it.

15        **THE COURT:**  Okay.  I'm going to let the Plaintiff

16   respond just briefly and then I'm going to make a ruling.

17        **MR. HUNNICUTT:**  Okay.  Briefly, your Honor, I

18   disagree completely with Mr. Moye's interpretation of both

19   Mr. Allen's report and his deposition.  He consistently said

20   About Tyme has a carrier license and also they were the

21   employer and he also said that there was this arrangement --

22   well, the Court's read the report.  I disagree.  Mr. Moye has

23   an agenda to try to make it sound like Mr. Allen is changing

24   his opinion.  He did not.

25        What he's referring to was not a roadmap that we gave

1   him.  We gave Mr. Allen both the summary judgment that the

2   Defendant filed with all the evidence and the summary judgment

3   response.  We also gave him the pleadings.  We gave him our

4   position and we gave him the answers.  I mean we just gave all

5   of that information.  So the implication that he was being

6   given some roadmap to follow I disagree with.

7           **THE COURT:**  All right.  Actually it's a delicate

8   issue and fine line probably, but I think the settlement

9   information is appropriate for impeachment here.

10          Now, you all need to discuss the parameters and then

11  I don't know if we do some sort of limiting instruction or how

12  we handle that, because it is a sensitive issue and I have not

13  tried this type of case before or had that issue.  So you all

14  need to discuss that further as to how it's going to be done,

15  what we need to do.  Any comments on that or you all want to

16  discuss that further between yourselves?

17          **MR. HUNNICUTT:**  Well, can I ask the Court that this

18  issue of settlement, since it's only for impeachment, not be

19  mentioned in voir dire or opening statement and it be saved

20  until Mr. Allen is on the stand?  Because there are ways it can

21  be brought up --

22          **THE COURT:**  Yeah, I am concerned about the extent of

23  what Defendant is going to try to do with this.  I think it's

24  appropriate for impeachment of the expert and I think we need

25  to limit it to that and not just be injecting it over and over

1    through the trial, which could lead to confusion and problems

2    with the jury.  So that's why I'm saying I think there needs to

3    be some discussion about exactly how it's going to be used.

4          **MR. MOYE:**  And, your Honor, Mr. Moye here.  I pride

5    myself on following the rules and I pride myself on trying to

6    do the right thing.  I will not bring up a settlement with

7    About Tyme in voir dire or in opening.  In opening I will

8    mention that About Tyme was sued, because I have to, but not

9    that they settled or anything else.  I'm free to admit that I'm

10   not their lawyer, which I have to do.  But I will not mention

11   the word "settlement" once in my opening or once in my voir

12   dire.

13         **THE COURT:**  Okay.  But I think there still needs --

14   thank you for that.  I think there still needs to be specific

15   discussion and maybe between you two first and then with the

16   Court before we start the trial as to how it's going to come in

17   and we're going to limit it to that.

18         **MR. MOYE:**  I think -- Mr. Moye.  I think that's fair.

19   Because frankly if Mr. Allen testifies and says, you know what,

20   I was wrong, I think they're both the motor carriers, or About

21   Tyme was the motor carrier and there was a negligent brokerage

22   of the load between RCX.  I don't know what he's going to say.

23   But if he says I always said About Tyme is the motor carrier,

24   then I think that might implicate -- my needs in this case, I

25   just -- I don't want to pin myself to that, but that's kind of

1   the philosophy of what I think is relevant here.

2           MR. HUNNICUTT:  So that I -- this is Hunnicutt.  So I

3   understand, your Honor, we are to confer about how -- when and

4   how the settlement discussion occurs with the witness,

5   Mr. Allen, and also before anybody goes talking about

6   settlement in front of the jury in any way we approach the

7   bench and talk --

8           THE COURT:  Well, no, we discuss it before we even

9   start the trial.  You all discuss it between yourselves between

10  now and Monday morning.  Before the jury comes up we will have

11  a discussion on the record as to exactly how it's going to be

12  used.  I'm really going to pin the Defense down on this,

13  because I don't want to create a lot of problems.

14          MR. MOYE:  I think that's fair and, frankly, what I

15  was referring to is if we get a good one I want to keep it too.

16  So I hear where you're coming from.

17          THE COURT:  Okay.  So you all are going to discuss it

18  and when we gather on Monday morning before the jury comes up

19  we're going to discuss details about how that's going to be

20  approached.  Correct?

21          MR. MOYE:  We will, yes.

22          THE COURT:  Okay.  All right, then the next thing,

23  you all were going to discuss expert testimony in terms of

24  questions of law.  Have you all discussed that?

25          MR. MOYE:  We have not.  We have been dealing with

1    other things, frankly, and that got lost on us.  I think we

2    could certainly add it to the agenda and time to discuss in

3    advance of trial along with the settlement conversation.

4            THE COURT:  Okay.  Anything on that, Mr. Hunnicutt?

5            MR. HUNNICUTT:  I agree.  I think we're both getting

6    on the same page slowly but surely and we will have a long

7    discussion before Monday morning.

8            THE COURT:  Okay on that issue.

9            The next thing is the charge.  You all submitted and

10   then did a revised proposed instructions to the jury, so let me

11   grab that.  And I think the issue is just simply how are we

12   going to submit the question about the arrangement and my

13   inclination is to simply follow the statute.

14           So I will take, Mr. Hunnicutt, if you want to address

15   that issue.

16           MR. HUNNICUTT:  Yes, your Honor.  I think one of the

17   primary differences between -- well, I think it needs to be a

18   broad form submission.  I think we need to not burden it with a

19   lot of extra legalese.  I think the Court is going to

20   ultimately decide the question of law, obviously.  So what we

21   need is just a factual determination from the jury and under

22   the statute -- we actually have included in our proposed charge

23   what was the Defendants' proposed question originally, and that

24   is simply at the time of the collision between Brown and Puga

25   was RCX using motor vehicles it does not own to transport

1    property under an arrangement with Ronald Brown.

2              **THE COURT:**  And that's kind of what's set out in

3    49 -- Title 49, Section 14102, right?

4              **MR. HUNNICUTT:**  Right.  The -- well, the pertinent

5    part.

6              **THE COURT:**  Right.

7              **MR. HUNNICUTT:**  Now, I think the Defendants are

8    adding -- in one of their versions they want to add basically

9    all of the points that they included in their summary judgment.

10   I don't think -- I don't believe that is appropriate for the

11   jury for them to make their factual determination.

12             **THE COURT:**  Mr. Moye?

13             **MR. MOYE:**  Yes, ma'am -- or yes, your Honor.  Yeah, I

14   don't disagree with half of Mr. Hunnicutt's suggestion.  The

15   problem is -- and we obviously withdrew this so, you know,

16   we're not saying we agree to it.

17             **THE COURT:**  Right.

18             **MR. MOYE:**  The problem is the obtuseness of the

19   question is simply using motor vehicles it does not own to

20   transport under an arrangement with Ronald Brown, under that

21   definition every single broker would be on the hook for

22   statutory employer liability because there's no mention of

23   lease.  In your Honor's most recent clarification you mentioned

24   that the arrangement had to be at least lease-like.  So it

25   can't just be bald-faced arrangement, because in the motor

 1    carrier world there's about a thousand different arrangements

 2    that would lead to statutory employer liability if this is the

 3    charge question.

 4         What we did in trying to keep with what we think is

 5    the clarification the Judge offered us, is we have a definition

 6    of lease that you referred to as means a contract or

 7    arrangement, I don't think we can be deprived of that

 8    definition, in which the owner grants the use of equipment,

 9    with or without a driver, for a specified period of time, an

10    authorized carrier for use and regulate transportation

11    property.

12         THE COURT:  We're not taking you down.  You're

13    talking too fast and you're --

14         MR. MOYE:  Okay, I'm sorry.

15         THE COURT:  -- coming across mumbled, so the

16    record's --

17         MR. MOYE:  Sure.

18         THE COURT:  -- not going to be clear.

19         MR. MOYE:  My apologies for that.  What we did,

20    you'll see in our proposed question on Page 9, is we actually

21    took statutorily the lease language, which I think is phrased

22    from your motion to reconsider order where you said that the

23    arrangement has to be lease-like.  And we argued that it has to

24    be a lease and I understand that you've made some decisions on

25    that, but you certainly have said it has to be at least lease-

1   like, it's a statutory issue on a lease.

2           **THE COURT:**  I know, but that's the issue I guess or

3   the question, what does the statute require in terms of an

4   arrangement.  I'm not going to turn it into what the statute

5   requires when you have a written contract and you should

6   specify all these terms.  I don't think that would be

7   appropriate.  But I have not identified in the statute what

8   might be helpful in terms of an arrangement.

9           **MR. MOYE:**  And there's not any.  The problem is

10  there's not a single case that references an arrangement after

11  the lease.  And you'll see, Judge, because, I think, again I'm

12  trying to be a good steward of what -- a good lawyer for doing

13  the right thing, I didn't put in our proposed question that it

14  had to be in writing, it had to be in the cab, in had to be

15  this.  I specifically limited it to defining the lease as a

16  contract or arrangement implicated an ownership in the

17  transport and who owns what and that did RCX Solutions have a

18  lease with About Tyme whereby RCX Solutions was using About

19  Tyme's transport equipment to transport the load Mr. Brown was

20  hauling at the time of the accident with Mr. Puga and then

21  literally three sentences defining lease from the statute.

22          **THE COURT:**  Mr. Hunnicutt?

23          **MR. HUNNICUTT:**  Well, your Honor, we cited the cases

24  previously, I know the Court cited them also in their order,

25  that you don't have to have a written lease.  So I don't want

1   there to be an implication, and I think there's a potential for

2   a confusing argument with the jury, because we really are in

3   the shade of gray between law and fact.  My preference is to

4   keep this not legal for the jury and just get the factual

5   determination from them.

6           **THE COURT:**  I know, but what's going to be helpful to

7   the jury in terms of -- I couldn't find anything.  The statute,

8   Mr. Moye said, there's nothing.  When we talk about is there

9   this arrangement, is that it?  We just submit that question

10  with no really guidance?  I'm not sure.  I don't think there's

11  anything out there to help us on it.

12          But I agree.  I mean I've repeatedly said in the

13  orders written agreement not required.  I understand that's

14  typically what happens.  But I don't think it's required,

15  otherwise people could get out of this situation by not having

16  a written agreement.  So --

17          **MR. MOYE:**  And then that's what the Ninth Court found

18  in the case you cited, and that's fine, but they had an oral

19  lease in that case.  There was still a lease in that case,

20  there just wasn't a written lease in that case.

21          So there still has to, across the landscape of every

22  single case on this issue, has to be a lease.  And you'll see

23  in my --

24          **THE COURT:**  I know, I'm just trying to get to how do

25  we get there without --

1          **MR. MOYE:**  Well, I think our submission defines the

2     lease that borrows the logic from your motion to reconsider.

3     So I purposely didn't put has to be a written lease, has to be

4     an oral lease.  I mean, frankly, it has to be a contract or

5     arrangement that is a lease.  And your words I think were very

6     astute, it has to be lease-like.  Unless there's --

7          **THE COURT:**  Well, I was -- I'm talking without a lot

8     of guidance when I've been doing some of this work, right?

9     Because, as you said, there's not -- there are not cases out

10    there addressing this particular matter.

11         **MR. MOYE:**  That's right, and I think both sides

12    filings are filed without a lot of guidance either.  So you're

13    not the only, you know, rower in this boat sadly.

14         **MR. HUNNICUTT:**  Well, I think one of the -- and I'm

15    looking at the statute right now and I think that the -- I

16    think there's just enough language in the statute to submit

17    arrangement.  If we're going to insert the word "lease," then

18    my concern is that we should have in there at some point like

19    lease means a contract or arrangement, comma, written or oral,

20    comma.  Because when most people hear that there's a lease --

21         **THE COURT:**  Right.

22         **MR. HUNNICUTT:**  -- they're looking for a document,

23    because, you know, most people's experience with a lease is

24    with getting an apartment or leasing a car and there's always a

25    document.  So I think the Court would have to put in oral or

1  written.

2         THE COURT:  So lease or arrangement, comma, written

3  or oral, comma, that might kind of help here?

4         MR. HUNNICUTT:  Well, the concept we tried to include

5  in our question, which is just that there's an arrangement

6  between Brown and RCX to use a motor vehicle they did not own

7  to transport property under an arrangement.

8         THE COURT:  Right, and I think under the statute --

9         MR. HUNNICUTT:  Absolutely.

10        THE COURT:  -- it only uses arrangement.  But the

11 Defense is right, it's not just any arrangement, you know, it's

12 certain situations.

13        MR. MOYE:  Judge, if I could chime in.  My definition

14 of lease could be read lease means a contract or arrangement,

15 comma, written or oral, comma, in which the owner grants blah-

16 blah-blah.  So I don't dispute Mr. Hunnicutt wants to have no

17 indication of lease meaning what a jury would familiarize

18 themselves, like a landlord situation that has to be in

19 writing.  As much as I disagree with the Ninth Court's case,

20 it's there.  I've got to live with it.  So if written or oral

21 needs to be added to ours, I would have no objection.

22        MR. HUNNICUTT:  Well, I do have an objection to -- I

23 mean the statute made a point of saying lease or arrangement

24 and I think the reason is --

25        THE COURT:  Where does the statute say lease or

1    arrangement?  Where does it say that?  Because when I'm looking

2    at 14102, the title says leased motor vehicles, but if you just

3    look at the language there it just talks about an arrangement.

4          **MR. HUNNICUTT:**  You're right, your Honor.  I

5    misspoke.  I'm sorry.  But my point is that I think the

6    Legislature specifically wanted to make it broad enough to

7    prevent a situation where a company wanting to do an end-run

8    around the DOT regs and responsibility, or an end-run around

9    the statutory employer doctrine, just have an arrangement

10   and --

11         **THE COURT:**  Right, and we're past that.  I  mean at

12   least from, not the Defendants' view, but the way the Court has

13   ruled throughout the case about an arrangement being enough.

14   We're just trying to figure out how do we submit this to the

15   jury where it's fair to everyone.

16         **MR. MOYE:**  Yeah, and, Judge, we can't away from the

17   lease definition under the Code of Federal Regulations.  I

18   certainly haven't reviewed the legislative history, I'm not

19   buddies with any representative 60 years ago that wrote this,

20   so I don't know Mr. Hunnicutt's suggestion about what they

21   thought they were doing.  But the words are the words and lease

22   is defined as a contract or arrangement and that's a lease

23   and -- the arrangement issue, literally if we just submit did

24   they have an arrangement and that's it, then this case is going

25   to get tried twice because every single brokerage in the

36

1    country would be a statutory employer.

2             **THE COURT:**  Right, and there are a lot of issues in

3    this case that will maybe likely have to be tried twice.  This

4    is not the only one.

5             **MR. MOYE:**  Yeah.

6             **THE COURT:**  So, you know, you all can throw that

7    around all you want.  There's a lot of issues that are --

8             **MR. MOYE:**  I understand and I didn't mean --

9             **THE COURT:**  -- appealable issues.  You know what I'm

10   saying?

11            **MR. MOYE:**  Yeah.  I did and I didn't mean to come

12   across disrespectful by saying that --

13            **THE COURT:**  I didn't take it as disrespectful.  I'm

14   just saying if we're going to start talking about appealable

15   matters, there's a lot here --

16            **MR. MOYE:**  That's right.

17            **THE COURT:**  -- that can be appealed.  So --

18            **MR. MOYE:**  But it has to be a lease -- there has to

19   be a lease that has to be lease-like.  If we're going to try

20   the case that we're a broker and there's an arrangement and we

21   shook hands once and we exchanged, you know, a -- you know, we

22   interchanged the trailer, if that's enough for an arrangement

23   to find liability in this case as a statutory employer, that is

24   fundamentally against every single case on the planet.

25            **MR. HUNNICUTT:**  I disagree.  This is Hunnicutt.  On

1    the -- just interpret the statutory construction.  I think the

2    Court rightly pointed out, when you construct what this

3    particular section means, if a term is used like lease, then

4    you look for the definition of lease.  The term "lease" isn't

5    used, except in the title.

6         Now, an arrangement has to be with a company who are

7    going to -- who don't own the property but make an arrangement

8    with another person to transport it.  That's limited.  Now, if

9    you come within the statute, then you're supposed to have a

10   written lease and that's where you spell out the

11   responsibilities of the parties.

12        When you look at what a lease means in terms of just

13   somebody using somebody else's property and then making an

14   arrangement that's for the pecuniary benefit of both sides,

15   that's a lease.  But --

16        **MR. MOYE:**  Absolutely not --

17      **(Voices overlap)**

18        **THE COURT:**  We're not taking you all because you all

19   talking over each other, so we're not -- there's no record on

20   what you all are doing right now.

21        **MR. MOYE:**  I was disrespectful, so I'll let

22   Mr. Hunnicutt finish.

23        **MR. HUNNICUTT:**  Well, I think we're both just beating

24   a dead horse and all of us have not enough guidance from the

25   appellate courts on this very specific point, but I think the

1   safe thing to do is to track the language of 49 U.S.C. 14102,

2   because that is the fact question that the Court needs from the

3   jury that the Court then applies the law that has been fully

4   briefed several times in this case to determine if he was a

5   statutory employee.  I think our question follows more closely

6   what -- because we just lifted the language right out of the

7   statute about an arrangement.

8           **MR. MOYE:**  And, Judge, it's titled leased -- it's

9   titled leased vehicles, so their question (indisc.) of a lease.

10  We'll be trying a different case than we've done in discovery

11  if Mr. Allen gets to sit up there and says, you know what, they

12  were the broker and there was an arrangement, so you lose.

13  That's the problem with their submission, is it ignores the

14  basic issue there has to be a lease, whether we call it written

15  or oral or otherwise, it has to be there.  And again, I am

16  beating a dead horse, because I will indulge Mr. Hunnicutt's

17  earlier suggestion of accepting what we suggested on a lease

18  definition and clarifying it as oral or written.  I think

19  that's the best way to charge this jury.

20          **MR. HUNNICUTT:**  And I don't want to be misunderstood

21  to say that I'm accepting their way of submitting it.  I'm just

22  pointing out if we don't go with ours, which I still think we

23  should just follow the language of the statute, and you start

24  throwing in the word "lease," then you have to throw in oral or

25  written.

1      **THE COURT:**  And the Defense doesn't have a problem

2  with throwing in written or oral.  They may and they may object

3  to it formally, but I'm trying to get to a practical working

4  proposed question so that you all kind of know before you start

5  your trial.

6      **MR. MOYE:**  Your Honor, and again I know I have to

7  make a record, but frankly if it -- in our Proposed Question

8  Number 1 on Page 9, if it read lease means a contract or

9  arrangement, comma, written or oral, comma, if that's added to

10  that I would not object.

11      **THE COURT:**  Mr. Hunnicutt, you want to look at that

12  some more?

13      **MR. HUNNICUTT:**  Well, I still don't think that they

14  should be defining lease and using the word lease, because it's

15  not in the statute.  So I disagree that we should use their

16  question.

17      **THE COURT:**  Okay.  But then we need to do something

18  with arrangement, I would think.  I agree, the statutory

19  language discusses an arrangement.  But then what do we do with

20  that?

21      Mr. Hunnicutt?

22      **MR. MOYE:**  It's a little bit -- I'm drawing a little

23  bit from Mr. Hunnicutt's comments earlier when we objected to

24  the word "statutory employer" and he said that's a term of art

25  in the industry, there's not a single human being on this earth

1    that refers to leased drivers or leased equipment as arranged

2    drivers.  So every expert in this case refers to it as a lease,

3    the regulations refer to it as a lease, the jury needs to be

4    charged whether there was a release -- a lease.

5              **THE COURT:**  Anything further, Mr. Hunnicutt?

6              **MR. HUNNICUTT:**  Yeah, I'm just -- I'm just --

7              **THE COURT:**  It's kind of a difficult issue, so….  I

8    just would like for you all to have some sort of proposal, it

9    won't be concrete, but before you start your case.  I think

10   it's important because of all the factual, the details, I

11   guess, that are going to be presented through witnesses or

12   experts.  And there's nothing out there, you all haven't found

13   any jury instructions from other Courts on this issue or

14   anything like that?

15             **MR. MOYE:**  We will look, your Honor.

16             **MR. HUNNICUTT:**  We have not been able to find any.

17   I've actually -- I found cases where the Court ruled as a

18   matter of law that there was a statutory employee and then

19   instructed the jury that they were a statutory employee, but I

20   haven't -- we haven't been able to find where the fact -- where

21   a fact question is submitted to the jury.

22             **THE COURT:**  Any suggestions, Mr. Moye?

23             **MR. MOYE:**  We will look.  We have looked.  I will

24   have my smarter than I am plaintiff's lawyer -- or appellate

25   lawyer, rather, take another look.  But my prediction is this

1    is probably the only case ever that -- where a settlement was

2    made with a purported motor carrier where the case has been

3    made against someone else as a statutory employer.

4         **THE COURT:**  Yes.

5         **MR. HUNNICUTT:**  I doubt it's the only case.  It's

6    just it hasn't -- none have been published that we could find.

7         **THE COURT:**  Okay.  Let me see what else there is to

8    discuss.  I think that was it.  I know some of the rulings

9    today will affect some of the motions in limine and maybe the

10   exhibits that were left hanging.  I don't know if we need to

11   address anything specifically on the motions in limine and the

12   exhibits.

13        **MR. MOYE:**  I don't think that was addressed, frankly.

14   There is, if the Judge would afford me two minutes, there is

15   one guidance I want to speak.  I know that "insurance,"

16   "collateral source," doesn't come into evidence, but the one

17   issue though in this case, again being a DOT case, you know,

18   our argument is that About Tyme is the responsible motor

19   carrier.  Our argument is the facts are that we hired them

20   because they had operating authority and the requisite

21   financial responsibility.  I think that's relevant for me to be

22   able to discuss without using the word insurance, without using

23   the words minimal limits, without saying insured for a million

24   dollars, without saying commercial automobile policy, but to be

25   able to say that we hired About Tyme and we did research on

1   About Tyme, we brokered the load to a motor carrier that had

2   proper authority and the requisite financial responsibility, I

3   don't want to draw an objection to that during trial, I wanted

4   to bring it out to the Court's attention now.  Because, again,

5   these DOT cases are unique, because if you didn't have -- About

6   Tyme did not have that financial responsibility, there's a

7   better argument to be made that I leased that driver.  But the

8   fact they do have financial responsibility supports the

9   argument that this was a brokered client to a motor carrier.

10          **THE COURT:**  Mr. Hunnicutt?

11          **MR. HUNNICUTT:**  I think that interjecting insurance

12  is too prejudicial, especially when you combine that with the

13  fact that they're going to be able to talk about a settlement

14  with About Tyme.  The --

15          **THE COURT:**  But he has to be able to talk about

16  the -- I guess for lack of a better term, the arrangement and

17  what's required and what needs to be done per DOT, right?

18          **MR. HUNNICUTT:**  Well, but that's the interesting

19  thing.  When you look at the deposition testimony of the

20  Defense employees, they never do a broker deal through RCX

21  Solutions.  And so -- and that's why the paperwork is all

22  messed up.  That's why there are some carrier documents they

23  used and some broker documents they used.  I think the truth of

24  the matter is that very little thought was given into this by

25  the Defense employees, because it usually goes through Supply

1    Chain, but they knew that Supply Chain's broker license was

2    suspended.  They usually used all of Supply Chain's documents

3    whenever they had a broker deal, but they didn't do that.  And

4    then -- so they're using the company that's not a broker, so

5    you've got this conglomeration of mixed up documents, some

6    carrier, some broker, and they actually -- the people that were

7    supposed to have done a broker deal and checked the things

8    about financial responsibility, when I asked them they were

9    actually totally unaware that this deal went down.

10          Randy Clifton had equipment break down.  He had this

11   deal that had to get done.  He's the only one that did it.  The

12   other people that usually do the broker deals weren't aware of

13   it, didn't know he had this arrangement with Ronald Brown.

14   Yes, they have proof in their file because of other dealings

15   with Ronald Brown that he had financial responsibility, but

16   they weren't following the company's usual procedures for a

17   broker deal.  So I don't buy that whole argument.

18          **MR. MOYE:**  Judge, the argument is -- I mean that's

19   his position, that's for the jury to decide.  We produced in

20   discovery 47 pieces of paper that show that they brokered other

21   deals, five of which to About Tyme with a contract with About

22   Tyme that says they're the carrier and we're the broker, and in

23   doing so we had to determine whether they had authority and the

24   requisite financial responsibility under the Motor Carrier Act.

25   I'm not going to put their insurance policy in evidence.  I'm

1    not going to call it an insurance policy.  But I have to be

2    able to call it they had the requisite financial responsibility

3    under the Act.  I have to.

4         **THE COURT:**  Yeah, I don't know how you get around

5    that, Mr. Hunnicutt.

6         **MR. HUNNICUTT:**  Well, I think, just like the

7    settlement issue, the way he talks about it needs to be

8    important, especially when settlement is going to be able to be

9    used for impeachment.  I mean I can see a line of examination

10   putting in there the references to insurance and settlement at

11   the same time he's talking to Mr. Allen that creates a very

12   prejudicial and confusing picture for the jury.  And especially

13   if my hands are tied and I don't get to tell the jury that it

14   was only $1 million.  I think that's highly prejudicial.

15        **THE COURT:**  Mr. Moye?

16        **MR. MOYE:**  There's just no way to try it -- I mean

17   it's the motor carrier rules, Judge.  I mean --

18        **THE COURT:**  Yeah, I know, and I've already said that.

19   I just -- again, the concern is how you're going to use it, how

20   often, and what you're trying to do with it.  But we've kind of

21   already discussed that with the settlement issue.

22        **MR. MOYE:**  That's right and we'll put it on the

23   agenda for me and Mr. Hunnicutt to discuss for Monday.  I am

24   certainly aware of his concerns.  I am aware of trying to try a

25   clean case as well.  I don't think I'm asking for too much rope

1   on the scope I've offered thus far on both those issues, but

2   I'll be glad to discuss it further with opposing counsel.

3          **THE COURT:**  Okay.  Here's the deal.  I'm having an

4   issue obviously with how we're going to submit this

5   lease/arrangement matter to the jury and I kind of think it's

6   important for you all to know.  Obviously it wouldn't be set in

7   stone till the end of the case as to what's going to be

8   submitted to the jury.  But let me look at that a little bit

9   more.  Are you guys available around 2:00 to reconvene and

10  discuss that some more?

11         **MR. HUNNICUTT:**  Actually, your Honor, I've got a

12  post-judgment hearing that I cannot move and I would not --

13         **THE COURT:**  Okay.

14         **MR. HUNNICUTT:**  -- be available this afternoon.

15         **THE COURT:**  All right.  The other thing on the

16  charge, I mean there's not going to be any objection from the

17  Plaintiff to submit settling Defendant About Tyme, is there?

18  Because I think that's appropriate.  But Mr. Hunnicutt?

19         **MR. HUNNICUTT:**  I reserve the right to object at the

20  end, but that's all right, your Honor.

21         **THE COURT:**  Okay.  So do you all want to discuss the

22  submission further or what are we doing for the trial on

23  Monday?

24         **MR. MOYE:**  Well, I will say this, I think in our --

25  we think (glitch in audio) submitted both under Chapter 33, but

1    also, just like Mr. Hunnicutt just argued, if they're negligent

2    the jury's free to consider their neglience.

3              **THE COURT:**  Right.

4              **MR. MOYE:**  We put, just as a placeholder, Mr. Puga,

5    frankly I think it will come down in the charge conference

6    whether there's any evidence of any negligence --

7              **THE COURT:**  Right.

8              **MR. MOYE:**  -- in mitigation for recreational drug

9    usage affecting his prescription drug plan, if there's -- if

10   the police officer stands up and says, hey, I did a

11   reconstruction and he was going 80 miles an hour in the rain

12   and he couldn't avoid the crash, I don't know if any of that

13   will happen, I predict it won't, but I didn't want to get a

14   waiver, so it's a placeholder only.  If that assuages

15   Mr. Hunnicutt's concern as to why we did that, that's why we

16   did that.

17             **THE COURT:**  That's fine.  That will just depend on

18   the evidence at the trial as to what's going to be submitted.

19   But I was just asking generally about About Tyme.  I think it

20   would be, under the law, Texas law I guess, normally the

21   settling person is submitted.  So I was just making sure there

22   wasn't some significant objection or something I had missed

23   there.

24             **MR. HUNNICUTT:**  The only other thing that I would

25   mention, your Honor, as a matter of form, and depending on the

1    case and the way the case is presented and developed, I'm not

2    sure that they would be entitled to two different blanks.  In

3    other words, one for Ronald Brown and one for About Tyme.  But

4    those are things that we don't have to -- those are parts of

5    the charge that we don't have to nail down until --

6              **THE COURT:**  Right.

7              **MR. HUNNICUTT:**  -- the charge conference at the end.

8              **THE COURT:**  I agree.  Because you can work with that

9    through the trial or whatever, it's not going to affect.  But

10   how we submit the lease or arrangement matter I think does kind

11   of dictate how you proceed with your trial.  That's why I'm

12   trying to pin that down in a way that's fair to both of you

13   with a little heads up as to what might be submitted, because

14   obviously I reserve the right to make the final instructions at

15   the end of the evidence.

16             **MR. HUNNICUTT:**  Sure.

17             **THE COURT:**  So I'm just trying to -- but I'd like to

18   look at that a little bit more.  I'm just not sure when we can

19   confer again.

20             **MR. HUNNICUTT:**  I could make myself available anytime

21   tomorrow, if the Court -- well, I just -- I'm going to be

22   driving in a car with a cell phone and then I'm going to be in

23   a hearing that every hearing in that case post-judgment has

24   been like three hours, so it might --

25             **THE COURT:**  Oh, yeah, can we just maybe for like

1    20-30 minutes tomorrow morning at 9:00?

2            Mr. Moye?

3            **MR. MOYE:**  That would work for us, your Honor.  Thank

4    you.

5            **THE COURT:**  Okay.  Mr. Hunnicutt?

6            **MR. HUNNICUTT:**  Yes, your Honor.

7            **THE COURT:**  Okay.  So why don't we reconvene at 9:00

8    tomorrow, really only to address the issue of how we're going

9    to submit lease/arrangement to the jury.  You all are going to

10   discuss before Monday and we'll talk about Monday morning then

11   how the Defense is going to use the settlement with About Tyme

12   and maybe the financial responsibility matter that they're

13   required to have, how the Defense is going to use that.  And

14   then you all are going to discuss expert testimony in terms of

15   legal questions, correct?

16           **MR. HUNNICUTT:**  Yes, your Honor,

17           **THE COURT:**  Okay.  And then anytime -- I know it's

18   probably not likely, but, Mr. Moye, you said you might get your

19   appellate guys looking a little bit more about submissions on

20   these type of cases from any other Courts.

21           **MR. MOYE:**  They look forward to the challenge and I

22   will set them loose.

23           **THE COURT:**  All right, we'll see you tomorrow morning

24   at 9:00.  Thanks.

25           **(Counsel thank the Court)**

(This proceeding was adjourned at 10:04 a.m.)


CERTIFICATION


I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.




_____                    August 7, 2017_


TONI HUDSON, TRANSCRIBER